## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

STEPHEN K. HEGE and LINDA S. HEGE,

                  Plaintiff,

vs.

AEGON USA, LLC, f/k/a AEGON USA INC.;
and TRANSAMERICA LIFE INSURANCE
COMPANY f/k/a LIFE INVESTORS
INSURANCE COMPANY OF AMERICA;

                  Defendants.

Civil Action No.  8:10-CV-01578-GRA

---

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

---

ATTORNEYS FOR PLAINTIFFS

Patrick E. Knie (#2370)
Post Office Box 5159
Spartanburg, South Carolina 29304-5159
Phone: (864) 582-511

Gary E. Clary (#157)
111-2 Hammock Court
Central, South Carolina 29630
Phone:  (864) 415-0886

Susan F. Campbell (#9002)
Post Office Drawer 11316
Columbia, South Carolina 29211-1316
Phone:  (803) 256-6152

Andrew J. Johnston (#4707)
Post Office Box 3252
Spartanburg, South Carolina 29304
Phone: (864) 591-1093

**TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

I.    BECAUSE THE *RUNYAN* SETTLEMENT AGREEMENT CONTRAVENES
      STATE AND FEDERAL LAW, THE AGREEMENT AND SUBSEQUENT
      *RUNYAN* ORDER ARE UNENFORCEABLE ................................................ 8

      A.    The *Runyan* Settlement Agreement Allows Defendants to
            Continue Unlawfully Discriminating Against Similarly-Situated
            Insureds Within the Same Class, in Violation of State Law ........................ 9

      B.    The Runyan Settlement Agreement Allows Defendants to
            Unlawfully and Unilaterally Change the Term "Actual Charges"
            Within its Guaranteed Renewable Cancer Policies, in Violation of
            State Law ................................................................................................ 10

      C.    The *Runyan* Settlement Agreement Allows Defendants to
            Coordinate Benefits, in Violation of State Law ......................................... 10

      D.    The Arkansas Class Settlement Agreement Allows
            Defendants to Unlawfully Interfere With the Privacy Rights
            of Its Insureds........................................................................................... 11

II.   JURISDICTIONAL DEFECTS IN THE RUNYAN ORDER PRECLUDE
      ITS ENFORCEABILITY ................................................................................ 12

      A.    Defendant Bears the Burden of Proving Res Judicata................................ 13

      B.    The Elements of *Res Judicata* Recognized by Arkansas Law.................... 13

      C.    Defendant Fails to Establish the Elements of *Res Judicata*....................... 14

III.  THE RUNYAN COURT DID NOT COMPLY WITH THE MINIMUM
      PROCEDURAL PROTECTIONS GUARANTEED UNDER THE
      DUE PROCESS CLAUSE  ............................................................................ 28

IV.   THERE WERE GROSS INADEQUACY OF REPRESENTATION
      OF CLASS INTERESTS EXHIBITED BY *RUNYAN* COUNSEL  ................ 31

V.    THE PRESENT ACTION DOES NOT VIOLATE PUBLIC POLICY ........... 33

VI.   THE RUNYAN JUDGMENT, INCLUDING ITS "RELEASE"
      PROVISIONS, DOES NOT BAR THE PRESENT CLAIMS.  ....................... 34

CONCLUSION..................................................................................................... 35

i

# TABLE OF AUTHORITIES

## Cases

*Acuar v. Letourneau*
    531 S.E.2d 316 (Va. 2000) ...................................................................... 10

*Albright v. Oliver*
    510 U.S. 266 (1994)................................................................................. 33

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591 (1997)................................................................................. 20

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 .............................................................................................. 7

*Atchison v. Career Serv. Council of State of Wyo.*
    664 P.2d 18 (Wyo. 1983) ........................................................................ 33

*Ballenger v. N.C. Agric. Extension Serv.*
    815 F.2d 1001 (4th Cir. 1987) ................................................................... 7

*Batchelor v. Am. Health Ins. Co.*
    234 S.C. 103, 107 S.E.2d 36 (1959) ......................................................... 8

*Beebe v. Fountain Lake Sch. Dist.*
    231 S.W.3d 628, 635 (Ark. 2006) ........................................................... 13

*Budget Tire & Supply Co. v. First Nat'l Bank of Fort Smith*
    912 S.W.2d 938 (Ark. App. 1995)........................................................... 16

*Cleveland v. Chamberlain*
    66 U.S. 419 (1861)................................................................................... 21

*Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*
    508 U.S. 602 (1993)................................................................................. 12

*Conner v. Am. Pub. Life Ins. Co.*
    448 F.Supp.2d 762 (N.D.Miss. 2006)........................................................ 3

*Crockett & Brown, P.A. v. Wilson*
    864 S.W.2d 244 (Ark. 1993).................................................................... 17

*Edwards v. Edwards*
    __ S.W.3d __, 2009 WL 3877696 (Ark. 2009).............................. 18-19, 26

*Epstein v. MCA, Inc.*
   179 F.3d 641 (9th Cir. 1999) ............................................................................... 29, 32

*Eubanks v. Jag Consulting*
   2005 WL 1027557 (Ark. App 2005) .................................................................... 16

*Foster v. Hill*
   275 S.W.3d 151 (Ark. 2008) ................................................................................ 19

*Gonzales v. Cassidy*
   474 F.2d 67 (5th Cir. 1973) ................................................................................. 15

*Gooch, et al v. Life Investors, et al.*
   264 F.R.D. 340 (M.D.Tenn. 2009) ................................................................... 2, 32

*Grant v. Butt*
   198 S.C. 298, 17 S.E.2d 689 (1941) ..................................................................... 8

*Grant County Sav. & Loan Ass'n, Sheridan, Ark. v. Resolution Trust Corp.*
   968 F.2d 722 (8th Cir. 1992) ................................................................................ 35

*Griffin v. Griffin*
   327 U.S. 220 (1946) .............................................................................................. 14

*Guidry v. Am. Pub. Life Ins. Co.*
   512 F.3d 177 (5th Cir. 2007) ................................................................................. 3

*Henson v. Liggett Group, Inc.*
   61 F.3d 270 (4th Cir. 1995) .................................................................................. 8

*Hodges v. Am. Fid. Assurance Co.*
   2008 WL 723994 (S.D.Miss. Mar. 17, 2008) ....................................................... 3

*Hunt v. Perry*
   138 S.W.3d 656 (Ark. 2003) ................................................................................ 13

*In re TransOcean Tender Offer Sec. Litig.*
   455 F.Supp. 999 (N.D.Ill. 1978) ......................................................................... 14

*Jayel Corp. v. Cochran*
   234 S.W.3d 278 (Ark. 2006) ................................................................................ 26

*John Cheeseman Trucking, Inc. v. Pinson*
    855 S.W.2d 941 (Ark. 1993).................................................................. 17

*Kaiser Steel Corp. v. Mullins*
    455 U.S. 72 (1982)........................................................................... 8

*Kiowa Tribe of Okla. v. Lewis*
    777 F.2d 587 (10th Cir. 1985)............................................................. 34

*Kremer v. Chem Constr. Corp.*
    456 U.S. 461 (1982)............................................................... 26, 28, 34

*Lindley v. Life Inv. Ins. Co.*
    2009 WL 2163513 (N.D.Okla. July 17, 2009) ...................................... 3, 22

*Lord v. Veazie*
    49 U.S. 251 (1850)....................................................................... 20-21

*MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*
    210 S.W.3d 878 (Ark. 2005)........................................................... 21, 23

*Mahone v. Hartford Life & Accident Ins. Co.*
    1976 OK CIV APP 12 ¶ 14, 561 P.2d 142 (Okla.App. 1976).......................... 9

*Marrese v. Am. Acad. Of Orthopaedic Surgeons*
    470 U.S. 373 (1985) ........................................................................ 26

*Martin v. Bobo*
    292 S.W.3d 865 (Ark. Ct. App. 2009).................................................. 13

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*
    516 U.S. 367 (1996)........................................................ 13, 28, 32-33

*McConnell v. Kitchens*
    20 S.C. 430 (1884) ....................................................................... 8-9

*McNeil v. Guthrie*
    945 F.2d 1163 (10th Cir. 1991).......................................................... 14

*Metzger v. Am. Fid. Assurance Co.*
    2006 WL 2792435 (W.D.Okla. Sept. 26, 2006) ...................................... 3

*Montague v. Dixie Nat'l Life Ins. Company, et al.*
    2010 WL 2428805 (D.S.C. 2010) ....................................................... 30

iv

*Muskrat v. United States*
219 U.S. 346 (1911)......................................................................................... 19

*Nahom v. Blue Cross & Blue Shield of Ariz. Inc.*
885 P.2d 1113 (Ariz. App. 1994)...................................................................... 11

*Nat'l Bank of Commerce v. The Dow Chem. Co.*
1 S.W.3d 443 (Ark. 1999)................................................................................. 27

*Office of Child Support Enforcement v. Willis*
59 S.W.3d 438 (Ark. 2001)............................................................................... 14

*Parklane Hosiery Co., Inc. v. Shore*
439 U.S. 322 (1979)........................................................................................... 14

*Pelt v. Utah*
539 F.3d 1271 (10th Cir. 2008)......................................................................... 15

*Percefull v. Claybaker*
312 Fed.Appx. 827, 2008 WL 4977432 (8th Cir. 2008)................................... 16

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985)........................................................................................... 28

*Pierce v. Cent. United Life Ins. Co.*
2009 WL 2132690 (D.Ariz. July 15, 2009) ....................................................... 3

*Poe v. Ullman*
367 U.S. 497 (1961)....................................................................................... 19-20

*Quinn v. Gulf & Western Corp.*
644 F.2d 89 (2nd Cir. 1981) ............................................................................... 8

*Reppert v. Marvin Lumber & Cedar Co., Inc.*
359 F.3d 53 (1st Cir. 2004)................................................................................ 34

*Runyan v. Transamerica Life Ins. Co.*
Case No. CV-09-2066-3 (Circuit Ct., Pulaski County, Ark.)..............5, 8-10, 12-34

*Shults v. Champion Intern. Corp.*
35 F.3d 1056 (6th Cir. 1994) ....................................................................... 14, 31

v

*Smith v. Life Inv. Ins. Co.*
    2009 WL 3756911 (W.D. Pa. Nov. 6, 2009) ................................................................ 2, 22

*Starzenski v. City of Elkhart*
    87 F.3d 872 (7th Cir. 1996) ...................................................................................... 17

*Stokes v. Twin City Motors, Inc.*
    490 F.Supp. 742 (E.D.Ark. 1980) ............................................................................. 16

*Taylor v. Sturgell*
    553 U.S. 880 (2008) .................................................................................................. 13

*United States v. Johnson*
    319 U.S. 302 (1943) ........................................................................................ 19-20, 23

*Ward v. Dixie National Life Ins. Co.*
    257 Fed.Appx. 620 (4th Cir. 2007) ............................................................................. 3

*Ward v. Dixie Nat'l Life Ins. Co.*
    595 F.3d 164 (4th Cir. 2010) ..................................................................................... 30

*Winkler v. Bethell*
    210 S.W.3d 117 (Ark. 2005) ..................................................................................... 16

## Rules and Statutes

U.S. Const. art. III ................................................................................... 12, 19, 26-27

U.S. Const. amend. XIV ............................................................................... 12, 28, 34

28 U.S.C. § 1738 ............................................................................................... 8, 26

Health Insurance Portability and Accountability Act of 1996 ("HIPAA")
Pub. L. No. 104-191 §§ 261-264 (1996); 42 U.S.C. §§ 1320d -1320d-8 (2001) ........................ 11

Fed. R. Civ. P. 56(c) ......................................................................................... 7

Federal Privacy Rule, 45 C.F.R.  § 164.508(a)(1),(b)(1) .......................................... 11

§ 6 to the Arkansas Constitution ............................................................... 12, 19, 26-27

KRS 304.12-080(3) ............................................................................................ 3

KRS 304.12-010 ....................................................................................................... 3

S.C. Code Ann. § 38-71-200 ................................................................................... 9

S.C. Ins. Dep't. Reg. 69-34 ................................................................................... 10

S.C. Ins. Dep't. Reg. 69-22 ................................................................................... 10

## Other Authorities

17 Am.Jur.2d, Contracts § 229 .............................................................................. 8

*Civil Practice and Procedure* § 2:1, 19-20 (4th ed. 2006) ............................... 18

50 C.J.S. *Judgments* § 1277 (June 2009) ........................................................... 14

5 Newberg on Class Actions § 16:25 (4th ed. Nov. 2009) ........................... 14, 28

Martin H. Redish & Andrianna D. Kastanek, "*Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of The Adjudicatory Process,*" 73 U. Chi. L. Rev. 545, 569 (2006) ................................................................................................................ 20, 27

18 Wright & Miller §4405, p. 83 ........................................................................... 13

## NATURE OF THE CASE

This civil action is one of many actions that seek monetary relief against Defendant Transamerica Life Insurance Company, f/k/a Life Investors Insurance Company of America ("Transamerica") as a result of its reversal in spring 2006 of its longstanding interpretation of the term "actual charges" contained in its supplemental cancer insurance policies (the "2006 Change"). Transamerica filed its motion for summary judgment and memorandum in support on October 4, 2010, and Plaintiffs hereby submit their response in opposition to said motion. [D.E. 20 and 20-1].

## STATEMENT OF THE FACTS

Stephen K. Hege, a resident of South Carolina and retired Sergeant with the South Carolina Highway Patrol, purchased a guaranteed renewable, supplemental cancer insurance policy (policy number 0G1083253) with an effective date of March 22, 1994, from Bankers United Life Assurance Company ("Bankers United"), a predecessor company of Life Investors. (**D.E. 20-6**) (September 30, 2010 Declaration of James A. Byrne, Defendants' Director of Claims Analysis, ¶ 3).[1] (**Exhibit 1**) (Hege Affidavit, ¶ 1-2).

The Policy uses various indexes for the different coverage offered. For instance, coverage for different forms of surgical care is expressly indexed to the Policy's Schedule of Operations; coverage for "usual and customary" charges are indexed to the "normal" and "reasonable" charges in "the geographic area where provided;" and coverage for "actual expenses" are indexed to the amount actually paid. Relevant to the instant case, the Policy has a number of coverages based on "actual charges." Examples of such benefits include those for

---

[1]  Bankers United merged into Life Investors Insurance Company of America ("Life Investors") on or about December 31, 2001. Effective October 2, 2008, Life Investors was merged into Transamerica. All references herein to Transamerica include Life Investors and Bankers United.

radiation therapy and chemotherapy in Section E – Schedule of Benefits, Items 11 and 12, p. 9, where Defendants promise to "pay the actual charges for radiation therapy treatments authorized and administered by a Radiation Therapist" and the "actual charges for cancericidal chemical substances including their administration."  (**See D.E. 20-6**, **at exhibit A**, p. 9).

Mr. Hege's Policy is <u>not</u> designed to satisfy his medical indebtedness, but instead, is designed to pay cash benefits directly to him without regard to any other insurance he carries. The insured is free to use the cash benefits for any purpose, such as to defray the indirect expenses associated with a major illness.  The dollar amount of several supplemental cash benefits payable under his Policy is expressly measured by the amount of the treating provider's "actual charges" for certain cancer-related medical treatments such as chemotherapy and radiation.

The policies at issue are of the type referred to as "supplemental" insurance meaning that the policies are not sold for, nor intended as comprehensive health insurance.  When the insured's medical expenses are covered by other insurance the policyholder can use the benefits for whatever purpose he or she chooses.  Therefore, the typical concept of loss bears a different relevancy to supplemental insurance policies of this type.

For several decades the Defendants defined "actual charges" under these policies as the amount of the doctor's bills before any discount was applied by health insurance carriers but in 2006, they changed their definition to reduce costs and began requiring insureds to submit claims for actual charges using their health insurer's explanation of benefit forms.[2]

---

[2] See, e.g. *Gooch, et al v. Life Investors, et al.*, 264 F.R.D. 340 (M.D.Tenn. 2009); *Lindley v. Life Inv. Ins. Co.*, 2009 WL 2163513 (N.D.Okla. July 17, 2009); and *Smith v. Life Inv. Ins. Co.*, 2009 WL 3756911 (W.D. Pa. Nov. 6, 2009) (where each district court granted summary judgment to plaintiffs complaining of the same change in contractual terms by these same Defendants and

As a result of the 2006 Change, Defendants drastically reduced benefits to individuals battling cancer. The majority of courts have concluded that the term "actual charges" in supplemental insurance policies similar to the policy in question is ambiguous and must be construed in favor of the policyholder. *See Guidry v. Am. Pub. Life Ins. Co*., 512 F.3d 177 (5th Cir. 2007); *Ward v. Dixie National Life Ins. Co*., 257 Fed.Appx. 620 (4th Cir. 2007); *Smith,* 2009 WL 3756911; *Lindley,* 2009 WL 2163513; *Pierce v. Cent. United Life Ins. Co*., 2009 WL 2132690 (D.Ariz. July 15, 2009); *Hodges v. Am. Fid. Assurance Co*., 2008 WL 723994 (S.D.Miss. Mar. 17, 2008); *Conner v. Am. Pub. Life Ins. Co*., 448 F.Supp.2d 762 (N.D.Miss. 2006); *Metzger v. Am. Fid. Assurance Co.*, 2006 WL 2792435 (W.D.Okla. Sept. 26, 2006).[3]

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Prior to purchasing the Policy, Mr. Hege was informed by the Bankers United representative that if he were ever stricken with cancer, this insurer would pay directly to him the

---

setting out the events described in the Company's new interpretation) (**Exhibit 2**) (November 10, 1997 correspondence from Defendants to Oklahoma Department of Insurance, which states "[i]t is the company's practice to pay the actual charge billed to the insured for those items identified in the policy as being covered for 'actual charges'. We do not pursue information regarding discounts when determining benefits.") ( Copies of all unpublished decisions and out-of-region court decisions cited herein are included in Plaintiff's Local Rule 7.05 (A)(4) Appendix attached as **Exhibit 3)**

[3]  When the Kentucky Office of Insurance ("KOI") discovered the Defendants were attempting to change the terms of the policy the Office of Insurance objected, noting that the new interpretation violated several Kentucky statutes. (**Exhibit 4**) (KOI DOI Order dated August 2, 2006 states "[t]he change in the method of benefit administration, changing your established definition of 'actual charges' and requiring policyholders to provide an explanation of benefits or other proof of payment by another insurer when the insured has other insurance coverage, can result in similarly situated policyholders, who purchased the same policy at the same time, being held to differing standards as to how benefits will be paid depending on when a claim was made or whether the insured is covered under another insurance policy. The above alteration of the administration of policy benefits and established policy definitions violates KRS 304.12-080(3) and KRS 304.12-010).

"actual cost" of treatment. (**Exhibit 1**) (Hege Affidavit, ¶ 3).  He was told that this amount would exceed the amount that doctors and hospitals would settle for as payment.  (*Id.*)  The representative said it was wise for Mr. Hege to purchase a policy with this particular provider since most cancer patients are unable to work during treatment and the extra money would be necessary to pay medical costs not listed in the policy and prevent the likelihood of becoming destitute. (*Id.*)  In fact, at the 1994 sales presentation, Bankers United gave Mr. Hege a flyer which featured this important benefit of the Policy in the following terms:

> "THE REAL COST OF CANCER.  WHO PAYS THE NON-MEDICAL EXPENSES?  FOR EVERY $100 OF MEDICAL EXPENSES YOUR HEALTH INSURANCE COVERS, SUCH AS HOSPITAL, DOCTORS, SURGERY, TREATMENTS, MEDICINE & TESTS, THERE ARE OVER $150 OF EXPENSES THAT ARE NOT MEDICALLY RELATED.  THINGS LIKE…LOST WAGES, TRAVEL, CHILD CARE, FOOD, LODGING, INSURANCE DEDUCTIBLES, HOME RECOVERY, LONG DISTANCE CALLS & EVERYDAY EXPENSES AT HOME.
>
> AT LAST…AN INNOVATIVE PLAN…WITH OUTSTANDING POLICY FEATURES!

 (**Exhibit 5**) (The Cancer Answer Plus Flyer)

When Mr. Hege was diagnosed in November of 2003 with multiple myeloma,[4] he sent in the required claim information and received monetary reimbursement in accordance with the Policy he had purchased and the representations made to him at the point of sale.  For example, if he submitted a $1,000 medical bill for a covered expense, such as radiation, then he received a $1,000 supplemental benefit paid directly to him.  (**Exhibit 1**) (Hege Affidavit, ¶ 4).  This claims payment procedure continued until Mr. Hege received a letter from Life Investors Insurance

---

[4]  Multiple myeloma is an incurable cancer. In November 2003, the cancer invaded Mr. Hege's L-2 vertebrae causing his back to break and forming lesions throughout the bones in his body. Two stem cell transplants gave him a short respite but the cancer returned and due to daily chemotherapy and permanent damage to his back, Mr. Hege has been unable to work. (**Exhibit 1**, ¶ 6).

4

Company of America informing him of the unilateral change in their Policy.  (*Id.*, ¶ 5).  Hege continued to submit claims but received drastically reduced benefits.  As a result of the Defendants' unilateral change to the terms of the policy, Mr. and Mrs. Hege believe they have been underpaid more than $75,000 in benefits, a figure which increases monthly.

In an attempt to effectuate a nationwide class action settlement designed solely to <u>rewrite</u> the terms of Hege's and others' supplemental cancer insurance policies, Defendants initiated a settlement-only class action litigation in the Circuit Court of Pulaski County in Arkansas.  A short time thereafter, the Arkansas Court entered an Order Granting Preliminary Approval to Class Action Settlement *Runyan v. Transamerica Life Ins. Co.*, Case No. CV-09-2066-3 (Circuit Ct., Pulaski County, Ark.) ("*Runyan*").   In May of 2009, Mr. Hege received a Class Action Settlement Notice ("Class Notice") for the Arkansas case. (*Id.*, ¶ 9).   The maximum lifetime settlement he could receive was only $15,000.00.  *Id.*  Mr. Hege now believes the Class Notice was incomplete and deceptive, since it did not inform him of court decisions favorable to policyholders, like Mr. Hege, on the definition of "actual charges."  (*Id.*); (**Exhibit 6**) (Class Action Settlement Notice).

Mr. Hege was not made aware of the fact that, if a contract is ambiguous the ambiguity <u>would be construed against the insurance company by the courts of most states, including South Carolina</u>.  Defendants' pre-2006 interpretation of "actual charges" is the total opposite of its current interpretation.  This fact alone establishes more than one interpretation of the meaning of "actual charges" under the Policy and creates an ambiguity under the law of most states, including South Carolina.  Defendants had to have known, at the time they made the decision to implement the 2006 Change and at the time they prepared the Class Notice, that such ambiguity

would be construed in Mr. Hege's favor. (**See Exhibit 7**) [5] (State Law Index - All 50 states and the District of Columbia apply some form of the *contra proferentem* doctrine).

Defendants failed to give Mr. Hege this material information with respect to the decision to opt out of the Settlement. (**Exhibit 1**) (Hege Affidavit, at ¶ 14) In fact, the Class Notice language made Mr. Hege believe that Defendants could assert a claim against him for "**overpayment of benefits that the Company might otherwise have against any Settlement Class Member…**" if he opted out of the Settlement. (**Exhibit 3**) (Class Notice, at p. 8, ¶ 5).

Mr. Hege's June, 2009, *pro se* written objection states:

> "Upon receipt of the Notice of Proposed Class Action Settlement from the Transamerica Life Settlement Administrator, **I have read the Class Action Settlement Agreement and am forced to object.**
>
> ***
>
> After reviewing my records I estimate the change in 2006 by Transamerica has resulted in a loss to me in excess of $75,000. My daily chemotherapy costs over $9,000 a month and this amount added to the cost of tests, biopsies, doctor's visits, and infusions adds up quickly. **The $15,000 settlement hardly seems fair!**
>
> **While I consider this settlement amount insulting, I am still joining this Class Action. After reading Non-Monetary Benefits #5 in which 'The Company will agree to waive and not pursue any claims or counter claims for overpayment of benefits' <u>I am in a position where I have to pursue a course where I will not jeopardize not only my future fight against this disease but losing everything I own.</u>** Monies I have received have already been used to pay medical bills.
>
> I am an honest man. I bought this policy in good faith. I cannot fight an Insurance Company alone. Please consider my case when deciding if Transamerica Life Insurance Company should honor policies which specifically defined "actual costs" and paid these agreed upon costs for almost three years

---

[5] Significantly, the policy phrase "actual charges" is <u>not</u> defined in Hege's Policy. Thus, the phrase is patently ambiguous insofar as it can reasonably be interpreted to mean either the <u>greater</u> amount stated on a provider's bill, statement or invoice before the reduction of any negotiated steerage discounts ("*i.e.*, "**billed**" rates) or the <u>lesser</u> amount in cash, currency or funds the provider accepts from the patient's major medical carrier after the reduction of negotiated discounts (i.e. "**discounted**" rates).

before deciding it was too expensive. **For this Class Action to allow changes in a signed contract is wrong. For this Class Action to accept a $15,000 limit is unbelievable!** I love my wife, children and grandchildren. **Please allow me to continue my fight. I need your help!"**

(**Exhibit 8**) (Hege Objection Letter)(Emphasis added)

Mr. Hege could not attend the Fairness Hearing, so one of the undersigned attorneys agreed to speak on his behalf. Plaintiffs' attorneys filed a supplemental objection for Mr. Hege (and others), asking that the Arkansas Court carve them out of the Arkansas Settlement or, in the alternative, give them additional time to opt out. (**Exhibit 9**) (SC Objectors' Supplemental Material in Support of Objection). (**Exhibit 10**) (Transcript Excerpts from Hearing). The Arkansas Court denied this motion. *See* D.E. 20-3 and D.E. 20-4.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Ballenger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted) (internal quotations omitted).

A fact is material if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence offered is such that a reasonable jury might return a verdict for the nonmovant. *Id.* at 257. In cases where the parties dispute material facts, "the non-moving

party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 275 (4th Cir. 1995) (internal quotations omitted). Moreover, the court "may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

## ARGUMENT

I. **BECAUSE THE *RUNYAN* SETTLEMENT AGREEMENT CONTRAVENES STATE AND FEDERAL LAW, THE AGREEMENT AND SUBSEQUENT *RUNYAN* ORDER ARE UNENFORCEABLE**

In arguing 28 U.S.C. § 1738 (hereinafter "the Full Faith and Credit Act) as a reason to grant summary judgment to Defendants, they overlook a critical defect in the *Runyan* Arkansas proceeding: the *Runyan* court approved an illegal settlement agreement, one that violated the laws of South Carolina and the United States, such that the agreement is void and unenforceable.

Courts will not enforce or aid in the enforcement of illegal contracts. Accordingly, it is axiomatic that contracts–even class settlement agreements–that violate a statute are illegal, and thus are unenforceable. As stated in *McConnell v. Kitchens*, 20 S.C. 430, 437-38 (1884), "[t]he general rule, undoubtedly, is, that a contract to do an act which is prohibited by statute, or which is contrary to public policy, is void, and cannot be enforced in a court of justice." *See also, Grant v. Butt*, 198 S.C. 298, 17 S.E.2d 689, 693 (1941); and *Batchelor v. Am. Health Ins. Co.,* 234 S.C. 103, 108, 107 S.E.2d 36, 38-39 (1959). The law "will not promote in one form that which it declares wrong in another, and hence contracts which bring about results which the law seeks to prevent are unenforceable...." 17 Am.Jur.2d, <u>Contracts</u> § 229 (footnotes omitted). *See also, Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982), and *Quinn v. Gulf & Western Corp.*, 644 F.2d 89, 92-94 (2nd Cir. 1981), which involved violation of federal statutes.

8

*McConnell v. Kitchens*, *supra*, involved the violation of statutory provisions which governed the sale of fertilizers. In determining whether the violations rendered a contract illegal, and therefore, unenforceable, the court, after noting that the violation of a statute designed for raising revenue is generally not sufficient to make the contract illegal and unenforceable, observed that if the prohibition imposed by statute is for the purpose of prohibiting certain conduct or for compelling compliance with desirable conduct, then violation of the statute renders the contract illegal, and thus, unenforceable at law.  *Id.* at 436.

As set forth below, the Arkansas Class Settlement Agreement violated state and federal law that was designed to prohibit certain conduct, such that this Court may find it unenforceable by Defendants, and therefore, the subsequent *Runyan* Judgment approving said agreement would not be entitled to Full Faith and Credit.

> **A.    The *Runyan* Settlement Agreement Allows Defendants to Continue Unlawfully Discriminating Against Similarly-Situated Insureds Within the Same Class, in Violation of State Law**

The law of South Carolina prohibits an insurance company from discriminating in any manner whatsoever between individuals of the same class and of essentially the same hazard in the benefits payable. S.C. Code Ann. § 38-71-200.  Anti-discrimination laws such as this are "designed to insure that equal terms are fixed in policies to policyholders of like class" and prohibit "preferential treatment with respect to … the benefits allowed, so that all policyholders that fall within the same class will pay alike and will be treated alike." *See Mahone v. Hartford Life & Accident Ins. Co*., 1976 OK CIV APP 12 ¶ 14, 561 P.2d 142, 148 (Okla.App. 1976).

In the Arkansas Class Settlement Agreement, the Defendants and their chosen attorneys agreed that policyholders of the same class, paying the same premiums, suffering the same disease, receiving the same treatment and incurring the same charges, would receive different

benefit payments based solely on whether they have another health insurance carrier that has negotiated a discount with the treating provider.   The Class Settlement was designed to allow Defendants to continue unlawfully discriminating against those insureds who take extra precautions to protect themselves, by allowing Defendants to reduce benefits, dollar-for-dollar by the value of the policyholder's other insurance carrier or Medicare.   This is "unfair discrimination" and is barred by the law of this State.

> **B.      The *Runyan* Settlement Agreement Allows Defendants to Unlawfully and Unilaterally Change the Term "Actual Charges" Within its Guaranteed Renewable Cancer Policies, in Violation of State Law**

Defendant's cancer policies are "guaranteed renewable."   Under the laws of South Carolina (and every other state), an insurer has no right to make unilaterally any change in any provision of a "guaranteed renewable" policy.   *See*   S.C. Ins. Dep't. Reg. 69-34.   The Class Settlement, and resulting *Runyan* Judgment, was specifically designed to bless Defendant's unilateral change of the guaranteed terms in their policies in direct violation of the laws of this State.

> **C.      The *Runyan* Settlement Agreement Allows Defendants to Coordinate Benefits, in Violation of State Law**

An insurance company "coordinates benefits" by integrating its claims process with and reducing benefits because of the existence of other applicable insurance coverage. Notably, preferred-provider discounts offered an insurer are considered benefits just like any cash benefits available under an insurance plan. *Acuar v. Letourneau*, 531 S.E.2d 316, 322-23 (Va. 2000). Pursuant to the law of South Carolina (and every other state), an insurance company cannot legally coordinate benefits unless specifically permitted to do so by the contract and otherwise by law.  *See* S.C. Ins. Dep't. Reg. 69-22, Section III, Item "R."

10

This is because "where two or more insurance policies cover the same hazard and do not provide for coordination of benefits, each policy is primary, and each insurer must pay all medical expenses that qualify for payment under the policy or plan." *Nahom v. Blue Cross & Blue Shield of Ariz. Inc.*, 885 P.2d 1113, 1119 - 1120 (Ariz. App. 1994) (internal quotations omitted). Defendants' supplemental cancer insurance policies do not have a contractual provision that would allow it to coordinate benefits. This is because the entire purpose of these policies, i.e., to pay benefits without regard to other insurance, is antithetical to the concept of benefit coordination. Nonetheless, by reducing their insureds' benefits, dollar-for-dollar with the amount of benefits their insureds bargained to receive from other insurance carriers, Defendants are, no doubt, coordinating benefits every day. Absent a statutory provision permitting Defendants to coordinate benefits, the Arkansas Class Settlement illegally allows Defendants to continue doing so, making said agreement plainly unlawful, unenforceable and therefore, void.

> **D.    The Arkansas Class Settlement Agreement Allows Defendants to Unlawfully Interfere With the Privacy Rights of Its Insureds**

Information disclosed in an explanation or other evidence of health insurance benefits ("EOB") is considered confidential healthcare information protected from disclosure by the Federal Privacy Rule, 45 C.F.R.   § 164.508(a)(1),(b)(1) promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Pub. L. No. 104-191 §§ 261-264 (1996); 42 U.S.C. §§ 1320d -1320d-8 (2001).  As a result, Americans have a legally protected right to keep evidence of their primary health coverage confidential and free from disclosure.

Defendants' new interpretation of the phrase "actual charges" and its resulting new claims handling procedure (by virtue of the Arkansas Class Settlement Agreement), abridges the

policyholder's privacy rights by requiring them to disclose their protected health information as a condition to receiving any policy benefits. The Class Settlement, however, is designed to frustrate this federal statute by allowing Defendants to continue to impose the extra-contractual condition upon its insureds to disclose irrelevant and otherwise protected health information as a condition to receiving their cancer insurance benefits. *See Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 603-04 (1993) (The application of a regulatory statute that is otherwise within Congress' powers may not be defeated by private contractual provisions).

## II. JURISDICTIONAL DEFECTS IN THE *RUNYAN* ORDER PRECLUDE ITS ENFORCEABILITY

In arguing the Full Faith and Credit Act as a reason to grant summary judgment to Defendants, they overlook another critical defect in the *Runyan* Arkansas proceeding: the *Runyan* court never acquired subject matter jurisdiction over that case under the Arkansas Constitution because the Defendants and the *Runyan* plaintiffs, having already entered into agreement as to all material terms before suit was filed, had no justiciable controversy between them. Similar to the restrictions Article III places on federal courts, under Arkansas law, a circuit court has no subject matter jurisdiction to entertain an action where a pre-litigation agreement between parties has dispensed with all adversity between them before the action is filed. The *Runyan* Order was also flawed because that court's procedure leading to the order was fundamentally flawed and deprived absent class members of the minimal due process protections to which they are entitled under the Fourteenth Amendment of the United States Constitution. Consequently, the *Runyan* Order (D.E. 20-3 and 20-4) presents no obstacles under the Full Faith and Credit Act to the present civil action.

12

### A.    Defendant Bears the Burden of Proving *Res Judicata*

"Claim preclusion, like issue preclusion, is an affirmative defense…. Ordinarily, it is incumbent on the defendant to plead and prove such a defense,…and we have never recognized claim preclusion as an exception to that general rule." *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008); 18 Wright & Miller §4405, p. 83 ("[A] party asserting preclusion must carry the burden of establishing all necessary elements."). Accordingly, before it is entitled to judgment on the claims asserted here on behalf of Mr. and Mrs. Hege, Transamerica must prove all of the elements required to show the *Runyan* Order is entitled to *res judicata* in this case.

### B.    The Elements of *Res Judicata* Recognized by Arkansas Law

In analyzing the application of *res judicata*, Plaintiffs agree that this Court must first look to the law of the rendering State (Arkansas) to ascertain the *Runyan* Judgment's *res judicata* effect, if any. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 375 (1996). According to the Arkansas Supreme Court, "*Res judicata* means that 'a thing or matter has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction.'" *Beebe v. Fountain Lake Sch. Dist.*, 231 S.W.3d 628, 635 (Ark. 2006) (*quoting Hunt v. Perry*, 138 S.W.3d 656, 659 (Ark. 2003)). In order to carry its evidentiary burden of proving the *Runyan* Order operates as <u>res judicata</u> in this case, Defendant must prove the following five (5) elements:   (1) the first suit resulted in a ***final*** judgment on the merits;  (2) the first suit was based on ***proper jurisdiction***; (3) the first suit was fully ***contested in good faith***; (4) both suits involve the ***same claim*** or cause of action; and (5) both suits involve the same parties ***or their privies***.  *See id.* (citing *Office of Child Support Enforcement v. Willis*, 59 S.W.3d 438, 443 (Ark. 2001). (emphasis added); *see also Martin v. Bobo*, 292 S.W.3d 865, 868 (Ark. Ct.

13

App. 2009). Defendant has failed to establish all of these elements and, accordingly, this Court should not grant summary judgment.

### C.     Defendant Fails to Establish the Elements of *Res Judicata*

Contrary to Defendant's presumption otherwise, the Full Faith and Credit Clause does not, and cannot, extend to judgments rendered in violation of due process. *Griffin v. Griffin*, 327 U.S. 220, 228 (1946); 50 C.J.S. *Judgments* § 1277 (June 2009); 5 <u>Newberg on Class Actions</u> § 16:25 (4th ed. Nov. 2009) (One of the threshold considerations a court must make before applying *res judicata* to a class judgment is "whether the initial proceeding complied with due process.") (citing *In re TransOcean Tender Offer Sec. Litig.*, 455 F.Supp. 999 (N.D.Ill. 1978); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979). *See also McNeil v. Guthrie*, 945 F.2d 1163, 1167 (10th Cir. 1991) (class members have the right to file a collateral suit alleging that class counsel is not adequately representing the class); *Shults v. Champion Intern. Corp.*, 35 F.3d 1056, 1058-59 (6th Cir. 1994) ("[C]lass members may indirectly challenge the validity of a judgment in a class action by mounting a collateral attack on the adequacy of the class representation. A judgment has no *res judicata* effect as to absent and unnamed members where the class representative fails to provide adequate and fair representation"). Therefore, if the absent class members to the *Runyan* proceedings lacked proper notice or were not, in fact, adequately represented throughout those proceedings, then the *Runyan* Judgment is not entitled to Full Faith and Credit.

Moreover, the question as to whether the *Runyan* Judgment satisfied due process is a question that this Court must <u>independently</u> decide. At the very least, there is a material issue of fact as to whether the *Runyan* Judgment actually satisfied due process. (**Exhibit 1**, ¶ 14)

14

Also, the findings within the *Runyan* Judgment, including its due process findings, are not binding on this threshold inquiry. As the Tenth Circuit has recently recognized, "it is well settled that a court adjudicating a class action cannot predetermine the *res judicata* effect of its own judgment; that can only be determined in a subsequent suit." *Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008); 5 <u>Newberg on Class Actions</u> § 16:25 (4th ed. Nov. 2009).  In fact, this Court cannot give *res judicata* effect to the *Runyan* Judgment unless and until this Court independently determines two issues:

> (1)  whether in "hindsight," the *Runyan* Judgment "correctly" determined that the due process rights of absent class members were "in fact" adequately represented up to that point given "the actual conduct of the litigation;" and

> (2) whether "after" entry of that judgment, the due process rights of those absent class members continued to be adequately represented.

*Pelt*, 539 F.3d at 1285-1287 (approving of this two-prong test recognized in *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973)).[6]  *Pelt* not only requires this Court to conduct a "hindsight" analysis of the "correctness" of the *Runyan* Judgment's due process findings, but it also requires this Court to consider the adequacy of the class representation even after the entry of that judgment.  As such, this Court cannot blindly accept the due process findings contained within the *Runyan* Judgment as dispositive on its validity without ever holding Defendant to its burden of proof or performing any "hindsight" analysis whatsoever as to the "correctness" of those findings.

---

[6] Throughout its summary judgment memorandum, Defendant relies upon *Matsushita*, 516 U.S. 367, to suggest that the due process findings in the *Runyan* Judgment are somehow self-executing and must be accepted by this Court.  That is not what *Matsushita* holds. In *Matsushita*, the United States Supreme Court merely held that a federal court cannot withhold Full Faith and Credit from a state court judgment because the state court judgment distinguishes claims within the exclusive jurisdiction of federal courts. With respect to whether that state action comported with due process, the Court expressly stated, "***[w]e need not address the due process claim [of appellants], however, because it is outside the scope of the question presented.***" *Id.* at 379 n. 5.

15

As explained herein, there are multiple facts that demonstrate the *Runyan* Judgment was rendered in violation of the due process rights of the Plaintiffs and absent class members. For example, the *Runyan* Court acted arbitrarily when it denied all pending motions to intervene filed by putative class members, calculated to deny the right to appellate review of that decision, denied putative class members the right to appear at the Fairness Hearing, and denied certain putative class members the right to counsel at the Fairness Hearing.[7]

### *(1)     The Runyan Judgment is not "final"*

As discussed above, "one requirement for the application of res judicata is that the first suit resulted in a final judgment on the merits." *Percefull v. Claybaker*, 312 Fed.Appx. 827, 2008 WL 4977432, *1 (8th Cir. 2008) (citing *Winkler v. Bethell*, 210 S.W.3d 117, 122 (Ark. 2005))(emphasis added). In Arkansas, a judgment is not "final" unless it is "of such a nature as to not only decide the rights of the parties, but to put the court's directive into execution, **ending the litigation** or a separable part of it" and if it has been placed "**beyond the power of the court**." *Budget Tire & Supply Co. v. First Nat'l Bank of Fort Smith*, 912 S.W.2d 938, 940 (Ark. App. 1995) (emphasis added). Accordingly, a judgment is not final in Arkansas while it is being appealed because the litigation has not ended and the judgment is not beyond the power of the Court. *See e.g., Eubanks v. Jag Consulting*, 2005 WL 1027557, *2 (Ark. App 2005) (holding that *res judicata* is inapplicable for lack of a final judgment on the merits when the case was appealed, reversed, and remanded); *Stokes v. Twin City Motors, Inc.*, 490 F.Supp. 742, 745 (E.D.Ark. 1980) (for purposes of *res judicata*, judgment only "became final when no Notice of Appeal was filed within 30 days" of its entry).

---

[7]  *See* **Exhibit 11A** (Appellant Daniel Crager's June 9, 2010 Abstract and Brief, pages labeled Arg. 1 - Arg.20); *See also* **Exhibit 11B** ( Appellant Audry Hunter's June 23, 2010 Abstract and Brief, pages labeled Arg. 1 - Arg.28)

16

Numerous policyholders are currently appealing the *Runyan* Judgment. (**Exhibit 11A-11B**). Notably, the *Runyan* Judgment itself expressly states that it "shall have no force or effect" until any appeal thereof is resolved.   The *Runyan* Judgment (D.E. 20-3, p. 11, ¶ 15) states in pertinent part:

> "15.    <u>Termination</u>. If the Settlement Agreement is terminated due to the occurrence of any of the events listed in Section 15 of the Settlement Agreement, **including disapproval by any appellate court**, the certification for settlement purposes and this Final Judgment **shall be deemed vacated and shall have no force or effect**, except that Paragraph 10 and the last paragraph of Paragraph 3 of this Final Judgment addressing the absence of admissions shall continue.

The fact that the *Runyan* Judgment is not a final judgment is reason, by itself, to refuse summary judgment.  Defendant apparently believes the *Runyan* Judgment is self-proving such that its mere entry automatically entitles it to Full Faith and Credit by this Court. This assumption by Defendant is plainly erroneous.

Defendant relies upon *Crockett & Brown, P.A. v. Wilson*, 864 S.W.2d 244 (Ark. 1993),[8] *John Cheeseman Trucking, Inc. v. Pinson*, 855 S.W.2d 941 (Ark. 1993),[9] and *Starzenski v. City of Elkhart*, 87 F.3d 872 (7th Cir. 1996) to argue that Arkansas law recognizes no effect of an

---

[8] In *Wilson*, the Arkansas Court was analyzing a factual situation in which the plaintiff law firm brought a second action against their former client and their former client's lawyers while an appeal was pending on the first action and involved a second appeal regarding the same facts and parties after the Arkansas Supreme Court had already decided the issue in a prior appeal. *Wilson*, 864 S.W.2d at 245-46.  Thus, that case is distinguishable from the case here, where Plaintiffs are challenging, on federal due process grounds, the procedures employed by the initial court (in this case, the Arkansas state court) and the finality of the initial judgment based on the language contained in the settlement agreement itself.

[9] In *Pinson*, the Arkansas Court held that the pending appeal of an initial court's judgment does not render the effect of the appeal meaningless *per se*; in fact, the Court specifically held that an appeal can effect the finality of a judgment if an appeal consists of a trial de novo.  855 S.W.2d at 94.  The *Pinson* Court did not consider the factual situation this Court has before it, such as a challenge to the finality of a judgment based on the language of the settlement agreement itself. That issue does not appear to be resolved under Arkansas law.

appeal upon a judgment for purpose of finality under the doctrine of *res judicata*. Because this reading of Arkansas law is inconsistent with the totality of the available precedent when considering the language of the *Runyan* Judgment itself, Defendant's arguments in this regard should be rejected.  Defendant's attempt to ignore the plain language of Paragraph 13 of the *Runyan* Judgment should be rejected.  Indeed, Defendant would require this Court to give a conditional finality to the *Runyan* Judgment pending appeal given the *Runyan* Judgment's language that its finality is impacted upon a reversal by an appellate court.

> **(2).    *The Runyan Order Has No Preclusive Effect Because The Issuing Court Lacks Subject Matter Jurisdiction To Entertain That "Action" Under The Arkansas State Constitution, Amendment 80, § 6.***

The *Runyan* order does not satisfy the second element for the application of *res judicata* under Arkansas law because the rendering court lacked subject matter jurisdiction over the matter before it. Under Arkansas law, the jurisdiction of a circuit court is limited to justiciable controversies where there is actual adversity between the parties when suit is filed. In *Runyan*, there was no such adversity. Instead, the interests of the *Runyan* plaintiffs and the Defendants were already aligned and undivided when that action was filed. Accordingly, there was never a case or controversy before the Arkansas circuit court at any point during the life of that action, which in turn means there was never subject matter jurisdiction. Without subject matter jurisdiction, the Arkansas circuit court was "wholly incompetent to grant the relief sought" and precluded from even entertaining the suit "under any circumstances." *See Edwards v. Edwards*, __ S.W.3d __, 2009 WL 3877696 (Ark. 2009) (citing David Newbern & John Watkins, *Civil Practice and Procedure* § 2:1, 19-20 (4th ed. 2006)).

18

Arkansas's jurisdictional requirement of justiciability under its state constitution is indistinguishable from the mandate of federal courts under Article III of the United States Constitution. Amendment 80, § 6 to the Arkansas constitution, like Article III of the U.S Constitution, confers subject matter jurisdiction only over "justiciable matters," or those matters involving a actual cases or controversies. *See Foster v. Hill*, 275 S.W.3d 151, 154 (Ark. 2008) (citing Ark. Const. Amend. 80, § 6 as the bedrock for a circuit court's subject matter jurisdiction). If there is no "justiciable matter," there is no subject matter jurisdiction. *See Edwards*, 2009 WL 3877696 ("A court obtains subject-matter jurisdiction under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules.").

Under federal precedent examining justiciability, a justiciable controversy exists only when the parties are adverse to one another when the suit is initiated. *See, e.g., United States v. Johnson*, 319 U.S. 302, 305 (1943) (holding that dismissal of a case is proper when there is no adversity between the parties); *Muskrat v. United States*, 219 U.S. 346, 361 (1911) (holding that an action brought "to obtain a judicial declaration of the validity of the act of Congress" is not a justiciable controversy to which judicial power may extend). Under no stretch can there be a justiciable controversy when, from the outset of a particular litigation, the parties are in complete agreement, as was the case here when the *Runyan* action was initiated in the Arkansas circuit court. In *Poe v. Ullman*, 367 U.S. 497 (1961), the United States Supreme Court explained:

> The Court has found unfit for adjudication any case that "is not in any real sense adversary," that "does not assume the 'honest and actual antagonistic assertion of rights' to be adjudicated– a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to the adjudication of constitutional questions by this Court."

19

*Id.* at 505 (citations omitted) (quoting *Johnson*, 319 U.S. at 305). In the *Johnson* case cited in the *Poe* decision above, the Supreme Court dismissed a "consent action" where the non-adversarial character of the suit stemmed from the absence of disagreement by the parties, who had specifically arranged to file the suit to bring about a result in furtherance of the defendant's economic interests. *Johnson*, 319 U.S. at 305; *see also* Martin H. Redish & Andrianna D. Kastanek, "*Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of The Adjudicatory Process*," 73 U. Chi. L. Rev. 545, 569 (2006) (discussing the impact of *Johnson* on jurisdiction of federal courts to entertain so-called "settlement actions" where the sole purpose of the suit is to approve a settlement, not to adversely litigate claims) (attached in full for the Court's review as **Exhibit 12**).[10]

The *Johnson* and *Poe* decisions trace their origins to the United States Supreme Court's recognition that adversity is important – and indeed required – in order to meet justiciability requirements and protect against injury to third parties such as that which is attempted by the *Runyan* counsel. In *Lord v. Veazie,* the Supreme Court said:

> [A]ny attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes when there is no real and substantial controversy between those who appear as adverse parties to the suit is an abuse which courts of justice have always reprehended and treated as a punishable contempt of court. . . .A judgment entered under such circumstances, and for such purposes, is a mere form. The whole proceeding was in contempt of the

---

[10] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) does not alter, bend or do away with this justiciability requirement for so-called "settlement actions" in the federal system. While the U.S. Supreme Court eased (but did not dispense with) some of the Rule 23 requirements for certification of a class sought for settlement purposes, it nevertheless noted that "Rule 23's requirements must be interpreted in keeping with Article III constraints." *Id.* at 612-13. Accordingly, justiciability remains a foundational issue for any settlement class where, as here, suit was filed only after the parties reached agreement as to certification and settlement.

> court, and highly reprehensible, and the learned district judge, who
> is then holding the Circuit Court, undoubtedly suffered the
> judgment *pro forma* to be entered under the impression that there
> was in fact a controversy between the plaintiff and defendant and
> that they were proceeding to obtain a decision upon a disputed
> question of law, in which they had adverse interest. A judgment in
> form, thus procured, in the eye of the law is no judgment of the
> court. It is a nullity . . .

49 U.S. 251, 255-56 (1850); *see also Cleveland v. Chamberlain*, 66 U.S. 419, 423 (1861)

("Where there is a pretended dispute between parties merely nominal, it is a fraud upon the court,

even where the object is to get an opinion for the benefit of the parties themselves; but if the

purpose be to injure third parties by collusion between those who are named in the record, it

would be scandal to the administration of justice to let it go on.").  In this case, the *Runyan* court

unfortunately failed to recognize what should have been obvious; the sole purpose for the

*Runyan* action was to "injure" third parties in the same way the foregoing Supreme Court

authorities warn against.

   "Where the parties are in agreement on an issue, an action for declaratory judgment may

not be maintained because there is no controversy between persons whose interests are adverse."

*MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 210 S.W.3d 878, 886-87 (Ark. 2005)

(emphasis added).

   The clearest problem with the *Runyan* action is that there was a pre-litigation agreement

between the Defendants and the *Runyan* plaintiffs (or specifically, *Runyan* Counsel), to use the

"suit" solely as a means of approving a settlement binding putative class members without any

adverse litigation taking place in the Arkansas circuit court. Defendants Lead Counsel informed

the *Runyan* court, that no litigation was ever intended to occur in the *Runyan* action. *See Runyan*

Transcript of April 23, 2009 at 6:16-18 (Mr. Leventhal: "Why we are here before this Court is

21

essentially a procedural matter. We wanted to have a global resolution") (**Exhibit 13**); *Runyan* Transcript of September 16, 2009 at 13:3-11 (Mr. Leventhal: "[We] negotiated a class action settlement for six months, including mediating before a former federal judge, spent months putting together a class action settlement, [and then] bring it to the court, . . ., the settlement court….") (**Exhibit 14**)

Defendants' former Lead Counsel also confirms in his own affidavits that a mutual understanding as to the "major terms of a class action settlement," subject to reducing those terms to a formal agreement, was reached in early March before or around the time the *Runyan* action was filed. *See* Declaration of Markham R. Leventhal at ¶¶ 7 and 8 (filed in *Smith v. Life Investors,* W.D.Pa., Case No. 2:07cv00681 and attached as **Exhibit 15**); Declaration of Markham R. Leventhal at ¶¶ 7 and 8 (filed in *Lindley v. Life Investors,* N.D.Okla., Case No. 5:09cv00513 and attached as **Exhibit 16**). According to Mr. Leventhal's declarations, the Defendants entered into settlement discussions with *Runyan* counsel on October 6, 2008, and then engaged in a two-day mediation on November 20 and 21, 2008. Thereafter, on March 3, 2009, the Defendants and *Runyan* counsel "reached an understanding regarding the parameters of a class action settlement subject to the preparation and execution of a complete, comprehensive class action settlement agreement." **Exhibits 15 and 16** ¶¶ 5, 6 and 7 (*Compare* D.E. 20-9, ¶¶ 5-7).

The Defendants' senior vice president confirms this timeline in his own affidavit filed in South Carolina. *See* Declaration of John Kelly Adams at ¶ 6 (filed in *Belue v. AEGON USA Inc. et al.,* D.S.C., Case No. 7:08cv3830 and attached as **Exhibit 17**). Finally, *Runyan* counsel themselves extinguish any doubt about the fact that substantive settlement occurred before their filing of the *Runyan* action where *Runyan* counsel Mr. Philip Bohrer stated, "This case was not

finished in terms of an agreed-upon settlement until, I want to say, March or February 2009." *See Runyan* Transcript of November 9, 2009, at 45:6-8 (**Exhibit 18**).

From the inception of the *Runyan* action, both the Defendants and the *Runyan* plaintiffs pursued the exact same outcome: to capture a willing court's signature on a pre-litigation contract which may then be used to bind absent class members. The foregoing sworn statements and open-court representations of counsel from both parties in the *Runyan* matter establish that the "litigants" there had already agreed on the terms of both certification and settlement before the *Runyan* action was filed. Without adverse interests when that action was filed,[11] the *Runyan* circuit court had no constitutional authority under Arkansas law to entertain the suit. *See MacSteel*, 210 S.W.3d at 886-87. The court's function was reduced to the role of superintending a preexisting contract reached between two parties who sought to use that court to bind non-parties to their agreement.

Avoiding the adversarial process was something that *Runyan* counsel actively sought, noting that the *Runyan* action, having been brought solely for settlement purposes, was not the place for "contested litigation."[12] The end result of the *Runyan* action being a product of a prelitigation agreement between *Runyan* counsel and the Defendants is that the action became, in principle, a defendant class without any adverse parties.

---

[11] The fact that the *Runyan* plaintiffs had litigation before other courts in various Federal District Court does not cure the jurisdictional defect. Subject matter jurisdiction is determined the instant suit is filed. *See* e.g. *Johnson*, 319 U.S. 302.

[12] *See Runyan* Transcript of September 17, 2009 at 21:5-8 ([*Runyan* counsel Mr. Baudin]: "Allowing interventions in a class settlement setting such as this would . . . promote . . . contested litigation.") (**Exhibit 19**).

In keeping with that reality, the record before the Arkansas circuit court includes repeated instances where the *Runyan* counsel, in all respects, allowed the Defendants to conduct the entire *Runyan* proceeding. For example, in the April 23, 2009 hearing for preliminary approval of the pre-filing settlement, lead counsel for the Defendants presented the settlement, argued for its initial approval, and asked for the class to be certified with almost no substantive involvement from "plaintiffs' counsel," other than his indication of his agreement for preliminary approval.[13]

Overall, the *Runyan* "plaintiffs' counsel" never assumed a lead role in any argument or in the preparation of any pleading, even though they were the ones that at least nominally should have been advancing the merits of the settlement. As even the *Runyan* court acknowledged (surprisingly) in a recent motions hearing, the entire proceeding in state court was being directed by the Defendants, even to the extent of drafting that court's orders. *See Runyan* Transcript of January 19, 2010 at p. 30, lines 11-16 (the Court: "Ms. McCabe [Defendants' counsel], I guess you are going to be left in charge, as usual, on circulating or preparing an order to that effect.") (**Exhibit 20**); *compare also, e.g.,* Defendants' January 28, 2010 correspondence to the *Runyan* court preparing

the orders for the *Runyan* court's execution (**Exhibit 21**) *with* a February 4, 2010 *Runyan* order (**Exhibit 22**), signed without any change).[14]

---

[13] The entire hearing for preliminary approval lasted just long enough to fill twelve (12) pages of transcript. *Runyan* "plaintiffs' counsel" spoke just enough to fill three-fourths of a page of that transcript. *See Runyan* Transcript of April 23, 2009, at p 13, ln. 8 to p. 14, ln. 10 (**Exhibit 13**).

[14] Incredibly, the deference shown to the Defendants extended so far as the Defendants drafting the final orders of the court on class certification. *See* **Exhibit 23**, December 14, 2009 correspondence from Defendants' local counsel.

The filings submitted in connection with final approval show that *Runyan* counsel also did not conduct a single "due diligence" deposition or take any other customary discovery to make sure that assumptions which were a part of that settlement -- conjured exclusively by the Defendants -- were reasonable and supported by the evidence prior to submission of the settlement for final approval. Moreover, *Runyan* "plaintiffs' counsel" never even thought to inquire, let alone challenge, the Defendants' illegal attempt to circumvent insurance statutes and regulations throughout the United States requiring administrative approval before a material change in an insurance policy term can take effect – one of the "centerpieces" of the Arkansas settlement relative to the Defendants' effort to have their class-wide breaches judicially approved.[15]

From inception of the *Runyan* action, all *Runyan* counsel did was initiate the suit (which only they alone could do) and then sit back and wait for the Defendants to pursue the settlement to final approval in accordance with their pre-suit agreement so *Runyan* counsel could collect their fee promised as *quid pro quo* for their complacency.  The "master of the suit" in the *Runyan* court, therefore, became the very insurance company that intentionally breached their contract with the class members.

While *Runyan* counsel's conduct in that litigation most certainly was questionable in many respects, the "fairness" of their conduct prior to entry of the *Runyan* order is not at issue here for purposes of the *Runyan* court's lack of subject matter jurisdiction. Rather, that conduct

---

[15] *See* Redish, "*Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of The Adjudicatory Process*," 73 U. Chi. L. Rev. at 549 ("moreover, given the judiciaries' inherently passive role in the adversary system, absent the incentives to compile and present evidence and argument created by the adverseness requirement, we cannot be assured that a court will have sufficient information to enforce the laws fashioned by the other branches.").

merely highlights exactly why it is that the Arkansas Constitution and case law, like Article III and cases examining subject matter jurisdiction in the federal system, expressly require the existence of a justiciable controversy as a precondition to circuit court subject-matter jurisdiction.

The *Runyan* court's lack of subject matter jurisdiction is fatal to the enforceability of its recent order and all other orders it has previously or since entered. As the Arkansas Supreme Court stated in *Edwards*, a circuit court without subject matter jurisdiction is "wholly incompetent" to render any relief. *Edwards*, 2009 WL 3877696. The perfect unity of interests that existed between the *Runyan* plaintiffs and their counsel on one hand and the Defendants on the other before the *Runyan* action was filed precludes any notion that there was a "justiciable matter" under Amendment 80, § 6 of the Arkansas Constitution providing the *Runyan* circuit court with subject matter jurisdiction. For this reason, under Arkansas law, the *Runyan* judgment is not entitled to preclusive effect, which in turn means that this Court is not required to accord that judgment "full faith and credit" under 28 U.S.C. § 1738. *See Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), *Kremer v. Chem Constr. Corp.*, 456 U.S. 461, 466 (1982).

> ### (3).    *The Runyan Order Has No Preclusive Effect Because That Suit Was Never "Fully Contested In Good Faith."*

The *Runyan* order also does not have preclusive effect because the underlying suit was never "fully contested in good faith," a requirement for the application of *res judicata* under Arkansas law, *see Jayel Corp. v. Cochran*, 234 S.W.3d 278, 281 (Ark. 2006). In fact, as set forth above, the *Runyan* action was never "fully contested" at all. Rather, the proceeding was initiated for the sole purpose of causing a contract between the Defendants and the *Runyan* plaintiffs to be

stamped with a judicial imprimatur in a misguided and illegal effort to preclude absent future litigants from pursuing their claims. As with subject matter jurisdiction, adverseness upon the filing of suit is indispensable under Arkansas law to this "good faith" requirement. *See Nat'l Bank of Commerce v. The Dow Chem. Co.*, 1 S.W.3d 443, 448 (Ark. 1999) (holding that "voluminous briefs, discovery materials, and oral arguments" occurring in adversarial litigation between parties in a proceeding established that the suit had been "fully contested in good faith").

This lack of adverseness resulting from a pre-filing compact unifying the interests of the Defendants and the *Runyan* plaintiffs destroys any notion that the *Runyan* action was ever pursued for purposes of contesting any matter in good faith. As Professor Redish aptly observed in connection with Article III's justiciability requirement:

> Because an absence of adverseness will, in the large majority of cases, signal the failure of one of the litigants to protect the interests of future litigants whose legal rights will be affected (if only as a practical matter), Article III is properly construed to employ the absence of adverseness at the outset of a suit as a rule of thumb by which to measure a litigant's lack of seriousness or good faith.

Redish, 73 U. Chi. L. Rev. at 578 (emphasis added). Professor Redish's scholarly observation applies with equal force here as to Arkansas Constitution, Amendment 80, § 6, which, as set forth above, maintains an identical requirement of justiciability and adverseness between litigants when suit is filed. From the outset of filing their action in the Arkansas circuit court, the *Runyan* plaintiffs were never serious about actually litigating anything in that forum – and actually made effort to prevent actual litigation.  Indeed, because they had reached an agreement

27

with the Defendants not to continue litigating their claims due to their pre-suit settlement, they were precluded from litigating there.[16]

### III.  THE *RUNYAN* COURT DID NOT COMPLY WITH THE MINIMUM PROCEDURAL PROTECTIONS GUARANTEED UNDER THE DUE PROCESS CLAUSE

Apart from the fact that the *Runyan* order is unenforceable under Arkansas law for lack of subject matter jurisdiction and for the absence of good faith litigation by the parties, the *Runyan* order is unenforceable for the additional reason that it was procured in a proceeding which was conducted in a manner that violates the Due Process Clause under the Fourteenth Amendment. At the very least, there is an issue of fact with regard to material omissions and deceitful inclusions on the Class Notice. (**Exhibit 1**, ¶ 14 This lack of due process in the *Runyan* action as to absent class members renders that order unconstitutional. "A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." *Kremer*, 456 U.S. at 482. While *Matsushita*[17] suggests that a state court may pass judgment over due process concerns such as adequacy, the actual *procedure* of the state court is always subject to challenge if it runs afoul of the Fourteenth Amendment. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also Hansberry* 311 U.S. at 42. "Due process requires than an absent class

---

[16] The Defendants may conceivably counter with a generic assertion that consent judgments are binding under Arkansas law. While it is nominally true that consent judgments are entitled to preclusive effect, as set forth in the preceding discussion of applicable authorities, this holds true only if there was jurisdiction in the first instance over the matter in which the consent decree was entered. As set forth above, there was no such jurisdiction because the parties' interests were aligned even before the *Runyan* action was filed.

[17] *Matsushita,* 516 U.S. 367.

member's right to adequate representation be protected by the adoption of appropriate procedures by the certifying court and by the courts that review its determinations…." *Epstein v. MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999) (emphasis added); 5 <u>Newberg on Class Actions</u> § 16:25 (4th ed. Nov. 2009) (One of the threshold considerations a court must make before applying *res judicata* to a class judgment is "whether the initial proceeding complied with due process").

Sadly, the *Runyan* court did little in the way of procedure to protect the rights of absent class members. For example, the *Runyan* court did not prepare a single substantive order on its own accord, choosing instead to allow the Defendants' counsel prepare them. *See* **Exhibits 21 and 22**. These orders were routinely forwarded directly to the *Runyan* court without having been previously shared with other parties to ensure they accurately reflected the proceedings to which they pertained, *id.*, and therefore amounted to *ex parte* contact with that court. This permitted the Defendants to serve as their own judge, a problem compounded by the lack of adversity with the *Runyan* plaintiffs since the suit's inception.

The *Runyan* court also provided absent class members with a mere thirty days to decide whether they wanted to object, "opt in" to the settlement, or file for an exclusion, but the class notice was utterly incomprehensible as to when it was exactly that the thirty day period expired. To make matters worse, if one wanted to object, that person was expected to appear at the fairness hearing, evidence in hand. If the objector had been allowed to pursue discovery into the fairness of the settlement, this requirement may have been understandable. But the *Runyan* court refused all requests by objectors to conduct any discovery, despite case law establishing that such discovery is all but required in such situations. *See Runyan* order denying objectors' requests for limited discovery (**Exhibit 24**).

29

The lack of representation arising from pre-litigation alignment of interests extended directly into the deficiencies contained in the class notice which led to the material omissions from the Class Notice, as detailed by Mr. Hege's Affidavit.[18] (**Exhibit 1** at ¶¶ 10, 12, and 14). It also extended into the settlement agreement which dictates that the class members' insurance policies will be rewritten to ratify the breach by adopting the definition of "actual charges" contained in a one year old South Carolina statute that mirrors Defendants' new interpretation.

The South Carolina statute in question, S.C. Code Ann. 38-71-242(A)(1)(2008), was referred to by *Runyan* counsel during the final fairness hearing in the *Runyan* court. *See* **Exhibit 18**, *Runyan* Transcript of November 9, 2009 at pp. 21 – 24, 61. *Runyan* counsel (Markham Leventhal) referred to prior Fourth Circuit opinions finding that statute to not apply to these particular policies as "ridiculous" during that final fairness hearing. *Id.* The Fourth Circuit recently affirmed its prior decision in that matter finding the statute in the *Runyan* settlement could not apply *ex post facto* to redefine class members' policies, *Ward v. Dixie Nat'l Life Ins. Co.,* 595 F.3d 164 (4th Cir. 2010), and a South Carolina district court recently refused to grant the same supplemental insurer summary judgment as to the application of the South Carolina "actual charge" statute to contracts purchased prior to the effective date of the 2008 statute with regard to claims submitted after the effective date of the statute.  *See Montague v. Dixie Nat'l Life Ins. Company*, *et al.*, 2010 WL 2428805 (D.S.C. 2010) (Monthly renewal of the Policy does

---

[18] In the class notice, there was no mention to those absent class members of the fact that three separate United States District Courts had ruled on the merits granting summary judgment for the plaintiffs against the Defendants' newfound interpretation of the phrase "actual charges" in the contracts at issue. With no actual adversity from another party to contend with, the Defendants literally ran the proceedings.

not effect the creation of a new policy when the policy had been in effect since 1992) (*See* **Exhibit 3**).

Many of the due process problems which occurred in the *Runyan* court can be attributed to the fact that the *Runyan* plaintiffs, having already reached agreement with the Defendants as to certification and settlement, allowed the Defendants *carte blanche* to essentially run every aspect of the case. This lack of true oversight extended to the *Runyan* court itself which, without having adverse parties before it to complain otherwise, delegated to the Defendants' counsel the preparation of its orders. The result is a proceeding rife with defects in due process infecting everything from the class notice to the procedure imposed upon objectors who sought to inquire into the adequacy and fairness of the settlement. For these reasons, the *Runyan* order is not entitled to preclusive effect under the Due Process clause to the United States Constitution.

## IV.    THERE WERE GROSS INADEQUACIES OF REPRESENTATION OF CLASS INTERESTS EXHIBITED BY *RUNYAN* COUNSEL

The Court is not required to give full faith and credit to the *Runyan* order for the additional reason that, after the order was entered, *Runyan* counsel indisputably failed to adequately represent the interests of the class they purported to represent. Inadequate representation occurs when, among other things, class counsel has demonstrated a clear lack of fidelity to the class they supposedly represent. Under the Due Process clause, this deprivation of adequate representation to all class members irreversibly undermines the constitutionality of the order purporting to bind absent class members. *Shutts*, 472 at 812; *Hansberry*, 311 U.S. at 42-43, 45; *see also Shults*, 35 F.3d at 1058-59 ("[C]lass members may indirectly challenge the validity of a judgment in a class action by mounting a collateral attack on the adequacy of class representation. A judgment has no *res judicata* effect as to absent and unnamed members where

31

the class representative fails to provide adequate and fair representation.")(overturned on other grounds).

Runyan counsel's classwide breach of fiduciary duty and abandonment of ordinary class counsel obligations occurred not just throughout the course of the Runyan proceedings as discussed above, but also in the aftermath of the entry of the December 21, 2009 Gooch Order (264 F.R.D. 340) certifying a nationwide class and entering partial summary judgment in Plaintiffs favor. Given the Gooch Order (known to Runyan counsel as a result of a motion to reconsider later filed in that proceeding citing the Gooch Order), Runyan counsel was indisputably obligated at least to attempt to persuade the Runyan court that its competing order should be temporarily vacated until the Sixth Circuit ruled on whether class certification was proper in the Gooch action.

Indeed, Runyan counsel could have qualified the request for vacatur by asking that it be subject to reinstatement if the Sixth Circuit reversed class certification. Yet inexplicably, Runyan counsel failed to do so. See, Runyan Transcript of January 19, 2010 (**Exhibit 20**). In fact, not only did Runyan counsel not argue for temporary vacatur, but counsel shockingly **opposed** that exact same request when it was raised and argued by objectors. See Runyan Transcript of January 19, 2010, at p. 27 (**Exhibit 20**). As one would expect in a situation where Runyan counsel's interests are aligned with the Defendants, Runyan counsel's only possible motivation for declining the opportunity to obtain what would have been complete relief for each of the claims they purported to raise on behalf of the Runyan class is that the lawyers wanted to preserve their $3.5 million fee.

Importantly, the Defendants' argument under Matsushita and related cases that the Runyan order disposes of any challenges to adequacy of representation and other matters of Due

Process does not encompass this particular instance of decisively inadequate representation by *Runyan* counsel. *Runyan* counsel's breach of its obligations to the class occurred after the *Runyan* order was entered; therefore, that order did not purport to adjudicate adequacy of representation <u>after</u> that date, only before it. Thus, there is no "order" absolving *Runyan* counsel of inadequacy for abandonment of class interests after that date. For this reason, *Matsushita*, *Epstein* and other cases cited by the Defendants cannot apply here under any imaginable circumstance.

## V.     THE PRESENT ACTION DOES NOT VIOLATE PUBLIC POLICY

Defendant suggests that the proper role of the federal judiciary is to blindly accept the findings of a state court judgment despite fatal due process violations.  Defendant's argument misses the mark.  Plaintiffs are requesting that the Court uphold principles of federalism by evaluating the fairness of the procedures adopted by the Arkansas state court for due process violations.  After all,

> "Without the right of due process the other constitutional rights and privileges of our citizens, and indeed the rule of law, become illusory. The right to due process is the cornerstone of our other rights and liberties, and it must not be undercut.  All of the other provisions of our constitutions assuring rights to citizens are of no avail if the right to due process can be circumvented or successfully inhibited."

*Atchison v. Career Serv. Council of State of Wyo.*, 664 P.2d 18, 27 (Wyo. 1983); *see also Albright v. Oliver,* 510 U.S. 266, 303 (1994) ("bulwarks of protection such as the Magna Carta and the Due Process Clause guarantee not particular forms of procedure, but the very substance of individual rights to life, liberty, and property.") (internal citation and quotation omitted); Thus, it is due process that serves as the foundation of federalism under our system of government, and it is due process that should guide this Court's analysis.

Despite its effort to advance a contradictory argument, Defendant concedes, at least implicitly, that this Court is empowered under these principles of federalism to determine whether the Arkansas state court proceedings comported with the procedural due process requirements of the Fourteenth Amendment.[19]

## VI.     THE *RUNYAN* JUDGMENT, INCLUDING ITS "RELEASE" PROVISIONS, DOES NOT BAR THE PRESENT CLAIMS.

As explained above, this Court is empowered, under principles of federalism, to conduct an independent analysis of the *Runyan* Judgment to determine whether the procedures relied upon by the Arkansas state court comported with fundamental notions of due process. Despite this irrefutable fact, Defendant continues to argue that the release provision of the *Runyan* Judgment, standing alone, can defeat Plaintiffs' claims. Defendant's attempt to utilize the release provision in this manner fails as a matter of law, for the reasons set out above.

Defendant's reliance on *Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53 (1st Cir. 2004) proves as much. The *Reppert* Court specifically stated that a "court-approved settlement containing a release **may** be applied against a class member who is not a representative member, even if that member objects to the settlement, **so long as acceptable procedural safeguards have been employed.**" *Reppert*, 359 F.3d at 58 (internal citation omitted) (emphasis added). Thus, a condition precedent to the validity of a Arkansas Class Settlement is the adherence to procedural due process in rendering the settlement. The very purpose of Plaintiffs' present collateral attack is to prove that the *Runyan* Settlement did not

---

[19] Indeed, Defendant's reliance on *Kremer,* 456 U.S. 461 and *Kiowa Tribe of Okla. v. Lewis*, 777 F.2d 587, 591 (10th Cir. 1985) proves as much. *See Kremer*, 456 U.S. at 482 ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."); *Kiowa Tribe*, 777 F.2d at 591 (recognizing that the federal judiciary may examine whether a state court's judgment is fundamentally flawed).

34

comport with fundamental notions of due process in the procedures the Arkansas state court employed in rendering the settlement and judgment.[20] (**Exhibit 1**) (Hedge Affidavit at ¶ 9-10, 12, and 14).

## CONCLUSION

For all of the above reasons, Defendant Transamerica's motion for summary judgment [D.E. 20] should be denied in its entirety.  In the alternative, Plaintiffs request that the Court reserve its ruling until after Plaintiffs' counsel have had the opportunity to engage in additional discovery as to the issues set out in this memorandum, pursuant to Rule 56(f), FRCP. (*See* **Exhibit 25**) (Order Granting Discovery to Explore Adequacy of Post-Judgment Representation of Class).

ATTORNEYS FOR PLAINTIFF:

William E. Hopkins, Jr. (#6075)
Susan F. Campbell (#9002)
**McCutchen Blanton Hopkins
& Campbell, LLP**
1414 Lady Street (29201)
Post Office Drawer 11316
Columbia, South Carolina 29211-1316
Phone:  (803) 256-6152
Fax:      (803) 256-6155
Email:  wehopkins@mbhclaw.com
Email:  scampbell@mbhclaw.com

---

[20]  The other case to which Defendant cites in its Memorandum, *Grant County Sav. & Loan Ass'n, Sheridan, Ark. v. Resolution Trust Corp.*, 968 F.2d 722 (8th Cir. 1992), is clearly distinguishable. *Grant County* has nothing to do with the ability of a plaintiff, who was not a party to the initial settlement agreement, to collaterally attack the settlement agreement for lack of due process, thus rendering the settlement agreement void and unenforceable.  Rather, that case dealt with whether a release provision in a settlement agreement between the same parties as the subsequent lawsuit waived the right to setoff in the initial agreement.

Patrick E. Knie (#2370)
**Patrick E. Knie, PA**
Post Office Box 5159
Spartanburg, South Carolina 29304-5159
Phone: (864) 582-5118
Fax:     (864) 585-1615
Email:  pknie@knielaw.com

**Gary E. Clary** (#157)
111-2 Hammock Court
Central, South Carolina 29630
Phone:  (864) 415-0886
Fax:     (864)250-8829
Email:  gclaryj@bellsouth.net

**Andrew J. Johnston** (#4707)
Post Office Box 3252
Spartanburg, South Carolina 29304
Phone: (864) 591-1093
Fax:     (864) 591-1371
Email:  ajohnston@spartanburglegal.com

Columbia, South Carolina

October 21, 2010