# EXHIBIT 10

```
                 IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
                                   THIRD DIVISION

    EDISON RUNYAN; DWIGHT PIPES; EARL L. PURIFOY; JOHN ROSS,
    As the Legal Representative of ELIZABETH ROSS; MARY
    WEIDMAN; DURAIN WEIDMAN; MARION HARRIS; and VAN R.
    NOLAN, Each Individually, and on Behalf of All Others
    Similarly Situated,

                                                    Plaintiffs

    V.              CV 2009-2066

    TRANSAMERICA LIFE INSURANCE COMPANY; LIFE INVESTORS
    INSURANCE COMPANY OF AMERICA; MONUMENTAL LIFE INSURANCE
    COMPANY; and AEGON USA, INC.,

                                                    Defendants


                           A P P E A R A N C E S

    REPRESENTING THE PLAINTIFFS:
       TOM THOMPSON, Esquire
       Murphy, Thompson, Arnold, Skinner & Castleberry
       Post Office Box 2595
       Batesville, Arkansas   72503

       STAN P. BAUDIN, Esquire
       Pendley, Baudin & Coffin, LLP
       24110 Eden Street
       Plaquemine, Louisiana   70764

       PHILIP BOHRER, Esquire
       SCOTT E. BRADY, Esquire
       Bohrer Law Firm, LLC
       8712 Jefferson Highway, Suite B
       Baton Rouge, Louisiana   70809

    REPRESENTING THE DEFENDANT:
       JOHN K. BAKER, Esquire
       Mitchell, Williams, Selig, Gates & Woodyard, PLLC
       425 West Capitol Avenue, Suite 1800
       Little Rock, Arkansas   72201

       MARKHAM R. LEVENTHAL, Esquire
       JULIANNA THOMAS McCABE, Esquire
       Jordan Burt, LLP
       777 Brickell Avenue, Suite 500
       Miami, Florida   33131
```

```
 1   REPRESENTING NAOMI CROCKER:
         RICHARD T. PHILLIPS, Esquire
 2       JASON NABORS, Esquire
         Smith Phillips
 3       Post Office Drawer 1586
         Batesville, Mississippi   38606
 4
     REPRESENTING JACKIE QUEEN, HOWARD BARNHILL,
 5   JOANNE W. GIBSON, STEPHEN K. HEGE, AND LILLIAN LOGAN:
         PATRICK KNIE, Esquire
 6       Post Office Box 3544
         Spartanburg, South Carolina   29304
 7

 8   REPRESENTING WILLIAM SHEPHERD:
         TODD TURNER, Esquire
 9       DAN TURNER, Esquire
         Turner & Turner
10       Post Office Box 86
         Arkadelphia, Arkansas   71923
11

12

13

14

15       BE IT REMEMBERED, that on the 9th day of

16   November, 2009, the above-referenced cause came before

17   the Honorable Jay Moody for hearing.  The proceedings

18   were had and done as follows:

19

20

21

22

23

24

25
```

1  information, that letter contained those two motions,
2  and then it contained the supplemental materials that
3  we submitted.
4      MR. BOHRER: We have it. We just had not seen it
5  referred to.
6      THE COURT: Here's the motion to carve out, if
7  you want to look at it real quick. I'll bet you could
8  read it in about 20 seconds.
9      MR. LEVENTHAL: Well, I mean, looking at this,
10 Your Honor, this is nothing more than trying to convert
11 an objection into a motion. If the Court wants to hear
12 argument on it, we'll be glad to argue it.
13     THE COURT: All right. Can I have mine back, or
14 do you need it to argue? Go ahead, Mr. Knie.
15     MR. KNIE: Thank you, Your Honor. May it please
16 the Court, Patrick Knie from Spartanburg, South
17 Carolina. The first motion before the Court is a
18 motion to carve out South Carolina as a class. We're
19 actually asking this Court for relief in the form of
20 being totally released from this litigation.
21 Obviously, the Court has the power, in the alternative,
22 to create a subclass that would protect and define the
23 rights that are unique to the citizens of South
24 Carolina.
25     Very briefly, Your Honor, there are three main

1    issues that I would like to cover.  First, I'm sure as
2    the Court is well aware, South Carolina is -- from the
3    plaintiff's perspective, is very fortunate to have the
4    Ward decision, which is the rule of law in our state.
5    The Ward decision defined -- found that "actual
6    charges" was an ambiguous term.  And therefore, the 4th
7    Circuit Court of Appeals looked at it in favor of the
8    plaintiffs and said that actual charges meant the
9    actual amount billed by medical providers.
10            As a result of that 4th Circuit decision, the US
11   District Court in South Carolina ultimately granted
12   summary judgment and judgment on the pleadings.  I have
13   those documents, Your Honor, with me.  And in this maze
14   of materials that we have, sometimes they're hard to
15   find.
16            But if I may, Your Honor, I would hand up the
17   order on damages in the South Carolina case.  Actually,
18   it's the order of judgment.  I apologize.  The
19   significant -- if I may, Your Honor.
20            THE COURT:  Sure.
21            MR. KNIE:  The significant point in that order of
22   judgment is -- and for counsel's information, that's
23   entry number 403 Federal District Court in South
24   Carolina in the Ward case, is the exhibit.  And what
25   happened as a result of the fact that summary judgment

was granted, Your Honor, is that South Carolinians in that case, which is an identical case to our case, were not awarded a maximum of $15,000, but were awarded amounts like 75,000, 126-, 193,000, 167-, amazing amounts of money because these policies were very lucrative as they were first administered.

And so to force South Carolinians to be put in a category with individuals from other states that don't have the benefit of the Ward decision would be a travesty of justice for those individuals. Mr. Hege alone has $75,000 in claims pending. He's a terminal cancer patient. He may end up with $300,000 in claims. So we would first say, because of the Ward decision alone, South Carolinians should be carved out.

Secondly, the defense in this case has made a great deal, not only in South Carolina, but with respect to the whole national class in talking about a South Carolina statute which was enacted in 2008 that now defines what they believe to be the correct definition of actual charges. Well, what they have not informed the Court is that in fact, that statute has been ruled by this same judge, Judge Joe Anderson, as prospective in nature, meaning that it does not apply to any of the policyholders that are subject to this class action settlement.

1         Now, the travesty of all that is, that statute is
2    in the class notice.  And so when South Carolinians
3    read the class notice and saw that there's this statute
4    that defines actual charges in some new way and that it
5    must apply to them, that's totally incorrect.  And with
6    the Court's permission, I would pass up that order -- I
7    think it deals with other things, as well.  But I think
8    page 6 -- well, page 7 I've actually highlighted for
9    you, Your Honor, where it will show as clearly
10   prospective.
11        So there's a problem, Your Honor, of course, with
12   the notice because of that.  We have the Ward decision.
13   And I'll wait a minute while the Court reads.
14        THE COURT:  I've read it.  Thank you.
15        MR. KNIE:  But we are even more unique.  We have
16   a South Carolina insurance regulation that is in effect
17   in our state that says you cannot reduce or eliminate
18   benefits of a policyholder in our state without their
19   signed agreement to that effect.  So what this Court
20   would be doing is judicially setting aside that
21   insurance regulation and saying despite the fact that
22   South Carolinians have to sign for them doing what they
23   want to do to us, this Court is saying that's okay.
24   And as far as this class settlement, that doesn't
25   matter.  And I don't -- I wouldn't think that would be

1  the Court's intent to do that.
2       Now, in addition, Your Honor, to the best of my
3  knowledge, these gentlemen, in their effort to bring
4  this matter before the Court, have not done any
5  detailed analysis of South Carolina law. And if they
6  have, I certainly have not seen it thus far presented
7  to the Court.
8       Your Honor, the -- there is a US Supreme Court
9  decision that says in a national class, that that is
10 important. And of course, had they done that for this
11 Court -- and they may still be planning on doing that
12 today -- this Court would be aware of the points that I
13 have just made.
14      Your Honor, one last point that I think is very
15 important. We have a line of cases that follow a state
16 court decision, Nichols v. State Farm, that creates a
17 common law, a bad faith cause of action specifically
18 against insurance companies in our state. Now, what
19 that would allow these objectors and other class
20 members to do in South Carolina is to bring individual
21 actions, just not for their actual damages -- in some
22 of these cases, actual damages, as the Court can
23 readily see, go to 2-, 300,000. But also to obtain
24 punitive damages.
25      Why would we assume that these may be punitive

1  damages cases? We only have to look to the Metzger
2  decision in Oklahoma, where the Court -- where the
3  plaintiff was granted over $10 million in punitive
4  damages in that individual case.
5        So what I'm saying is, we really are unique, Your
6  Honor. We really don't belong in this class. We have
7  a pending federal district court class action going on
8  in South Carolina that can certainly adequately protect
9  these South Carolinians. There are 6,269 of them that
10 are policyholders. I think 231 have been stricken by
11 cancer and would have claims in this settlement. Many
12 of those are going to be six figure claims.
13       And so it's the old story that sometimes in
14 trying to make one size that fits all, it just doesn't
15 work. And the best thing to do is to shrink the class
16 a little bit to a size that is manageable, where all
17 the class members are being treated the same way.
18 Because South Carolinians would be treated disparately
19 if they were involved -- if they were required to stay
20 in the class. I don't want to wax on too long. I know
21 you've got a lot to do, Your Honor. I do have another
22 motion to make.
23       THE COURT: All right. Go ahead.
24       MR. KNIE: I filed, I believe, as a written
25 motion asking the Court to extend time to opt out and

1   require further disclosure.  Some of the arguments are
2   the same, Your Honor.
3         The South Carolina notice -- I mean, the notice
4   that South Carolinians received, just like everybody
5   else, Judge, talked about this South Carolina actual
6   charges statute.  All they had to do is to add one
7   sentence to that notice to say, "However, it only
8   applies prospectively --" or in the future to make it
9   clear to South Carolinians that it really does not
10  apply to current policyholders.
11        But they didn't do that, and they are --
12  certainly were aware of the state of the law or should
13  be aware of the state of the law, and should be aware
14  of Judge Joe Anderson's decision.  If they were
15  required to renotice, we could solve several blunders
16  and inadequate explanations and, frankly, a
17  misrepresentation about the South Carolina statute.
18        Your Honor, there's another problem that I would
19  like to call the Court's attention to, and there's
20  another reason why this matter needs to be renoticed.
21  And there was a letter -- one of several South
22  Carolinians received letters in response to complaints
23  why are you cutting my benefits.  Here's an example of
24  one received by one policyholder on August 15th, 2006,
25  from a Connie Whitlock, vice president of the

```
 1   defendant.
 2          And on page 2, Your Honor, you will see that
 3   Ms. Whitlock refers to the district court decision in
 4   Ward, the first decision before it was reversed by the
 5   Supreme Court -- I mean, the Court of Appeals.  And
 6   it's telling this policyholder, "This is the rule of
 7   law in South Carolina."  Well, the problem, Judge, if I
 8   may, is that they never wrote and told these
 9   policyholders later that the rule of law had changed.
10   And it would have been very simple to do that in 2009,
11   when they sent out the class notice, some three years
12   later, by simply saying, "By the way, the Ward decision
13   has now been reversed in South Carolina."
14          Would that have been a fair notice?  Absolutely.
15   And in a national class, the law is clear.  You have a
16   duty, if you're sending out the notice, to advise
17   various states of particular and unique laws in their
18   state.  So while that was not a misrepresentation when
19   it was mailed, the failure to later inform the class in
20   the class notice of what took place, Your Honor, at
21   least as to South Carolinians, misled them.  So for
22   those reasons, we feel like a new notice needs to be
23   sent and that it needs to have further disclosure to
24   South Carolinians, in the event that the Court just
25   doesn't carve us out, which is the simple solution to
```

1  this problem, Your Honor.
2       Your Honor, also, in the alternative, once again,
3  it's my understanding that if the Court, for some
4  reason, chose to deny these first two motions -- and I
5  would hope that you would grant the first. Then I
6  would move in the alternative -- and I believe during
7  the course of the hearing in Arkansas, you can move
8  verbally without the need for filing a written
9  pleading. But I would move that you would at least
10 allow Steve Hege and Lillian Logan, a Georgia class
11 member that I represent, to opt out of this class.
12      Mr. Hege nor Ms. Logan had counsel when they
13 decided to object rather than opt out. They're
14 terminally. I mean, they couldn't travel here to
15 Arkansas to defend themselves. They have secured my
16 services since.
17      And the sad part with Mr. Hege, being a South
18 Carolinian, he had to make the decision to object
19 rather than opt out not knowing about the Ward
20 decision, not knowing about the prospective nature of
21 the South Carolina statute, not knowing about the South
22 Carolina insurance regulation, or the line of cases in
23 Nichols about bad faith because it wasn't in the
24 notice. So in the end, what we're all about, this is
25 a, quote, "fairness hearing," Judge. We're just here

1    THE COURT: I understand. Who else?

2    MR. DAN TURNER: If the Court is going to hear
3 our motion, I'm 10 minutes, 15 minutes maybe.

4    MR. KNIE: May it please the Court, although I
5 had preliminary motions, I do have objections to put on
6 the record. And it will be brief because obviously
7 some of the previous arguments will be incorporated
8 into the objection.

9    THE COURT: That gives me an idea what I need.
10 Court will be in recess till 1:15.

11                    (Recess.)

12    THE COURT: Go ahead, Mr. Knie.

13    MR. BOHRER: Your Honor, may I interrupt one
14 second, please? Just we would like to lodge an
15 objection on behalf of both plaintiff and defendant to
16 Mr. Knie presenting with respect to any objection. To
17 our knowledge, there has been no timely filed notice of
18 appearance in accordance with the preliminary approval
19 order and as set forth in the notice.

20    And to be consistent, Your Honor, I know this
21 issue arose last month with an attempt by Mr. Tony
22 Gould to appear through an untimely notice of
23 appearance, and the Court denied that. So for
24 consistency purposes, and because there is no timely
25 filed notice of appearance, we object to Mr. Knie

1  presenting today on behalf of an objector.
2      THE COURT: All right. And I, to be honest with
3  you, lost track of who has done what. And I appreciate
4  that. Mr. Knie, I am going to let you do a couple of
5  things, one, make any record you want on that issue.
6  And I'm trying to look through here. And on whose
7  behalf were you going to be arguing your objection?
8      MR. KNIE: Only on behalf of Mr. Stephen Hege,
9  who employed me very recently, Your Honor, well after
10 the deadlines. And he is terminally ill and takes
11 treatments daily.
12     In addition to that, his immune system is such
13 that he is unable to come to a public forum himself.
14 He and his wife have purchased a self-contained camper
15 to travel in with bathroom and everything, so they're
16 not exposed to the public. This is about fairness.
17 And if there's ever been a situation which screams out
18 for the Court's discretion to allow someone to speak
19 when an individual unrepresented didn't request to
20 speak under those circumstances, I would argue that
21 this is it. I will be very brief. As I said, I do
22 have a plane to catch. I'm not going to tie up much of
23 the Court's time.
24     THE COURT: Well, I have his letter here. It was
25 received in the clerk's office on June the 29th, 2009.

1   And I will let you speak briefly, but am considering
2   essentially this as his objection, this meaning his
3   letter that was sent, I guess.
4         MR. KNIE:  Thank you, Your Honor.  I appreciate
5   it.  I'm sure he appreciates it, as well.  If I may,
6   Your Honor.
7         THE COURT:  All right.
8         MR. KNIE:  First of all, I know the Court
9   recognizes that Mr. Hege, as an objector in June of
10  this year, was not a lawyer, and he could only
11  factually, and as a lay person, speak his feelings and
12  certainly could not speak to legal issues and the
13  things that this Court must consider as a legal matter.
14        The first point I would make by way of objection
15  in asking this Court to not only set aside its
16  preliminary approval, but to deny final approval today
17  is that there is a distinct inter-class conflict going
18  on here.  And it's not a minor one, it is a major class
19  conflict.
20        What we have, Your Honor, is, we have
21  policyholders that have submitted small claims.  And as
22  one of the gentlemen said this morning that spoke, on a
23  $10,000 difference in the claims between the billed
24  amount and the amount they're willing to pay, they're
25  going to get $4,000.  Now, that's 40 percent.  Mr. Hege

1  has got $75,000 in outstanding claims.  But what's
2  happening is that his claims are mushrooming as we
3  speak because of the chemo and the radiation and such
4  that necessarily goes on in this multiple myeloma
5  situation that he's got.
6       So what he's going to have is possibly a $100,000
7  difference, just to use an example, and he will only
8  get a cap of 15,000.  So rather than getting the
9  40 percent, as these gentlemen spoke about, he'll get
10 15 percent.  So that class conflict between the smaller
11 claimants and the largest claimants is such a real
12 inter-class conflict that I would argue that unless the
13 cap is removed, that this Court seems bound to set this
14 proposed settlement aside.  There is no reason for this
15 cap.  This company is going to save hundreds of
16 millions of dollars by this, Your Honor.  And they can
17 afford the cap coming off.
18       The second thing I would say is -- and as
19 Mr. Phillips very wisely pointed out, Your Honor, the
20 class notice is designed to get people in the class.
21 If you really want to be fair, you have an opt-out form
22 just like you have a claim form.  They've got three
23 separate claim forms.  But to a Steve Hege, who did a
24 pretty good job of preparing an objection, Your Honor,
25 there was no opt-out form to use.  He couldn't look at

a form in the face like a claims form and say, "What should I really do?" He would have to create something himself and hope that it complied.

But the worst part, Your Honor, is, why does he have to file a claim at all? He has already filed claims for $75,000. If this settlement is approved, the Steve Heges of the world should simply get a check. The reason they are requiring a new claim is that these counsel know that in class settings, there is generally a very low response to the claims. Many people will just think it's just not worth my time or I'll never get anything out of it, so they don't fill out a claim.

But my point is, if Steve Hege has already submitted a claim for his $75,000 in past due benefits, why, he should get that check right away. He shouldn't be required to have a new judicially-imposed element to his contract that would require yet another hurdle to get money that is due him.

Your Honor, there's also a real issue with the rate freeze. They are saying, "Well, these people are getting a rate freeze of a year." But what, we're now in mid-November. And, you know, unless the Court rules today, it could be that there will be maybe only a 30-day rate freeze. They can't take credit for past consideration. The law of almost every state says that

1  past consideration is not adequate consideration to
2  bind. It has to be present or future consideration.
3  So we would also center an objection that this is not
4  fair consideration.
5      And then last of all, on behalf of Mr. Hege, I
6  would argue that even though Arkansas law does say that
7  there does not have to be a state-by-state analysis of
8  a national class action, Arkansas law cannot just shun
9  what the US Supreme Court has said in the Schutz
10 decision which says that there does need to be one.
11 And I would argue that when the law of a state is in
12 conflict with the United States Supreme Court, that the
13 United States Supreme Court is the court that
14 ultimately decides that.
15     Just two more quick points, Your Honor.
16 Mr. Phillips also spoke to something -- and let me just
17 back up one second. If this settlement is not fair to
18 Steve Hege but most other class participants -- and
19 they say up to 20 percent of the class participants are
20 the high-dollar participants, so this class is not fair
21 to 20 percent of the participants.
22     THE COURT: Well, we're getting a little far
23 afield of Mr. Hege's letter arguing on behalf of other
24 class members.
25     MR. KNIE: Well, arguing on behalf of Mr. Hege,

```
 1   but I'm just using that to show that there's really
 2   20 percent of this class is the Steve Heges of the
 3   world.
 4        THE COURT:  I understand.  This is Steve Hege's
 5   objection and not those.
 6        MR. KNIE:  I'll pull it back in, Your Honor.
 7   Then if he is not being treated fairly, Your Honor,
 8   that violates the Supreme Court case of Amchem Products
 9   v. Windsor which says the Court should reject any
10   settlement which is not fair to all class members.
11        Mr. Phillips made an excellent point earlier when
12   he said that what they're asking this Court to do is to
13   create a coordination of benefits among insurance
14   policies.  And I believe he said that under Mississippi
15   law, that was illegal unless it was in the contract.
16   It is not in these contracts.
17        THE COURT:  Well, and that's not in this letter
18   either.  So I was going to allow you to argue the
19   arguments made by Mr. Hege that he preserved in his
20   letter.  But we're getting well far afield of that.
21        MR. KNIE:  Then I will conclude with my remarks,
22   Your Honor, other than to ask the Court to consider
23   that we be allowed to submit closing argument
24   memorandums on the basis that from 5:30 until 10:00
25   last Friday night, I received 25 e-mails from
```

```
 1   plaintiffs' counsel and defense counsel simultaneously.
 2   I'm not saying they talked, but it was shocking that
 3   they started coming in at exactly the same time, that
 4   contained their memorandum and exhibits for this
 5   hearing today.  It was literally impossible after the
 6   close of business Friday night to adequately respond to
 7   those.  And much has gone on today that requires
 8   digestion and response, I would submit, both by the
 9   Court and counsel.
10         So we would ask for permission to respond to
11   those on a fairly reasonable basis.  And hopefully, the
12   Court will grant that.  And that's all I have, Your
13   Honor.  And I do appreciate your time and your
14   consideration for Mr. Hege and all the South Carolina
15   class members.
16         THE COURT:  All right.  And you are either free
17   to go or stay or walk out when you are ready.  You
18   don't need me to call a break.
19         MR. KNIE:  I'll stay a while.  Thank you, Your
20   Honor.
21         MR. MATTHEWS:  Gail Matthews for the objector
22   James and Loretta Carroll, Daniel Crager, and William
23   and Kathleen McWhorter.  I don't claim to be a class
24   action expert.
25         THE COURT:  You may be now, Mr. Matthews.
```