# EXHIBIT 14, Part 2

 1   other class representatives in this case who adequately

 2   represent Mr. Shepherd and the other class members.

 3   Shepherd's counsel has offered no argument why they

 4   believe these other six class representatives are

 5   inadequate to represent his interests and the class

 6   members' interest.

 7        Your Honor, Mr. Shepherd has not met his burden

 8   for intervention of right under Arkansas law, nor has

 9   he made any compelling argument for permissive

10   intervention.  His only reason for intervening is to

11   delay and/or derail this settlement.  This is not a

12   reason for allowing the intervention, especially given

13   that settlements are favored under the law in Arkansas.

14   Mr. Shepherd's motives run counter to this established

15   legal principle.

16        Furthermore, Your Honor, even if Mr. Shepherd

17   were allowed to intervene, he would only be pursuing

18   claims already brought by the class representatives.

19   His proposed complaint in intervention contains causes

20   of action that were already included in the complaint

21   filed by the class representatives in this action.

22   Like Mr. Crager this morning, he would bring nothing

23   new to the litigation.

24        As we stated this morning, Your Honor, we can

25   find no Arkansas Supreme Court cases allowing an

 1    intervention in a settlement class setting.  It is not

 2    necessary or warranted in this case.  Allowing an

 3    intervention would prejudice the parties and would run

 4    counter to the legal principles that settlements are

 5    favored under the law in Arkansas.

 6         And for these reasons, we believe Mr. Shepherd's

 7    motion should be denied.  Thank you, Your Honor.

 8         THE COURT:  Checking to make sure before we got

 9    to you.  We were there.  All right.

10         MR. DAN TURNER:  I am going to start with my

11    rebuttal, Your Honor.  I am going to start all the way

12    back to Mr. Leventhal, if I can.  He was concerned

13    because he said our only -- Mr. Shepherd is only trying

14    to come in and bust up the settlement.  That's all

15    that's happened.  There's been no litigation here.  A

16    complaint, an answer, and a settlement.  I mean,

17    there's no litigation for Mr. Shepherd to step into.

18    The settlement is the issue.  It certainly is.

19         They want to make a big issue about how we've

20    raised no new claims, but they jumped right to

21    settlement.  They came into this court together, on the

22    same side, to ask the Court to approve a settlement, a

23    settlement that -- and you can look at the class

24    notice.  On page 12 and 13, it says it will apply that

25    South Carolina statute consistent with its definition

1     of actual charges.  And furthermore, they talk about

2     information and misinformation and what not.  That

3     notice that went to every class member, whether it be

4     115,000 -- which I think is what the Court was told at

5     the preliminary fairness hearing, or a quarter of a

6     million, which is another figure I've seen.

7          At any rate, however many people it went to, that

8     notice, there's a statute 38-71-42(a) that doesn't

9     exist.  There's not a class member in the United States

10    that can find that statute because it doesn't exist.

11    They put the wrong statute number in there.  But on top

12    of all of that, they're going to apply that South

13    Carolina statute across the boards.

14         Now, he wants to say that we've inaccurately

15    described the settlement.  That's inaccurate

16    information that was given to people that are expected

17    to take that notice and make a decision as to what to

18    do with it, whether or not to participate in that

19    settlement.  It's concerning that every one of these

20    cases were in federal court.

21         And truly, Your Honor, before you even waste any

22    time looking at any of this, you should convince

23    yourself that there is jurisdiction because every one

24    of these cases started out, either by the plaintiffs

25    alleging or the defendants successfully removing cases

1   to federal court under CAFA.  And now they've come back

2   here.  If they mediated this case because a federal

3   judge somewhere told them to, why didn't they settle

4   this case in front of that judge, the judge that was

5   familiar with the parties and the action.

6        I suspect it's because insurance commissioners,

7   attorneys general, and other federal judges that had

8   similar actions might have had something to say about

9   that.  But at any rate, those are issues that go

10   directly to representation and concerns that

11   Mr. Shepherd has, and they're legitimate concerns.

12        There was a discussion that somehow Mr. Shepherd,

13   I guess -- I think Ms. McCabe said that he would pay

14   less in premiums.  I don't think she meant to say that.

15   I think she meant he wouldn't pay any more in premiums.

16   I don't think that the settlement agreement confers a

17   discount to him for what his premiums are.  I think

18   there was some sort of agreement -- I'll get into that

19   later about the terms of the settlement.

20        But what is important that she talked about was

21   the Ballard case.  And again, Your Honor, we were

22   involved in that case.  Judge John Thomas presided over

23   that case.  There was a motion to intervene that was

24   filed two days before the fairness hearing in a case

25   that had been litigated for three years and appealed

```
 1   twice.  I'm sorry, Your Honor.

 2        Just as quickly as Mr. Shepherd could move to

 3   intervene in this case, he did.  It's just that it

 4   moved rapidly.  Not by any choice or fault of him, but

 5   because the complaint was filed and almost immediately,

 6   there was a settlement proposed.

 7        I don't think this Court needs to consider the

 8   federal rules, any federal authority from the Second

 9   Circuit, or Alabama or anywhere else with respect to

10   the issue of permissive intervention.  And I also don't

11   think there's any dispute whatsoever that the first

12   prong of permissive intervention that says that there's

13   a similar claim or defense by the claimant is met here.

14        The other aspect of that is undue prejudice or

15   delay.  And again, we're talking about a nationwide

16   class action that involves a quarter million people,

17   and we're barely six months into it.  And as this Court

18   recalls, we were here ready to argue Mr. Shepherd's

19   intervention motion once before, and we didn't delay

20   that hearing.  We did not move forward on it, but we

21   were prepared to argue it.

22        I just don't want this Court to think that

23   Mr. Shepherd has taken any steps to delay this Court

24   from taking that action.  I don't think there's any

25   delay.  I don't think there can be any prejudice shown
```

```
 1   that if this Court allows him to intervene, that the
 2   class is somehow prejudiced.  But if you don't allow
 3   Mr. Shepherd to intervene, he is going to be
 4   prejudiced.
 5        There was a comment that was made that what is in
 6   Mr. Shepherd's interest is not good for the rest of the
 7   class.  And really, that's something we should discuss
 8   with respect to our other motion.  But it goes back to
 9   what we believe is important, that there be full
10   disclosure about all of these issues so that this Court
11   can make a determination about a settlement, if that's
12   going to be where this case leads.
13        And we are concerned at this point because
14   Mr. Leventhal made the remark that they had been
15   successful in making their actual charges claims.
16   Well, they've also lost that argument.  They lost it in
17   Gooch.  They've lost it in Oklahoma.  They've lost it
18   in other places.
19        Those are the kind of things that would be
20   information that would be valuable to the Court to make
21   a determination.  That's what we've asked for is to
22   intervene so that we can present some of this
23   information, perhaps conduct some limited discovery,
24   however the Court may proscribe it, to provide you with
25   information so that you can make those decisions if you
```

 1 | believe that this is, in fact, the right and correct
 2 | forum for any of this, for a class action that involves
 3 | residents from all over the country in a situation that
 4 | involves the application of insurance benefits to those
 5 | people when the cases have -- under CAFA, have been
 6 | removed previously to federal court under exclusive
 7 | jurisdiction of those courts because the very argument
 8 | was, class actions of this type, the Congress intended
 9 | for those to be heard in federal court.

10 | And they were, at one time, in federal court.
11 | But now they're before this Court, and we believe that
12 | is improper, as well. I really think most of the rest
13 | of my arguments, Your Honor, are going to be related to
14 | the second motion.

15 | THE COURT: Well, I think it's time.

16 | MR. DAN TURNER: Sir?

17 | THE COURT: I'll let you go ahead.

18 | MR. DAN TURNER: Move right into that?

19 | THE COURT: Move right into that.

20 | MR. DAN TURNER: Okay. Our position on that,
21 | Your Honor, is -- really, there are two issues. The
22 | first I've mentioned several times already, and that is
23 | the jurisdictional issue and the issues of CAFA; the
24 | fact that, as I said, before the defendant had
25 | successfully, in several of these cases, removed these

1  cases to federal court under the exclusive jurisdiction

2  of CAFA.  It's our position, number one, that it would

3  be improper for this Court to consider this case any

4  further in light of that.  It's also of concern that --

5  as I said before, that these settlements were not

6  presented in front of federal district courts in --

7  whether it be in Arkansas, Michigan, Mississippi, or

8  Louisiana.

9       But in addition to that argument, our other

10  argument with respect to the motion to stay is, at this

11  point, because we didn't have the hearing previously,

12  at which point, the notices, we believe, are obsolete.

13  I fully anticipate there is going to be a disagreement

14  on this.  But I would encourage the Court to look at

15  Rule 23 because our procedural rule, unlike some of the

16  other states and federal requirements, actually sets

17  forth the procedure for when you have a compromise of a

18  class action.

19       And I think if you look at that rule, it's very

20  clear that absent class members -- because this Court

21  is looking out for the interest of those absent class

22  members, that absent class members are entitled to

23  notice so that they can attend that fairness hearing

24  and they can see what arguments are made for or against

25  any type of settlement.  There is no way that an absent

1    class member can be given a claim form before that
2    hearing and asked to make that determination, if they
3    want to participate or not, in advance when there's a
4    notice requirement.  Otherwise, the notice requirement
5    is meaningless.
6         If any class member is expected to make a
7    decision as to whether or not he or she is going to
8    file a claim before they even get to come to the
9    hearing that they have the right, under our rule, to be
10   noticed to appear at and, as a matter of due process,
11   to show up and attend, there is no way that can be
12   correct.
13        And so because that has not taken place, and
14   those deadlines are now obsolete, I think this Court --
15   it's our position that the Court should set aside that
16   motion.  All those deadlines would have to be reset.
17        Of course, we believe that there are
18   jurisdictional issues under CAFA, as I've talked about.
19   But there is no way it could be fair to absent class
20   members.  And at this point, I don't think the class
21   members that are out there have no idea what is going
22   on in this case, or when the next hearing is going to
23   be or anything of this nature.  But certainly they're
24   entitled to be provided notice of that.
25        Now, a lot of the issues that we've raised we

1   think fit within our motion to set aside, too, the same

2   arguments about information to be provided to this

3   Court to make a decision about the fairness of any type

4   of settlement.  We think this Court should be provided

5   with all that information after Mr. Shepherd is allowed

6   to intervene and conduct some discovery and then

7   present arguments about that issue.  But those are

8   basically our two positions, in addition to our

9   pleadings that we've filed.  And I'll answer any

10  questions about that, as well.

11       THE COURT:  All right.  Response, Mr. Leventhal

12  or Ms. McCabe, as the case may be?

13       MR. LEVENTHAL:  Your Honor, first, I think that

14  this motion to -- which is entitled a motion to set

15  aside the preliminary approval order and motion for

16  stay of proceedings shows simply that Shepherd doesn't

17  have any valid purpose to intervene.  It's what we

18  argued before.  This is the purpose to intervene is to

19  stay the class settlement.

20       There's not one legitimate reason articulated in

21  the motion as to why this settlement should be stayed.

22  There is not one case cited -- let alone setting aside

23  a preliminary approval order, there is not a single

24  case cited in the motion, nor did I hear one presented

25  in oral argument, to stay the settlement at this point.

```
 1   The one case that is on point is, ironically, the Gooch
 2   case, because that's the case where they ran to the
 3   district court to enjoin this settlement.  And by the
 4   way, they made this same CAFA class action fairness act
 5   argument that you just heard, which is very strange.
 6   But it was rejected by the Sixth Circuit, and let me
 7   explain what it is.
 8        What they're saying is that because there were
 9   some federal cases filed, and then we consolidated them
10   and decided to settle them in a single action, that
11   that can't be done in state court.  Why not?  It's done
12   all the time.  How did we take the plaintiffs from six
13   different actions and combine them into one case?  We
14   filed a consolidated case here in Arkansas, which was
15   the center -- really, the geographical center for this
16   because this is where the company is located.  This is
17   where the Pipes case before Judge Wright was pending,
18   and also the Runyan case in federal court.
19        Why is that proper?  Well, why is it not proper?
20   It is proper.  There is concurrent jurisdiction in the
21   state courts over all those plaintiffs.  There is
22   concurrent jurisdiction on the subject matter.  There
23   is no jurisdictional problem with this case being
24   pending here.
25        And this case -- I don't want to sound like a
```

1   broken record.  This case is a consolidated settlement
2   of the plaintiffs from all those other cases.  It's not
3   as though all of a sudden we got together and filed a
4   case here and then settled it.  You know, nothing else
5   happened.  I mean, you could try to ignore it, if you
6   want.  But the facts are in the record.  There's
7   declarations in the record.  And the facts are that
8   this is a negotiated settlement after several years of
9   litigation, and those cases were combined into this
10  case.  There's nothing wrong with that.  The Class
11  Action Fairness Act does not require us to do that in
12  federal court.
13      That was the argument that was made to the Sixth
14  Circuit.  That was the argument made by Mr. Gould, who
15  represents Audry Hunter, who will be here on
16  October 1st.  His big argument -- he appeared as an
17  amicus in the Gooch case and argued to the district
18  court that the district court should enjoin this
19  settlement because of this class action fairness
20  argument.
21      The argument is based on the faulty assumption
22  that there is -- that the Class Action Fairness Act
23  created exclusive jurisdiction in the federal court.
24  It did not.  What it allowed is cases to be removed to
25  federal court when they involve multiple states.  So

```
 1    multi-state class actions became more easily removable
 2    to federal court.  It doesn't mean you have to settle a
 3    case in federal court or you can no longer settle cases
 4    in state court.  So that argument has been made and has
 5    been rejected.
 6         The second thing I'll briefly respond to is this
 7    idea that notices now need to be resent to the entire
 8    class.  There is absolutely no merit whatsoever to
 9    that.  First of all, the preliminary approval order
10    expressly says that the Court has the authority to
11    continue or stay or reschedule the fairness hearing.
12         And secondly, there is no reason for that at all.
13    The notice went out.  The deadlines for opting out have
14    passed.  The deadlines for objecting have passed to
15    file written objections with the Court.  And if you
16    wanted to appear at the fairness hearing, you had to
17    file a notice of intent to appear.  That deadline has
18    passed.
19         The only people that need notice are those that
20    filed notices of intent to appear and those lawyers who
21    have appeared as objectors or moved to intervene in the
22    case.  So there's no reason to renotice the entire
23    class.  There is no merit to that argument whatsoever.
24    Let me see if I have anything else.  I think that's it,
25    Your Honor.
```

1        MR. BAUDIN: Your Honor, Stan Baudin, again, on

2  behalf of the plaintiff class. In addition to defense

3  counsel's arguments to the Court, at this point,

4  Shepherd is not a party to this action, and he has no

5  standing to bring the motions. Only if he is allowed

6  to intervene, which this Court has not ruled on yet,

7  will he have standing to even bring the motions before

8  the Court.

9        Contrary to the arguments of Mr. Shepherd, no

10  deadlines have been rendered obsolete in this case.

11  Your Honor is hearing these motions in advance of the

12  final fairness hearing, which is what Mr. Shepherd

13  requested as part of his motion in the first place.

14        Further, Your Honor, the Arkansas Rules of Civil

15  Procedure do not require renotice to the class members

16  in this case. The class members were previously given

17  notice that the hearing date was subject to change.

18  And all any class member has to do today is call class

19  counsel, defense counsel, or the clerk of court to find

20  out if the hearing had been continued, stayed, and when

21  it will be reset.

22        Finally, there's no need to stay these

23  proceedings pending further consideration of the

24  matters in the Gooch case, Your Honor. The US Sixth

25  Circuit has overruled the stay that was issued by the

1    district court judge in that case, and that is why we

2    are here today proceeding with these motions.  So for

3    all these reasons, Your Honor, we believe

4    Mr. Shepherd's motions should be denied.  Thank you.

5        MR. DAN TURNER:  Your Honor, the Rules of Civil

6    Procedure that applies, I think, addresses this.  I

7    think clearly, absent class members are entitled to

8    notice.  Yes, the settlement agreement may say that the

9    case may be continued, but how does someone in

10   Washington or Alabama know when that date is continued

11   to?

12       And it's fascinating to me that the plaintiffs --

13   plaintiffs' counsel would object to notice being resent

14   to potential class members when it should be everyone's

15   objective here, aside from the defendants, to look out

16   for the interests of the absent class members.  And

17   certainly that's what the Court is going to do, I know,

18   is to look out for those interests.

19       Those people -- all of them are entitled to

20   notice of this.  And I'm not citing any cases.  I just

21   direct the Court to the Rules of Civil Procedure.  And

22   as I said, I think that's a rule that's not consistent

23   with other jurisdictions.  But I think clearly, the

24   purpose of that is to provide fairness in the

25   information to class members.  And it makes zero sense

1  that you could expect a class member to make decisions

2  before that hearing is held, and they are able to take

3  in all of that information.

4      Mr. Leventhal said that there was not one case

5  cited.  Again, I cite the Court to the rule.  But I

6  don't believe there's a case to be cited because I

7  can't imagine that there's reported authority regarding

8  a situation where a defendant has defeated a plaintiff

9  procedurally and has no other pending issues with any

10  of the plaintiffs, and comes into a court and settles

11  with them, which is what has happened in this case.

12      I mean, none of these other plaintiffs had even

13  motions for class certification set in any of these

14  other jurisdictions.  The one substantive action that

15  took place was the hearing before Judge Wright, and she

16  declared no class.  Plaintiffs inadequate.  And then

17  they settled with those people, and not in her court.

18      On the motion to stay, Your Honor.  I'm sorry.  I

19  deliberately didn't talk about those.  We'll rest on

20  our pleadings there, Your Honor.  It's our position --

21  I did neglect to mention one thing that we disagree

22  with.  Mr. Leventhal said the Sixth Circuit has ruled

23  on this.  There is a motion pending.  I hope the Court

24  has a copy of it.  We submitted it as notice --

25      THE COURT:  I'm not sure if I've got a copy of

```
 1   it, but I am aware, I guess -- I'll tell you what I
 2   think and what I think I'm aware of, and you can decide
 3   whether or not I need to be corrected.  Is that what I
 4   am going to call the Memphis district court, because
 5   I'm not familiar with the districts.  It may be that
 6   the District Court of Tennessee, Western Division, or
 7   whatever, filed what it filed.  And whether or not that
 8   was an injunction telling the defendants or the parties
 9   in this case to remove their pleadings so I couldn't
10   rule on them or, in the alternative, telling me I
11   couldn't rule on them, I don't know that the final
12   result is different in either way, was made by the
13   Tennessee judge.  He was -- that ruling was appealed to
14   the Sixth Circuit.  He was reversed.  And then there's
15   been a motion for rehearing en banc before the Sixth
16   Circuit.  Is that the correct circuit?
17        MR. DAN TURNER:  Yes, sir.  I think that's
18   accurate.
19        THE COURT:  And so whether or not I've got the
20   motions or orders, that's what I understand to be the
21   situation.
22        MR. DAN TURNER:  Yes, sir.
23        THE COURT:  And that you're taking the position
24   that the motion for rehearing en banc essentially sets
25   aside the panel's decision reversing the Memphis judge.
```

```
 1        MR. DAN TURNER:  I want to be careful, Judge.
 2   It's not our position to say you can't make the ruling.
 3   But to the extent that that argument was made that
 4   those jurisdictional questions have been raised and
 5   rejected, I'm saying the entire panel of the Sixth
 6   Circuit --
 7        THE COURT:  I don't take any of this personally.
 8   And he may or may not be able to do what he's done or
 9   not, or whatever.  And I have an academic interest in
10   how all of this works, but I don't take anything
11   personal about how it's going down -- I guess I should
12   say yet.  I'm kidding.  I understand your sensitivity
13   and appreciate it, but it's unnecessary.
14        MR. DAN TURNER:  Okay.  But that's -- we'll rest
15   on our pleadings on the other issue, Your Honor.  If
16   the Court has any other questions.
17        THE COURT:  Did I get all that right?  I assume
18   that's kind of where we are on all of that, the best I
19   can understand.  I'm not sure I completely understand.
20        MR. DAN TURNER:  I think so, Your Honor.  If I
21   could ask Mr. Sinclair, because he's filed the petition
22   for rehearing.
23        MR. SINCLAIR:  Hello, Your Honor.  Tom Sinclair.
24   I'll address briefly the Court's question on the
25   procedure in front of the Sixth Circuit.  The all writs
```

1    motion was granted.  The defendants were ordered to do

2    certain things, take certain actions.  The emergency

3    motion or expedited request for their motion was

4    granted.  The panel of three judges of the Sixth

5    Circuit stayed the injunction and then ordered an

6    expedited appeal on their appeal of the injunction.

7    And we just yesterday received notice that -- well,

8    their brief was filed on the appeal and ours is due

9    here in a couple of weeks, and the Sixth Circuit is

10   going to be taking it up the first or second week of

11   November.

12       So technically, there has been a stay of -- a

13   three judge panel at the Sixth Circuit has stayed the

14   district court's all writs order.  So I just want to

15   make sure technically, but yes.  There is presently the

16   arguments about what the mandate is of the panel, I

17   read what they filed last night at 4:30 and I took a

18   look at it.  There is equal arguments on both sides of

19   this issue.

20       THE COURT:  Of what?  Equal arguments as to

21   whether or not it's stayed or not?

22       MR. SINCLAIR:  Exactly.  The mandate -- the

23   argument presented here is that the filing of a

24   petition for hearing en banc, it equates to a stay of

25   the mandate.  That's in the rules.  It's quoting from

```
 1   the rules.  Now, the counter-argument they presented in

 2   a pleading actually, as an officer of the court, I want

 3   to point out something to you.  They didn't present

 4   their best argument in their pleading.

 5        The best argument that they've got that counters

 6   that argument is that under the local rules of the

 7   Sixth Circuit, a granting of the petition for hearing

 8   en banc operates to, quote, set aside, end quote the

 9   panel's decision.  So if that decision has already been

10   set aside by simply the filing, it's not necessary to

11   use that verbiage when they grant.

12        So I'm not real sure, looking at it as a

13   practitioner.  I know there's an argument on both sides

14   of the issue.  I'm not sure what the Sixth Circuit is

15   going to do with both of those arguments, if they

16   eventually hear them.  But just so you are aware, Your

17   Honor, it is the petition filing that stays the

18   mandate.  But then there's another argument, and they

19   didn't point it out in the pleading, and I wanted to

20   point it out to you, as an officer of the court.

21        I think they've got an equal argument on the

22   other side of it.  Either way, I hope you won't take

23   any of the pleadings that I have to sign in other

24   courts on a personal basis.  I don't believe you have.

25   And I want to make sure it's clear, I'm not concerned
```

1  with proceeding here as a practitioner.  I want to make

2  that clear on the record, and I've made it clear to the

3  other courts when I signed those pleadings.  Thank you,

4  Judge.

5       THE COURT:  You're welcome.  Anything else for

6  the record?

7       MR. LEVENTHAL:  I would like to briefly address

8  that, Your Honor.

9       THE COURT:  Okay.

10      MR. LEVENTHAL:  There are not equal arguments on

11  both sides of that issue.  What they have simply argued

12  to the Court was that by filing a petition for

13  rehearing en banc, that somehow that stayed the order

14  of the Sixth Circuit.  It did not stay the order of the

15  Sixth Circuit.

16      THE COURT:  Well, I understood Mr. Sinclair's --

17  whether or not this is what he said, this is what I

18  understood.  That it wasn't the filing of the petition,

19  it was the order granting acceptance of that that

20  stayed it.  And there -- that may not matter either.

21      MR. LEVENTHAL:  There has been no acceptance of

22  the petition.

23      THE COURT:  I mean, I guess what I'm saying is,

24  you can ask for certiorari or rehearing and it can be

25  denied.

```
 1        MR. LEVENTHAL:  Right.
 2        THE COURT:  You can ask, and it's not until they
 3   grant you that rehearing that anything happens.  And I
 4   guess that may just be a small matter of semantics, but
 5   that's what I understood Mr. Sinclair to say.
 6        It didn't get stayed just because we asked for a
 7   rehearing.  Arguably, it got stayed because we got
 8   granted a rehearing.  It may not -- I suspect that
 9   doesn't make any difference to your argument.
10        MR. LEVENTHAL:  I just want to make clear, the
11   rehearing has certainly not been granted.
12        THE COURT:  Okay.  I didn't have a way of knowing
13   that one way or the other.  That wasn't part of the --
14   only that it has been requested.
15        MR. LEVENTHAL:  So as we sit here, a petition for
16   rehearing has just merely been filed.  In his papers,
17   he argued that the mere filing of that stayed the Sixth
18   Circuit's order because he called it a mandate.  It is
19   not a mandate.  It was a ruling on an emergency motion.
20        A mandate is the final judgment of the Sixth
21   Circuit.  So it doesn't -- it has not been stayed.  And
22   if you are right and he is now conceding that nothing
23   happens and it's not stayed until, you know, the Sixth
24   Circuit grants a petition for rehearing en banc, yeah,
25   we would agree with that.
```

1   So there is nothing, as we stand here now -- the

2   whole purpose of the emergency motion was to allow the

3   fairness hearing to go forward, and that's what the

4   Sixth Circuit ruled on.  And they said we had a

5   likelihood of success on the ultimate merits of the

6   appeal.  And if they didn't grant our emergency motion,

7   we would suffer irreparable harm.  I just wanted to

8   make that clear.

9       THE COURT:  I guess I need to state as a

10  practical matter, until we had these hearings, nothing

11  was going to happen.  It didn't matter if I got stayed

12  or not.  I didn't think he could stay these motions to

13  intervene.  And so I guess until today or tomorrow or

14  arguably October the 1st, I hadn't worried about

15  whether or not I've been stayed or not because it's

16  only going to proceed as fast as it can.

17      And at some point, if we move to decisions that

18  are going to be made and somebody doesn't want it,

19  they'll either ask me not to do it or they'll send a

20  marshal over here.  I don't know.  But I know them all

21  down the street.

22      But I've still got to make a decision on the

23  case.  And I'm not taking it personal, but it hasn't,

24  up to this hour, made any difference to me.  That's

25  probably a bad thing to say on the record.  But I don't

```
 1   know, as a practical effect, that it makes any
 2   difference up to this very point.  And I know that
 3   they're saying I can't do anything beyond these, and
 4   I'm going to make a decision on that.
 5        But your point is well taken, and I have not
 6   looked at the Sixth Circuit local rules.  I haven't --
 7   I know from a state court point of view, if you lose a
 8   case at this level and you appeal it, you've still lost
 9   it until you get it reversed on appeal.  And that may
10   be the argument you're making.
11        Now, whether or not that applies in the federal
12   courts in Tennessee, I don't know.  But your point is
13   well taken.  If we get to that point, and you're right
14   that the full panel of the Sixth Circuit doesn't hear
15   this until November 1st, much less rule on it, then
16   we'll probably find out what they can do because I'm
17   likely going to be faced with that decision, whether or
18   not I make a decision and they let it have effect or
19   not.
20        MR. LEVENTHAL:  Well, just to clarify, Your
21   Honor, the Sixth Circuit is not waiting until November
22   to decide that petition for rehearing en banc.  That's
23   been filed, and it will be circulated among the
24   justices, and they will decide yes or no whether
25   they're going to hear it en banc.
```

1       The appeal -- there's an appeal of the

2  injunction, the appeal itself.  And it's been

3  consolidated with a petition for mandamus in the Gooch.

4  There has been consolidated briefing ordered.  And so

5  there is now -- our brief has been filed.  Their briefs

6  will be filed.  And then an oral argument has been set

7  for November.  That has nothing to do with the petition

8  for rehearing en banc.

9       So as we sit here today, our point is that we

10  went in and got an emergency order staying that

11  injunction, so we're back to the status quo.  We would

12  like to have the fairness hearing rescheduled.  And

13  there is nothing, as we sit here today, preventing that

14  from happening.  Unless there's any questions --

15       THE COURT:  Well, does everybody agree with me

16  that if I set a fairness hearing -- I'm saying in the

17  abstract.  If I set a fairness hearing, whether or not

18  I'm stayed between now and then doesn't really have

19  much effect until we get there?

20       MR. LEVENTHAL:  That's right.  There's nothing.

21       THE COURT:  There's nothing that's going to be

22  happening between then and now other than me ruling on

23  these motions to intervene and what not.  So --

24       MR. LEVENTHAL:  I mean, I don't think anyone has

25  an argument that the Court cannot reschedule the

 1    fairness hearing.

 2         THE COURT:  No.  I understand that.  And I guess

 3    to the extent that that's unresolved over in Tennessee,

 4    I've been trying to proceed without, I guess, testing

 5    their authority.  I mean, there isn't any point in you

 6    picking a fight in that saying -- I'm not going to

 7    stand over there going, "You can't tell me what to do,"

 8    if I don't plan on doing anything before that anyway.

 9         MR. BAKER:  The whole reason our clients went and

10    filed all this stuff in federal court is to free you up

11    to proceed with adjudicating this class settlement as

12    quickly as you can, because there are thousands of

13    people and millions of dollars that are being held up

14    because of the Gooch lawyers' fancy filings.

15         And so we don't want -- and with all due respect

16    to my experience in the Eighth Circuit, at least, it

17    could be a long time before these people rule on all

18    these fancy things.  Right now, the point is, you are

19    free to rule on this case however you want to rule.

20    And we do not want Your Honor to put this thing on a

21    shelf.  We want you to move quickly because there are

22    thousands of people impacted by this, and our company

23    is impacted by it.

24         THE COURT:  Well, and I guess my comments were

25    that I'm likely to do that.  And then once that

1   decision has been made, to see if it has any effect.  I

2   mean, kind of like making decisions when I've been

3   stayed in bankruptcy.  And they say you can say what

4   you want, you can rule what you want.  It doesn't have

5   any effect, because you've been stayed.

6        MR. BAKER:  My point is, we don't want this Court

7   to slow this case down.  We want this Court to proceed

8   quickly.

9        THE COURT:  I'll get Debbie right on that.  Okay.

10  Have I padded your record in case they want this

11  transcript?  Anything further before we go off the

12  record?  Scratching your head, not raising your hand.

13  We're in recess.

14              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

57

```
 1              C E R T I F I C A T E
      STATE OF ARKANSAS          )
 2                              )   SS.
      COUNTY OF PULASKI          )
 3
          I, TAMMIE L. FOREMAN, CRR, RPR, CCR, official court
 4    reporter for the Third Division Circuit Court, Pulaski
      County, Arkansas, certify that I reported the
 5    proceedings by stenographic machine shorthand, reporting
      in the case of
 6
      EDISON RUNYAN; DWIGHT PIPES; EARL L. PURIFOY; JOHN ROSS,
 7    As the Legal Representative of ELIZABETH ROSS; MARY
      WEIDMAN, DURAIN WEIDMAN; MARION HARRIS; and VAN R.
 8    NOLAN, Each Individually, and on Behalf of All Others
      Similarly Situated,
 9                                    Plaintiffs
      V.              CV 2009-2066
10    TRANSAMERICA LIFE INSURANCE COMPANY; LIFE INVESTORS
      INSURANCE COMPANY OF AMERICA; MONUMENTAL LIFE INSURANCE
11    COMPANY; and AEGON USA, INC.,
                                    Defendants
12
      before the Honorable Jay Moody, Pulaski County Circuit
13    Judge, at Little Rock, Arkansas; that said proceedings
      have been reduced to a transcription by me by means of
14    computer-aided transcription, and the foregoing pages 1
      through 26 constitute a true and transcript of the
15    proceedings held to the best of my ability, along with
      all items of evidence admitted into evidence.
16
          I further certify that I am not a relative or
17    employee of any of the parties, or of counsel, nor am I
      financially or otherwise interested in the outcome of
18    this action.
19        I serve as an impartial officer of the court and
      abide by all professional and ethical principles of the
20    National Court Reporters Association.
21        WITNESS MY HAND AND SEAL on this 26th day of October,
      2009.
22
23                        TAMMIE L. FOREMAN, CRR, RPR, CCR
                          Certificate No. 305
24                        Notary Public in and for
                          Pulaski County, Arkansas
25
      My Commission Expires: 04-18-14
```

TAMMIE L. FOREMAN, CRR, RPR, CCR
(501) 340-8426