EXHIBIT 18, Part 4 of 4

1   of an agreement where Central United agreed to

2   grandfather people who were already on claim, and the

3   Mississippi department allowed them to pay claims for

4   actual charges going forward as to anybody who had

5   incurred a claim up to that point in time to pay claims

6   exactly like the injunction in this settlement.

7          But in the final analysis, this is nothing more

8   than an attempt to opt out late an entire state when

9   the notice has gone out to these states.  Mr. Phillips

10  doesn't represent these people.  He represents his

11  people, and he's already opted them out.

12         Meanwhile, the notice went out.  Some people

13  opted out.  Some people decided on their own to stay in

14  the settlement.  Many of them filed claims in the

15  settlement.  He has no standing and no right to opt out

16  an entire state.

17         And one final point.  I don't believe I've seen

18  any cases cited by anybody where a court allowed

19  someone to just carve out an entire state of a

20  settlement.  So absent any legal authority, and really

21  absent any factual basis, we request that the objection

22  be overruled.

23         THE COURT:  Briefly.

24         MR. PHILLIPS:  Very brief because this is just a

25  matter of intellectual honesty, intellectual accuracy

```
 1   on it.  The clear Mississippi law that I had reference
 2   to are the clear Mississippi Supreme Court cases that
 3   itemized one, two, three, four, five, by Judge Pepper.
 4   And Judge Pepper doesn't try to make up Mississippi
 5   law.  He has tremendous respect for the rights of the
 6   states to make the law for the citizens of those
 7   states.  And Federal Judge Pepper cited the Mississippi
 8   Supreme Court on elementary A, B, C contract
 9   interpretation law in determining that actual charges
10   in a contract drafted by them was ambiguous, and
11   therefore to be applied.  And that's the clear
12   Mississippi law.  And I know it's been the law there
13   since at least 1972, when I started.  And I know it's
14   the law under the current existing nine members of the
15   Mississippi Supreme Court.  But that's the clear
16   Mississippi law that I was talking about.
17           THE COURT:  I am going to take a break till 1:15
18   for lunch.  I'm trying to get a feel for how many
19   people are left and how long they anticipate going so I
20   can make plans for the afternoon, or let other people
21   make plans for my absence, would probably be more
22   appropriate.  Mr. Matthews, you're probably --
23           MR. MATTHEWS:  Judge, you know, I'm very, very
24   long-winded.  So it will probably take me five, ten
25   minutes.
```

1    THE COURT:  I understand.  Who else?

2    MR. DAN TURNER:  If the Court is going to hear

3    our motion, I'm 10 minutes, 15 minutes maybe.

4    MR. KNIE:  May it please the Court, although I

5    had preliminary motions, I do have objections to put on

6    the record.  And it will be brief because obviously

7    some of the previous arguments will be incorporated

8    into the objection.

9    THE COURT:  That gives me an idea what I need.

10   Court will be in recess till 1:15.

11                    (Recess.)

12   THE COURT:  Go ahead, Mr. Knie.

13   MR. BOHRER:  Your Honor, may I interrupt one

14   second, please?  Just we would like to lodge an

15   objection on behalf of both plaintiff and defendant to

16   Mr. Knie presenting with respect to any objection.  To

17   our knowledge, there has been no timely filed notice of

18   appearance in accordance with the preliminary approval

19   order and as set forth in the notice.

20   And to be consistent, Your Honor, I know this

21   issue arose last month with an attempt by Mr. Tony

22   Gould to appear through an untimely notice of

23   appearance, and the Court denied that.  So for

24   consistency purposes, and because there is no timely

25   filed notice of appearance, we object to Mr. Knie

1  presenting today on behalf of an objector.

2      THE COURT: All right. And I, to be honest with

3  you, lost track of who has done what. And I appreciate

4  that. Mr. Knie, I am going to let you do a couple of

5  things, one, make any record you want on that issue.

6  And I'm trying to look through here. And on whose

7  behalf were you going to be arguing your objection?

8      MR. KNIE: Only on behalf of Mr. Stephen Hege,

9  who employed me very recently, Your Honor, well after

10 the deadlines. And he is terminally ill and takes

11 treatments daily.

12     In addition to that, his immune system is such

13 that he is unable to come to a public forum himself.

14 He and his wife have purchased a self-contained camper

15 to travel in with bathroom and everything, so they're

16 not exposed to the public. This is about fairness.

17 And if there's ever been a situation which screams out

18 for the Court's discretion to allow someone to speak

19 when an individual unrepresented didn't request to

20 speak under those circumstances, I would argue that

21 this is it. I will be very brief. As I said, I do

22 have a plane to catch. I'm not going to tie up much of

23 the Court's time.

24     THE COURT: Well, I have his letter here. It was

25 received in the clerk's office on June the 29th, 2009.

1    And I will let you speak briefly, but am considering

2    essentially this as his objection, this meaning his

3    letter that was sent, I guess.

4        MR. KNIE:  Thank you, Your Honor.  I appreciate

5    it.  I'm sure he appreciates it, as well.  If I may,

6    Your Honor.

7        THE COURT:  All right.

8        MR. KNIE:  First of all, I know the Court

9    recognizes that Mr. Hege, as an objector in June of

10   this year, was not a lawyer, and he could only

11   factually, and as a lay person, speak his feelings and

12   certainly could not speak to legal issues and the

13   things that this Court must consider as a legal matter.

14       The first point I would make by way of objection

15   in asking this Court to not only set aside its

16   preliminary approval, but to deny final approval today

17   is that there is a distinct inter-class conflict going

18   on here.  And it's not a minor one, it is a major class

19   conflict.

20       What we have, Your Honor, is, we have

21   policyholders that have submitted small claims.  And as

22   one of the gentlemen said this morning that spoke, on a

23   $10,000 difference in the claims between the billed

24   amount and the amount they're willing to pay, they're

25   going to get $4,000.  Now, that's 40 percent.  Mr. Hege

1  has got $75,000 in outstanding claims.  But what's

2  happening is that his claims are mushrooming as we

3  speak because of the chemo and the radiation and such

4  that necessarily goes on in this multiple myeloma

5  situation that he's got.

6      So what he's going to have is possibly a $100,000

7  difference, just to use an example, and he will only

8  get a cap of 15,000.  So rather than getting the

9  40 percent, as these gentlemen spoke about, he'll get

10  15 percent.  So that class conflict between the smaller

11  claimants and the largest claimants is such a real

12  inter-class conflict that I would argue that unless the

13  cap is removed, that this Court seems bound to set this

14  proposed settlement aside.  There is no reason for this

15  cap.  This company is going to save hundreds of

16  millions of dollars by this, Your Honor.  And they can

17  afford the cap coming off.

18      The second thing I would say is -- and as

19  Mr. Phillips very wisely pointed out, Your Honor, the

20  class notice is designed to get people in the class.

21  If you really want to be fair, you have an opt-out form

22  just like you have a claim form.  They've got three

23  separate claim forms.  But to a Steve Hege, who did a

24  pretty good job of preparing an objection, Your Honor,

25  there was no opt-out form to use.  He couldn't look at

1  a form in the face like a claims form and say, "What

2  should I really do?" He would have to create something

3  himself and hope that it complied.

4      But the worst part, Your Honor, is, why does he

5  have to file a claim at all? He has already filed

6  claims for $75,000. If this settlement is approved,

7  the Steve Heges of the world should simply get a check.

8  The reason they are requiring a new claim is that these

9  counsel know that in class settings, there is generally

10  a very low response to the claims. Many people will

11  just think it's just not worth my time or I'll never

12  get anything out of it, so they don't fill out a claim.

13      But my point is, if Steve Hege has already

14  submitted a claim for his $75,000 in past due benefits,

15  why, he should get that check right away. He shouldn't

16  be required to have a new judicially-imposed element to

17  his contract that would require yet another hurdle to

18  get money that is due him.

19      Your Honor, there's also a real issue with the

20  rate freeze. They are saying, "Well, these people are

21  getting a rate freeze of a year." But what, we're now

22  in mid-November. And, you know, unless the Court rules

23  today, it could be that there will be maybe only a

24  30-day rate freeze. They can't take credit for past

25  consideration. The law of almost every state says that

1  past consideration is not adequate consideration to
2  bind.  It has to be present or future consideration.
3  So we would also center an objection that this is not
4  fair consideration.
5      And then last of all, on behalf of Mr. Hege, I
6  would argue that even though Arkansas law does say that
7  there does not have to be a state-by-state analysis of
8  a national class action, Arkansas law cannot just shun
9  what the US Supreme Court has said in the Schutz
10 decision which says that there does need to be one.
11 And I would argue that when the law of a state is in
12 conflict with the United States Supreme Court, that the
13 United States Supreme Court is the court that
14 ultimately decides that.
15     Just two more quick points, Your Honor.
16 Mr. Phillips also spoke to something -- and let me just
17 back up one second.  If this settlement is not fair to
18 Steve Hege but most other class participants -- and
19 they say up to 20 percent of the class participants are
20 the high-dollar participants, so this class is not fair
21 to 20 percent of the participants.
22     THE COURT:  Well, we're getting a little far
23 afield of Mr. Hege's letter arguing on behalf of other
24 class members.
25     MR. KNIE:  Well, arguing on behalf of Mr. Hege,

```
 1   but I'm just using that to show that there's really

 2   20 percent of this class is the Steve Heges of the

 3   world.

 4        THE COURT:  I understand.  This is Steve Hege's

 5   objection and not those.

 6        MR. KNIE:  I'll pull it back in, Your Honor.

 7   Then if he is not being treated fairly, Your Honor,

 8   that violates the Supreme Court case of Amchem Products

 9   v. Windsor which says the Court should reject any

10   settlement which is not fair to all class members.

11        Mr. Phillips made an excellent point earlier when

12   he said that what they're asking this Court to do is to

13   create a coordination of benefits among insurance

14   policies.  And I believe he said that under Mississippi

15   law, that was illegal unless it was in the contract.

16   It is not in these contracts.

17        THE COURT:  Well, and that's not in this letter

18   either.  So I was going to allow you to argue the

19   arguments made by Mr. Hege that he preserved in his

20   letter.  But we're getting well far afield of that.

21        MR. KNIE:  Then I will conclude with my remarks,

22   Your Honor, other than to ask the Court to consider

23   that we be allowed to submit closing argument

24   memorandums on the basis that from 5:30 until 10:00

25   last Friday night, I received 25 e-mails from
```

```
 1   plaintiffs' counsel and defense counsel simultaneously.
 2   I'm not saying they talked, but it was shocking that
 3   they started coming in at exactly the same time, that
 4   contained their memorandum and exhibits for this
 5   hearing today.  It was literally impossible after the
 6   close of business Friday night to adequately respond to
 7   those.  And much has gone on today that requires
 8   digestion and response, I would submit, both by the
 9   Court and counsel.
10        So we would ask for permission to respond to
11   those on a fairly reasonable basis.  And hopefully, the
12   Court will grant that.  And that's all I have, Your
13   Honor.  And I do appreciate your time and your
14   consideration for Mr. Hege and all the South Carolina
15   class members.
16        THE COURT:  All right.  And you are either free
17   to go or stay or walk out when you are ready.  You
18   don't need me to call a break.
19        MR. KNIE:  I'll stay a while.  Thank you, Your
20   Honor.
21        MR. MATTHEWS:  Gail Matthews for the objector
22   James and Loretta Carroll, Daniel Crager, and William
23   and Kathleen McWhorter.  I don't claim to be a class
24   action expert.
25        THE COURT:  You may be now, Mr. Matthews.
```

```
 1          MR. MATTHEWS:  Well, I'm probably not going to
 2   know any more today --
 3          THE COURT:  You've never lost a class action
 4   case, have you?
 5          MR. MATTHEWS:  I've never lost one.  That's
 6   right.  I've only had one.  But that makes me think, I
 7   settled a case, got the money last -- two months ago,
 8   in which we represented the Arkansas policyholders of
 9   Farmers Insurance Group.  Now, what the -- this case is
10   all about to me is, there were some 11 other cases --
11   after we filed that lawsuit in 2000, 11 other cases
12   decided the issue as to whether or not the collision
13   policy covered diminished value.  Ten of those states
14   ruled that it did not.  Farmers new full well that the
15   Arkansas Supreme Court had ruled to the contrary.
16          Now, what the plaintiffs and defendants are
17   trying to do in this case, if somebody else had filed a
18   class action -- I'm not saying it's collusion here.
19   But if somebody else had filed a class action in any
20   other state, then if they could have made a settlement,
21   they could have knocked out my case.  That's exactly --
22   they got all these actions pending elsewhere, and
23   they're going to knock all these cases out.  They're
24   just going to say we're going to apply -- and it's
25   quite simple why they filed this in Arkansas.  I mean,
```

1   they could have filed it up in Judge Wright's court,

2   where they had already been denied class certification.

3   I'm not casting any aspersions on you.

4        They filed it in Arkansas because Arkansas is

5   very, very liberal in allowing class actions and in

6   allowing class action settlements.  I get calls all the

7   time from lawyers in other states, now that I've had

8   one case, that want me to, you know, participate with

9   Arkansas in filing Arkansas action on it and all.

10       So, you know, Mr. Phillips said, the law is so

11  different in Arkansas and other states.  And, you know,

12  you and I were on the same side of the fence for a long

13  time representing insurance companies, and we've both

14  been to the Supreme Court so many times on insurance

15  policies that if there's a more liberal state than

16  Arkansas in interpreting policies in favor of a

17  policyholder, I don't know where it is.  I mean, it's

18  just very, very liberal.

19       So I don't think there's any doubt that Arkansas

20  courts would rule that actual charges means the bill

21  you receive.  So -- but what we're going to do here

22  now, we're going to take Arkansas' easy law as far as

23  filing the action, and we're going to turn it around.

24  They couldn't get class certification, yet we've got

25  some of the same plaintiffs -- two of the same

1    plaintiffs, I believe, that couldn't get class

2    certification, now they're down here, they agree to a

3    class certification to knock out litigation everywhere

4    else.

5        Maybe this is absurd.  But it looks to me like

6    under the theory they're going on here, State Farm

7    could file a class action -- or have somebody file a

8    class action and say, "Even though our policy does not

9    exclude punitive damages, we're going to exclude

10   punitive damages all over the United States.  Every

11   State Farm policyholder, we send you notice, if you

12   don't opt out, we're going to knock out all your claims

13   on it."  I submit that that's just not right.

14       Now, the forty percent they're talking about,

15   well, you know, that's the equivalent to two-thirds of

16   what you're asking for.  I suspect I've tried at least

17   100 cases in which most of them, the defense was where

18   the insurance company was a direct action.  And in

19   every case I've ever had, the attorney's fees,

20   principal and interest exceeded 40 percent plus the

21   damages.  I'm sure the Court has had that same thing.

22       Almost every judge in Arkansas is going to award

23   a third on a contingency contract.  So 40 percent is

24   not much when you consider what Arkansas law is on it.

25   Plus it's -- this settlement appears to be knocking out

1    -- like Oklahoma is very liberal on punitive damages,

2    bad faith. It's just knocking out every one of these

3    people that have a claim from now on, is that knocking

4    out any bad faith claims? This settlement just wipes

5    out all kinds of lawsuits that people that -- I mean,

6    it's not just knocking out the contract. It's knocking

7    out every other case imaginable. It says this is the

8    law in every state now. This is going to be the law,

9    what actual damages mean or actual charges mean.

10        You know, they pointed out, the lawyers have,

11    they've litigated this numerous times. But some of

12    them they win, some of them they lose. But what it

13    does to the individual person, as the other lawyers

14    have said, it's really -- it's just grossly unfair, to

15    let a man who has -- you know, if I had a client that

16    had a half million dollar policy or half million

17    dollars in cancer bills -- and that's not outrageous,

18    half a million is not anymore. Personally, I know what

19    the charges are for that because I've been through it

20    myself. My wife has been through breast cancer.

21        So, you know, to say there's a $15,000 cap under

22    these policies is just not right. It's not fair. It's

23    just strictly not fair. If what they say is true, then

24    I am going to argue for the plaintiffs' attorneys now.

25    If what they say is true, the value of this settlement

1    is $151 million, then these lawyers should be getting a

2    lot more than $3.5 million, Judge.  If the settlement

3    value to the plaintiffs is worth $151 million, then

4    three and a half million dollars is not anywhere near

5    what they should be paid.

6        As previously pointed out, I have -- I get class

7    action notices all the time for everything imaginable.

8    I've never seen one that didn't have a form in it to

9    opt out.  In this case, you've got to create your own

10   policy form.  The one we just had, I just told Judge

11   Cole, said you will send out -- as a matter of fact, we

12   sent it out the first time on notice on the fairness

13   hearing, we sent it out again, that you could opt out

14   if you wanted to.

15       I don't know how many have opted out in this

16   case.  Nobody has said that.  I understand there's a

17   very few objectors.  So I don't know the answer to how

18   many has opted out.  But if you read this notice,

19   there's no way in there -- if you've never had cancer

20   and you don't have a bill, why in the world would you

21   opt out?  I mean, your rights are being just knocked

22   out, but you're not told they're knocked out unless

23   you're a lawyer.  Even though I'm a lawyer, I don't

24   even understand all the terms in there myself.  I don't

25   -- I'm not doing a very good job, I don't think, of

1   just stating.  This is -- I mean, if it was a Arkansas

2   policyholder, it would be one thing.  But a nationwide

3   settlement in which we say we're going to -- because of

4   Arkansas' liberal use of class action lawsuits, we're

5   going to let you decide all these other cases, to me,

6   this is no different than the Tennessee judge trying to

7   enjoin you from this hearing.

8        Now, what you are going to do here today if you

9   grant this is, you're going to say, "Okay, Tennessee

10  Judge, I am going to decide your case now."  Is that

11  not correct?

12       THE COURT:  Well, I don't think so because

13  anybody that's in their own litigation has decided to

14  opt out of this.  I am only deciding those people's

15  cases who decline to opt out of this lawsuit.  And if

16  you -- your example in your --

17       MR. MATTHEWS:  The class certified up there,

18  Judge.

19       THE COURT:  Your case, if you called all of your

20  class members and suggested they opt out of your case,

21  the insurance company can settle whatever class action

22  they want and not affect your class action here in

23  Arkansas if your class decided to opt out of their

24  settlement.

25       MR. MATTHEWS:  If the Tennessee court, as I

```
 1    understand it, had granted class status, right?  That's
 2    on appeal?  That's on appeal?
 3         MR. LEVENTHAL:  That's not correct.
 4         THE COURT:  That's why I was looking at you kind
 5    of funny.  I had understood to the contrary.  And
 6    really, the only thing I've been keeping up with the
 7    Tennessee federal judge is if he's telling me what to
 8    do and what not to do.  But -- that may be an
 9    overstatement, but --
10         MR. MATTHEWS:  I think that's what it was.
11         THE COURT:  You can always say what you want
12    until the appellate court tells you otherwise.  But I
13    disagree that I'm resolving people's cases who decided
14    to opt out of this class action.  I don't think I'm --
15         MR. MATTHEWS:  Oh, I don't think you're deciding
16    the ones that's opted out.  That's not what I'm saying.
17    I'm saying that any other -- maybe I'm wrong.  It's my
18    understanding there had been class action certification
19    in other courts.  Is that wrong?
20         MS. McCABE:  That's wrong.
21         MR. MATTHEWS:  I apologize.
22         THE COURT:  You're not a very good class action
23    lawyer.
24         MR. MATTHEWS:  No.  I'll admit it.  I'll admit
25    that.  Another thing that's unfair about this is, they
```

1  say that we've got 5,200 or so people who they know

2  have claims under this policy.  And 2,000 of them, I

3  think, or some number, have filed claims.

4       Now, they already know that these people had

5  these claims because they obviously submitted claims to

6  them.  So why are those people having to submit another

7  claim?  They already have that information.  All

8  they've got to do is look at their file or look at

9  which hospital bill or which doctor bill it was and get

10 it and send the people their money.  They shouldn't

11 have to file any claim.  I mean, that's the biggest

12 ruse there is in class actions and the reason the

13 insurance companies always say you have to file a claim

14 form, because they know most people won't.

15      That's just how you -- what -- I hadn't found out

16 yet.  But I know when I had the hearing in our case

17 with 40,000 claims, less than 10,000 people had filed

18 claims.  I mean, these people don't file them.  They

19 just don't do it.  They say, "I won't get any money."

20 They see one every once in a while where they'll get

21 one -- a check six cents or something like that.  So

22 there's no reason they should have to submit any claim

23 forms.

24      I don't -- I just don't feel like it's right to

25 allow Arkansas courts to determine what actual charges

```
 1   are nationwide.  I mean, I think each state should have
 2   that right to do it themselves.  Thank you.
 3          MS. McCABE:  Just briefly, Your Honor.  I was a
 4   little confused because I'm not sure -- I've never been
 5   to a hearing before where someone is making an argument
 6   that doesn't really represent someone who is affected.
 7   And I know that Mr. Matthews was just brought into this
 8   case a few days ago.  But four of the people that he
 9   stood up here and said that he was going to be arguing
10   on behalf of were not class members and withdrew their
11   objections.  And the fifth, Mr. Crager, is not a
12   policyholder.  His policy lapsed in 2005, before the
13   actual charges claims correction was ever implemented,
14   and he never had a claim for cancer.
15          So he is in the settlement as a former cancer
16   policyholder who could have submitted a claim for a
17   benefit for $1,000 of insurance over the next 10 years.
18   But he has no standing to object to the actual charges
19   injunction or the premium rate freeze or the premium
20   rate relief or any of those things because those parts
21   of the settlement do not affect him.
22          Also, this class does not apply Arkansas law to
23   all the policyholders.  It applies a class action
24   settlement agreement to all the policyholders, and to
25   all the policyholders who did not opt out.  And 476, I
```

1    believe, people did opt out.  So it's pretty clear that

2    people who wanted to opt out of the class could opt out

3    of the class.  Mr. Hege is a good example.  He wrote

4    the Court a lengthy letter.  He possibly could have

5    opted out, if that was what he was interested in.  But

6    he actually filed a claim and he's going to get a

7    $15,000 claim in the settlement.

8         And we haven't heard today how South Carolina

9    counsel came to represent to Mr. Hege.  But I suspect

10    that the same thing happened that happened with

11    Ms. Hunter, that this person's personal information was

12    placed in the court file and they were contacted and

13    solicited to join and submit a further objection or ask

14    for leave appearance.

15         While we're sympathetic to Mr. Hege's position,

16    he has filed a claim form.  He will be entitled to the

17    $15,000 benefit.  And we believe that the settlement is

18    fair, and we respectfully submit that the objections

19    should be overruled.  Thank you.

20         MR. BOHRER:  Your Honor, I'll be brief.  With all

21    due respect to Mr. Matthews, who I know just walked

22    into this and probably didn't know what he was walking

23    into, the defendant's memorandum at page 54 is -- very

24    comprehensively outlines the creative past of Donald

25    Crager and his original counsel, Mr. Bacharach, as

1  professional objectors who do nothing but interfere and

2  interlope in settlements across the country.  And I

3  know, unbeknownst to Mr. Matthews, two of the objectors

4  that he appeared for, four of the objectors that he

5  appeared for today were never class members, filed an

6  objection without any basis whatsoever, were all

7  represented by this professional objecting attorney,

8  Mr. Bacharach, and have withdrawn their objection.

9       And so I think it's in order to question the

10  credibility and motivation of why Mr. Crager is before

11  the Court as an objector, given his relatively sordid

12  past history of being a professional objector.

13       Two other quick comments.  I was not involved in

14  the case that Mr. Matthews describes.  But I suspect it

15  was a national class that was settled here?  No.

16       MR. MATTHEWS:  Arkansas.

17       MR. BOHRER:  One of the cases that Mr. Matthews

18  references that Your Honor is quite familiar with in

19  this litigation is the Gooch case.  Gooch is a putative

20  national class action in Tennessee.  It's the same as

21  this case.  They are seeking national certification.

22  And so it's just a bit inconsistent at best and

23  disingenious at most for anyone to say that a single

24  forum should not be the manner in which this litigation

25  is resolved on a nationwide basis.  The Gooch

```
1   plaintiffs, who, as Your Honor knows, have objected
2   whenever possible to this settlement, are alleging the
3   same national class certification that Your Honor has
4   granted.  And so it's very difficult, I think, to be
5   consistent and take a position adverse to Arkansas when
6   Gooch is alleging the same national certification.
7   Given Mr. Crager's past history, we would respectfully
8   request that these objections be overruled.
9        MR. BAKER:  Your Honor, I believe that concludes
10  the objections.  And the defendants originally attached
11  to their motion for preliminary approval a proposed
12  precedent for final approval.  And we believe it
13  prudent, after giving it more thought, to ask the Court
14  to permit us to give you, for your consideration, a
15  proposed precedent that would include findings of fact
16  and conclusions of law by a date certain for Your
17  Honor's consideration, as opposed to the one we
18  originally attached.  We think it -- otherwise, I think
19  that concludes the proof for today's hearing.
20       MR. BOHRER:  Your Honor, the plaintiffs do have
21  the pending motion for fees, costs, and class
22  representative pay, which we'll take up at Your Honor's
23  pleasure.
24       THE COURT:  Did you want to argue that at this
25  time or let me rely on the pleadings?  Your pleasure.
```

1    This will be your only opportunity to argue that motion

2    if you choose to.

3          MR. BOHRER:  Well --

4          THE COURT:  We're not coming back just so you can

5    argue that.  Did you want to --

6          MR. DAN TURNER:  Just whenever the Court is ready

7    for me, Your Honor.

8          THE COURT:  Well, why don't we go ahead and have

9    him stand down just for a second, let you get your --

10   because I hadn't this morning anticipated whether or

11   not that would be later on in the hearing or later on.

12   But I think it's probably best that you go ahead right

13   now and make your argument.

14         MR. DAN TURNER:  Thank you, Your Honor.  Dan

15   Turner on behalf of William Shepherd, Your Honor.  I

16   don't want to spend a lot of time reading the Court our

17   pleadings.  But as the Court is aware, we filed our

18   motion for leave to intervene on June 23rd.  I've

19   listed this in our brief that we filed with the Court

20   on June 25th, we requested an expedited ruling.  The

21   defendants moved for extension of time to respond to

22   our motion on July the 9th.  Over our objection, that

23   was granted.  And then they filed their response on

24   July 16th.

25         Ultimately, Your Honor, the Court will recall, I

1    believe it was at Audry Hunter's hearing, the Court

2    announced that all motions to intervene were denied.  I

3    contacted the Court's chambers and was told that there

4    would be a written order prepared by the defendants,

5    but we have not received one as of today, a written

6    order reflecting that our motion to intervene was

7    denied.

8         At any rate, it's Mr. Shepherd's position that

9    during the pendency of his motion to intervene, he

10   would not have been able to opt out; that clearly his

11   intention was made known to this Court that he did not

12   wish to participate in this settlement.  And that's

13   what we're asking the Court to do is to allow him to

14   opt out.  I can't imagine that the plaintiffs' counsel

15   would object because I heard during the fairness

16   argument the comment that some of these people should

17   opt out.  So I would be surprised if there's any

18   objection.

19        I certainly expect the defense to object, and

20   I'll be happy to reserve any rebuttal.  I see that the

21   Court probably has questions.  I can see on your face.

22        THE COURT:  Well, the only question I had was

23   your comment regarding his inability to opt out with

24   the pending intervention.  Maybe I'm thinking back on

25   the dates on when -- whether or not you had moved to

1   intervene and were waiting on a hearing, that it --

2   essentially, the deadline for opting out came and went

3   while you had a pending motion to intervene.

4       MR. DAN TURNER: That's true, Your Honor. And,

5   of course, it would be -- Mr. Shepherd believed and

6   still believes -- he accepts this Court's ruling, but

7   he still believes that this settlement will adversely

8   impact him. The only way to prosecute that -- those

9   rights would be to intervene, which is what he sought

10  to do.

11      After this Court denied his motion to intervene,

12  he should be allowed to opt out. There's no prejudice

13  to anyone at this point to allow him to opt out. His

14  motion to intervene was effectively not ruled on until

15  October 1st, and there still hasn't been a written

16  order. I don't think that's necessarily required.

17      But the only reason I offer that, Your Honor, is

18  to explain that we didn't file this motion on November

19  the 6th just to give the Court something else to

20  consider today.

21      THE COURT: No. I understood that. And the

22  reason you were delayed wasn't necessarily because of

23  the defendants or the plaintiffs, but because of other

24  intervenors who wanted their say and said they couldn't

25  be at the earlier hearing. And he's not hearing right

```
 1    now.  I'm talking about Oklahoma counsel.  That, in my
 2    opinion, tried to put the hearing off as late and late
 3    and late as he could.  We accommodated him and had that
 4    in November, I think.  Well, maybe not --
 5              MR. DAN TURNER:  October 1st.
 6              THE COURT:  October 1st.
 7              MR. DAN TURNER:  I think the record will bear,
 8    Your Honor, no kidding.  Two days after we filed our
 9    motion, we requested an expedited ruling.
10              THE COURT:  No.  I take -- I take that as a fact.
11    I don't have any dispute about that.  What I'm trying
12    to figure out is whether or not your opportunity to opt
13    out came and went while your motion to intervene was
14    pending.
15              MR. DAN TURNER:  It did, Your Honor.  And we
16    would argue that our motion -- we attached our motion
17    to intervene a complaint in intervention.  And there
18    has been comments about this, that there wasn't an opt-
19    out form.  I think that should be sufficient notice
20    that certainly Mr. Shepherd intended to assert his own
21    rights.
22              And I guess what I'm arguing is that that
23    complaint in intervention should operate as his notice
24    to the Court it was his intention to opt out in light
25    of the Court's ruling not to allow him to intervene, if
```

```
 1    that makes sense.
 2         THE COURT:  It does.
 3         MR. DAN TURNER:  But I would like to respond to
 4    any arguments that they have, if I can yield the floor.
 5         THE COURT:  All right.  Y'all want to respond to
 6    that?  Mr. Leventhal?
 7         MR. LEVENTHAL:  So we have a motion to opt out
 8    late?
 9         THE COURT:  That's how I had understood it.
10         MR. LEVENTHAL:  I guess I would say, Your Honor,
11    first of all, here's a person who is represented by
12    three law firms and he moves to intervene.  Why did he
13    move to intervene or why did he not opt out?  Because
14    he made a tactical decision to stay in the case and to
15    try to block the settlement, and he moved to intervene.
16         If he would have opted out, he couldn't move to
17    intervene because he would have had no interest in the
18    settlement.  So his lawyers made a tactical decision to
19    say, "Hey, let's move to intervene.  We're not going to
20    opt out."
21         So then they litigate their motion to intervene.
22    And here, now they turn around because the Court
23    overruled that and they say, "Well, now will you let us
24    opt out?"  Well, the deadline for opting out has come
25    and past.  Why do they want to opt out?  So now they
```

1   can generate another lawsuit somewhere?

2       Now, the argument they made on the timing might

3   apply to filing a claim, like they say, you know, they

4   wanted that motion heard on July 27th.  Well, the

5   deadline for opting out had already come and past.  The

6   only deadline that had not come and past was the

7   deadline for filing a claim, which was in August.  So

8   we're prepared to allow Mr. Shepherd to file a claim

9   with the settlement late.

10      Why he didn't file a claim to begin with, I have

11  no idea.  You know, I don't understand that.  He should

12  have filed a claim.  He was trying to stay in the

13  settlement.  He was trying to move to intervene.  He

14  should have filed a claim.  He's a past claimant, and

15  he'll have a right to a payment under the settlement.

16      So we would say that Mr. Shepherd -- I think we

17  would offer to allow him to file a claim in the

18  settlement late.  In terms of opting out late, that was

19  a tactical decision that his three lawyers made.  And

20  consistent with all the other rulings that the Court

21  has made, there is no basis for creating an exception

22  for Mr. Shepherd.

23      MR. DAN TURNER:  Plaintiffs?

24      MR. BOHRER:  We have no comment, Judge.

25      MR. DAN TURNER:  Since Mr. Leventhal brought up

1   the July 27th, Your Honor -- actually, on July the 9th,

2   the defendants moved for an extension of time to

3   respond to our motion to intervene and other motions.

4   And you can look at the record. We weren't trying to

5   delay this. We showed up in this Court on July 27th

6   and Mr. Leventhal was not here. And I'm sure he would

7   say, "Well, that's because we were in Tennessee or

8   because of the motion in Tennessee."

9         But as you recall, Judge, we were prepared to

10  move forward on other motion to intervene. It would be

11  incredibly unfair to Mr. Shepherd now to hamstring him

12  because of that. That was no fault of his own. But I

13  go back to what I said earlier, I think clearly this is

14  a --

15        THE COURT: What was the deadline to opt out?

16        MR. LEVENTHAL: June 28th, Your Honor.

17        MR. DAN TURNER: June 28th. We filed the motion

18  to intervene on June 23rd, Your Honor. We requested

19  expedited ruling on June 25th.

20        THE COURT: Okay. Anything further?

21        MR. DAN TURNER: No. Not from me, Your Honor.

22        THE COURT: Okay. From anyone? On the Shepherd

23  issue? All right. I take it by your silence that

24  there is not. Now you can get back up.

25        MR. BOHRER: Your Honor, I will be extremely

1   brief and take you up on your invitation to submit this

2   on the brief.  The only point I want to make is is that

3   the fee is actually a very small percentage of the

4   overall value.  And it is actually a very small

5   percentage, like 20 percent, of the value of the

6   settlement without the injunctive relief.

7        And so if you look at this number and subtract

8   out that number, it's like $15 million.  The fee is

9   3.5.  That's about 20 percent of the noninjunctive

10   relief.  If you look at the percentages of recovery

11   method of calculating fees and the cases we cite,

12   20 percent of the real dollar value, not the injunctive

13   relief, is squarely in the middle of the range of

14   reasonableness in similar cases.  So for the reasons

15   that we set forth in our brief, Your Honor, we move the

16   Court to award attorney fees and costs combined of

17   3.5 million.

18        And then last, Judge, each of the plaintiffs were

19   to be awarded an incentive fee for acting as class

20   representatives in the amount of $7,500 each.  We

21   briefed that issue and set forth the reason and theory

22   and the fact that that's a reasonable number, given

23   their duty as class representatives.  So we ask Your

24   Honor to consider that request, as well.  And I'm happy

25   to answer any questions you may have.

```
 1        THE COURT:  I don't have any.

 2        MR. MATTHEWS:  I think my objection may have

 3   objected to attorney's fees.  But if it did, I would

 4   withdraw that.

 5        THE COURT:  Does that number ring true there for

 6   you, Mr. Matthews?

 7        MR. MATTHEWS:  No.  My objection is a little

 8   better than that.

 9        THE COURT:  They're asking for 3.5.

10        MR. MATTHEWS:  Yeah.  We got 9.75.

11        THE COURT:  I was talking about you.  I'm talking

12   about the local cut on that.  I actually listened to

13   you when you came the other day, Mr. Matthews.

14        Mr. Baker, what I had understood is that you're

15   essentially withdrawing any precedent order that you

16   had previously presented to the Court because you

17   wanted to --

18        MR. BAKER:  No, Your Honor.

19        THE COURT:  It was unclear to me.

20        MR. BAKER:  We're not necessarily withdrawing it.

21   We do believe it's accurate.  We just believe it's

22   probably more prudent to go ahead and prepare a

23   proposed findings of fact and conclusions of law for

24   Your Honor's consideration and entry.

25        MR. LEVENTHAL:  If I could maybe clarify that,
```

1    Your Honor.

2          THE COURT:  Sure.

3          MR. LEVENTHAL:  The settlement agreement includes

4    a proposed final judgment as one of the exhibits.  The

5    final judgment, we need to fill in some blanks, go

6    through it one more time, make sure it's accurate, so

7    we would submit it as a proposed final product for

8    signature.  And then there is a provision for proposed

9    findings of fact and conclusions of law, which are

10   typical in class action settlements.  And those would

11   be incorporated into the final judgment, and there's a

12   reference in there -- in the form that's before the

13   Court.  So we would want an opportunity to present

14   those for the Court's consideration.

15         THE COURT:  As a general proposition, anytime I

16   make a decision, I either make it -- take it under

17   advisement and write the attorneys in the form of a

18   letter order, which is nothing more than an

19   announcement of what my decisions are and asking

20   somebody to formalize it in an order.  I am likely

21   going to rule on the pending motions and the

22   determination regarding the fairness hearing in that

23   manner.

24         And then I will direct, likely, somebody to

25   prepare orders that will reflect those rulings.  And if

1   you feel that findings of fact and conclusions of law

2   are prudent, I ask that you send those orders and those

3   findings of fact both to me in hard copy and electronic

4   situation, or e-mail them to me so we can make whatever

5   changes in those orders we see fit without having to

6   call people's secretaries or send back orders back and

7   forth.

8        And I would ask that anybody that wants to

9   participate in this, obviously everyone here, leave

10  their e-mail address and we can get some kind of

11  distribution list set up so those comments and changes

12  can be sent around as efficiently as possible. I don't

13  know if we just hand everybody -- if we've got one

14  already, that's fine. I just wanted everyone an

15  opportunity to yet again give us their e-mail address.

16       So I anticipate having changes in whatever orders

17  are presented to me. So thank you for being as

18  efficient as all of you were. I hope to have something

19  out -- I was going to say late tomorrow or Wednesday,

20  but it may be the end of the week. This needs to get

21  resolved so y'all can be on your way to other issues.

22  Anything further before we go off the record? All

23  right. We're off the record. Thank you, everyone.

24          *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

25

```
 1              C E R T I F I C A T E
    STATE OF ARKANSAS            )
 2                              )   SS.
    COUNTY OF PULASKI            )
 3      I, TAMMIE L. FOREMAN, CRR, RPR, CCR, official court
    reporter for the Third Division Circuit Court, Pulaski
 4  County, Arkansas, certify that I reported the
    proceedings by stenographic machine shorthand, reporting
 5  in the case of
    EDISON RUNYAN; DWIGHT PIPES; EARL L. PURIFOY; JOHN ROSS,
 6  As the Legal Representative of ELIZABETH ROSS; MARY
    WEIDMAN; DURAIN WEIDMAN; MARION HARRIS; and VAN R.
 7  NOLAN, Each Individually, and on Behalf of All Others
    Similarly Situated,
 8                                      Plaintiffs
    V.              CV 2009-2066
 9  TRANSAMERICA LIFE INSURANCE COMPANY; LIFE INVESTORS
    INSURANCE COMPANY OF AMERICA; MONUMENTAL LIFE INSURANCE
10  COMPANY; and AEGON USA, INC.,
                                  Defendants
11  before the Honorable Jay Moody, Pulaski County Circuit
    Judge, at Little Rock, Arkansas; that said proceedings
12  have been reduced to a transcription by me by means of
    computer-aided transcription, and the foregoing pages
13  constitute a true and transcript of the proceedings held
    to the best of my ability, along with all items of
14  evidence admitted into evidence.

15      I further certify that I am not a relative or
    employee of any of the parties, or of counsel, nor am I
16  financially or otherwise interested in the outcome of
    this action.
17
        I serve as an impartial officer of the court and
18  abide by all professional and ethical principles of the
    National Court Reporters Association.
19
        WITNESS MY HAND AND SEAL on this 2nd day of December,
20  2009.

21
                        TAMMIE L. FOREMAN, CRR, RPR, CCR
22                      Certificate No. 305
                        Notary Public in and for
23                      Pulaski County, Arkansas

24  My Commission Expires:  04-18-14

25
```

TAMMIE L. FOREMAN, CRR, RPR, CCR
(501) 340-8426