# EXHIBIT 19

1

```
 1            IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
                              THIRD DIVISION
 2
    EDISON RUNYAN; DWIGHT PIPES; EARL L. PURIFOY; JOHN ROSS,
 3  As the Legal Representative of ELIZABETH ROSS; MARY
    WEIDMAN, DURAIN WEIDMAN; MARION HARRIS; and VAN R.
 4  NOLAN, Each Individually, and on Behalf of All Others
    Similarly Situated,
 5                                           Plaintiffs

 6  V.                          CV 2009-2066

 7  TRANSAMERICA LIFE INSURANCE COMPANY; LIFE INVESTORS
    INSURANCE COMPANY OF AMERICA; MONUMENTAL LIFE INSURANCE
 8  COMPANY; and AEGON USA, INC.,
                                          Defendants
 9

10

11

12

13            BE IT REMEMBERED, that on the 17th day of

14  September, 2009, the above-referenced cause came before

15  the Honorable Jay Moody for hearing.   The proceedings

16  were had and done as follows:

17

18

19

20

21

22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2

 3   REPRESENTING THE PLAINTIFFS:
         TOM THOMPSON, Esquire
         CASEY CASTLEBERRY, Esquire
 4       Murphy, Thompson, Arnold, Skinner & Castleberry
         Post Office Box 2595
 5       Batesville, Arkansas  72503

 6
         STAN P. BAUDIN, Esquire
         Pendley, Baudin & Coffin, LLP
 7       24110 Eden Street
         Plaquemine, Louisiana  70764
 8

 9   REPRESENTING THE DEFENDANTS:

10       JOHN K. BAKER, Esquire
         Mitchell, Williams, Selig, Gates & Woodyard, PLLC
11       425 West Capitol Avenue, Suite 1800
         Little Rock, Arkansas  72201
12
         JULIANNA THOMAS McCABE, Esquire
13       Jorden Burt, LLP
         777 Brickell Avenue, Suite 500
14       Miami, Florida  33131

15

16   REPRESENTING THE GOAD GROUP OBJECTORS/INTERVENORS:

17       GREG KITTERMAN, Esquire
         Kitterman Law Firm
18       1101 Garland Street
         Little Rock, Arkansas  72201
19
         W. LLOYD COPELAND, Esquire
20       Taylor Martino Zarzaur, PC
         Post Office Box 894
21       Mobile, Alabama  36601

22

23

24

25
```

1    THE COURT:  All right.  We are on the record in

2  civil case 2009-2066, Edison Runyan, et al, v.

3  Transamerica Life Insurance Company, et al, here on our

4  third hearing on motion to intervene.  Today I

5  understand it is the -- I hope I pronounce this right,

6  Goad --

7    MR. KITTERMAN:  Goad.

8    THE COURT:  -- McCarthy, and White motions,

9  except I think Ms. White has been pulled?  For some

10  reason in my memory, White is gone.  It's Edwin Jones

11  that's being withdrawn.  I'd continue, but she can't

12  hear me.

13  (Discussion held off the record due to power outage.)

14    THE COURT:  Does anybody have any objection to me

15  granting Evelyn Jones' motion to withdraw her

16  objection?

17    MS. McCABE:  No, Your Honor.

18    MR. BAUDIN:  No, Your Honor.

19    MR. COPELAND:  We withdrew her as a proposed

20  intervenor, too, Your Honor.

21    THE COURT:  We'll start with the easy stuff.

22  That motion will be granted.  So we move on to the

23  motion to intervene, which will likely be followed up

24  with a motion to conduct limited discovery, motion for

25  leave to withdraw objections.  Well, we've already done

1  that.  And the motion to assess costs.  So with that,

2  Mr. Copeland, since you were standing, I'll give you

3  the floor.  And you can probably either stand there or

4  at the podium, whichever you are more comfortable with.

5  It makes no difference to us.  I'll just let you do

6  whatever you're comfortable doing.

7      MR. COPELAND:  I'm an old-timey lawyer.  I'd

8  prefer the podium, Your Honor.

9      THE COURT:  I understand.  Some do.  So go right

10  ahead.

11      MR. COPELAND:  May it please the Court, there is

12  one other motion that might be easy, if you'd like me

13  to take a crack at that first, Your Honor.

14      THE COURT:  All right.  Take them in whatever

15  order you'd like.

16      MR. COPELAND:  That's the motion for late

17  submission of proof of class membership.  The

18  defendants said in their responsive document that they

19  didn't have any objection to us filing proof of class

20  membership late for the purpose of speaking at the

21  hearing, as long as we got it before the fairness

22  hearing.  And that's been done.  So I assume that you-

23  all have no problem with that aspect of it.

24      MS. McCABE:  That's correct.

25      MR. COPELAND:  There may still be an issue with

1   that relating to the motion to intervene, but there's

2   not as far as appearing at the fairness hearing.

3        THE COURT:  All right.

4        MR. COPELAND:  And did Your Honor want to hear

5   first the motion for limited intervention?

6        THE COURT:  Sure.

7        MR. COPELAND:  Before -- Your Honor, before I

8   talk about what we're trying to do with these motions

9   today and with the objection, let me just touch real

10  briefly on what we're not trying to do.

11       THE COURT:  All right.

12       MR. COPELAND:  We are not here to try to torpedo

13  this settlement.  We are not here to try to blow up

14  this settlement so that we can harvest a bunch more

15  plaintiffs.  We are -- we, unlike most of the other

16  objectors who filed amicus briefs in federal court in

17  Chattanooga, Tennessee, supporting that federal

18  injunction, we didn't file.

19       We're not trying to -- as I said, to blow up the

20  hearing.  What we are trying to do is to assist the

21  Court in evaluating the settlement, as the settlement

22  is impacted by increased future premiums paid by the

23  class members.  And when it comes down to hearing the

24  objection at the hearing, the Court may agree or

25  disagree with the objection.  But we believe that

```
 1    raising that issue is going to give the Court
 2    information that's important for it to consider in
 3    evaluating the fairness of the settlement.  And we come
 4    by our opinion of what will assist the Court in
 5    evaluating the settlement based on our personal
 6    experience.
 7         Mr. Martino and I -- who is not here today
 8    because he came down sick, had to go to the doctor.
 9    Mr. Martino and I were class counsel in the Skelton v.
10    Central United case that's been cited in all the
11    parties' briefs, which was another national class
12    action settlement involving actual charges supplemental
13    cancer policies.  We were class counsel in that case.
14    And we determined, in our opinion, that in order for
15    the settlement to be fair to the class as a whole, that
16    it had to have a target loss ratio to limit future
17    premiums, as opposed to the one-year premium freeze
18    that appears here.
19         Now, on the motion for limited intervention,
20    intervention solely for the purpose of appeal, let me
21    get one thing out of the way right at the beginning.
22    We asked to intervene both as a right and permissive
23    intervention.  And as far as permission of right --
24    intervention as a matter of right is concerned -- all
25    right.
```

1          THE COURT:  Give us two seconds so we can let her

2     turn on her recorder on if she needs to.

3       (Discussion held off the record after power outage.)

4          THE COURT:  All right.  We're back up.

5          MR. COPELAND:  Your Honor, as I had said before

6     the blackout, we had originally moved for an

7     intervention both of right and permissive intervention.

8     And they rely on the DeJulius case to say that we can't

9     intervene as a matter of right.  And we had tried to

10    distinguish that in our brief.  And the more I looked

11    at it, I said, you know, they're right.  DeJulius does

12    keep us from intervening as matter of right.  So I

13    concede that one.  They're right on that one.

14         So it's a matter of permissive intervention.  And

15    that's completely discretionary with the Court.  And as

16    I had mentioned earlier, the purpose of the limited

17    intervention is one purpose only, to appeal in the

18    event the objection is overruled.  You have to

19    intervene to be able to appeal.

20         And I just suggest to the Court that the issue

21    is, if the Court does disagree with our objection -- if

22    the Court disagrees with our objection but still thinks

23    that it's seriously debatable, is appellate review

24    appropriate in the best interest of the class as a

25    whole?  I suggest that that's the issue before the

```
 1    Court.  And the Court can't really decide that until
 2    the Court hears the substantive presentation on the
 3    objection at the fairness from us, from the defendants,
 4    and all the presentations at the fairness hearing.  And
 5    in keeping with our original purpose, what we want to
 6    do is try to assist the Court with evaluating the
 7    settlement.
 8         I would suggest that the Court should defer
 9    ruling on the motion to intervene until at the
10    conclusion of the fairness hearing and it has heard
11    everything where it can make a decision, if it does
12    disagree with our objection, whether it thinks that
13    objection is seriously debatable, such an appeal would
14    be appropriate.  Until then, the Court can't make this
15    determination.  And we can present our objection at the
16    fairness hearing.  We don't have to intervene to do
17    that.  We can present that as objectors.  And I would
18    submit that that is -- would be the appropriate
19    procedure to follow with the objection, defer it on
20    that basis.
21         Now, I'll be -- let me be perfectly candid with
22    the Court about one thing is that if there is an
23    appeal, it's going to delay the implementation of the
24    settlement.  The settlement agreement provides for
25    that.  But again, if, after the Court hears everything
```

```
 1    that's presented, I would submit that the issue comes,
 2    you know, if our objection is seriously debatable, even
 3    if Your Honor disagrees with it, does fairness to the
 4    class as a whole support delaying that implementation
 5    rather than going forward with the settlement that may
 6    be unfair to the class as a whole?
 7          And that's what I'm saying procedurally about the
 8    intervention for the limited purpose of appeal.  We're
 9    not going to come back later at the fairness hearing
10    and try to present a whole bunch of new arguments on it
11    because based on what I've said today, the Court can
12    make that decision on whether to allow the intervention
13    based on what it hears and evaluates at the fairness
14    hearing.
15          Now, there were some procedural responses to the
16    motion to intervene that I can touch on real briefly.
17    The first contention was that we didn't have a pleading
18    attached when the intervention rule requires the claim
19    or defense of a proposed intervenor to be set out in an
20    attached pleading.  Well, the attached pleading would
21    have been our objections, which we already filed.  The
22    claim or defense isn't applied literally in the class
23    action context.
24          THE REPORTER:  I didn't understand you.  The
25    claim or --
```

1      MR. COPELAND: If the court reporter didn't

2  understand what I said, it's bad. The claim or

3  defense. The rule requires the claim or defense of the

4  proposed intervenor to be set out in an attached

5  pleading. And in the class action context, that's not

6  applied literally because most objectors -- objectors

7  seeking to intervene usually aren't trying to assert a

8  claim or defense. They're objecting to the settlement

9  on some basis. So our pleading -- our operative

10  pleading for the purposes of the intervention for

11  appeal have already been filed, the objections.

12      The other -- another contention was that we

13  hadn't filed the intervention motion by the objection

14  deadline. It was filed a little bit after that. First

15  off, there's nothing in the preliminary approval order

16  or the notice that says you've got to file intervention

17  motions by that deadline.

18      But more importantly, the timeliness factor of an

19  intervention goes to delay and prejudice in an

20  intervenor coming in late and asserting -- wanting to

21  do things that would disrupt the proceedings and things

22  of that nature. That's not the case with our limited

23  intervention. All we want to do is to be able to

24  appeal. We are not proposing to do anything with the

25  intervention that would delay or protract the fairness

```
 1   hearing.  So I would suggest it's timely.
 2        The defendants had also raised the late filing of
 3   proof of class membership in this context also.  It's
 4   completely within the Court's discretion to -- to
 5   relieve an objector from a late filing.  And if the
 6   Court wants to hear why, I can tell you why we late-
 7   filed.  It was me.  I made the mistake.
 8        But the Court has complete discretion to relieve
 9   an objector from late filing.  It's totally
10   discretionary.  And again, for the reasons I just
11   talked about, there is no prejudice.  The fairness
12   hearing hadn't even been rescheduled yet.  Nobody is
13   going to be prejudiced by it.
14        There was also -- finally, there was an argument
15   that there must be a unique characteristic for an
16   intervenor for permissive intervention, that the
17   intervenor has to bring something new to the table.  We
18   don't do that.
19        But if you look at where they made that argument
20   in their brief, the federal case they cited was talking
21   about at that point -- was talking about intervention
22   as a matter of right, not permissive intervention.
23   When you go on down in their brief and they quote
24   further from the case, the same court said -- talking
25   about in denying permissive intervention, said
```

1    participation as intervenors would not accomplish more

2    than participation as objectors.  And that's pretty

3    good logic.  But in that case, they didn't seek

4    intervention so they could appeal, which is what we

5    seek to do here, which does accomplish more than just

6    participation as objectors.

7        And that's pretty much -- that's pretty much what

8    I've got to say on the limited intervention motion.

9    Does Your Honor want me to go through all the rest of

10   them or let these folks reply, or however the Court

11   wants to proceed?

12       THE COURT:  You guys weren't here yesterday, but

13   I had not anticipated ruling on the motions to

14   intervene at least until the end of this hearing, and

15   maybe not until the one last person on October the 1st.

16   So I would prefer to hear each motion separately so if

17   I ask the hearing to be transcribed, I don't have to

18   flip back and forth between arguments.  I can go

19   through all this one and then turn the page, go to all

20   the next one.  So if it's not too much trouble to keep

21   calling you up, I am going to let them go and use each

22   one.

23       MR. COPELAND:  No problem whatsoever.

24       THE COURT:  All right.

25       MS. McCABE:  Good afternoon, Your Honor.  May it

1   please the Court, Julie McCabe for the defendants.  I

2   appreciate Mr. Copeland conceding that there is no

3   right to intervene in this case under the DeJulius

4   authority.  I think that will save us some time this

5   morning.

6           As the Court is well aware, we were here

7   yesterday and we argued two similar motions to

8   intervene filed by other class members in this case.

9   And we argued this those intervenors did not meet the

10  standard for permissive intervention or intervention as

11  a right.  And these particular proposed intervenors are

12  no different, Your Honor.

13          Before we get to Rule 24, I'd like to mention one

14  interesting thing about this motion is basically who

15  has filed this motion and who these proposed

16  intervenors are represented by.  These attorneys,

17  Mr. Copeland and Mr. Martino, who is not here today,

18  were the attorneys who represented the plaintiffs in

19  the Skelton case.  And the Skelton case is an "actual

20  charges" case against another insurance company

21  unrelated to the defendants here.

22          That was settled, and these attorneys were

23  proponents of that settlement, as I believe

24  Mr. Copeland mentioned.  And that settlement had less

25  relief and narrower relief than this settlement does.

1   So it's interesting to me that they have filed

2   objections in this case.  There are four proposed

3   intervenors here.  And as we stated, we did not object

4   to the motion to withdraw the fifth.

5       Like Mr. Crager and Mr. Shepherd, the plaintiffs'

6   motion in this case does not cite a single authority

7   which permits the intervention they seek.  In fact,

8   they only cite the DeJulius and Ballard cases, both of

9   which are authorities that go against them.

10      And with respect to the procedural issues first,

11  Your Honor, under Rule 24(c), the Court's analysis in

12  this particular instance can begin and end with this

13  rule.  This motion does not attach a pleading.  And

14  unlike the Crager motion, Your Honor, they have not

15  attempted to cure that defect.

16      Rule 24(c) states that a motion to intervene must

17  be accompanied by a pleading which sets forth the claim

18  for which intervention is sought.  There has been an

19  admission here that there is no claim for which

20  intervention is sought.  And these movants have

21  informed the Court that they consider their objections

22  their pleading, which is directly contrary to the

23  procedural rule and the Arkansas Rule of Civil

24  Procedure 7, which defines a pleading as a complaint an

25  answer, etc.  An objection, Your Honor, is not a

1    pleading.  And the Arkansas Supreme Court case directly

2    on point is Polnac-Hartman & Association v. First

3    National Bank at 292 Ark. 501, where the Arkansas

4    Supreme Court affirmed the denial of a motion for leave

5    to intervene for this very reason.

6         The Court found that the proposed intervenor who

7    had not attached a complaint setting forth his claim

8    and who had merely attached some documents which he

9    claimed entitled him to intervene in a dispute over

10   land was defective and that denial of the motion was

11   appropriate, and that a motion to intervene that does

12   not attach a pleading, quote, "Had not shown

13   entitlement to intervene as a matter of right or

14   permissively."  This case, Your Honor, can begin and

15   end the discussion on this particular motion.

16        In the event that the Court does wish to consider

17   the merits of the motion, the purpose of the motion,

18   identified as the sole purpose in the pleading, in the

19   brief, is to attempt to create an appellate remedy for

20   these intervenors as objectors.  And that rationale has

21   been also expressly rejected in the Ballard case, where

22   the Arkansas Supreme Court said that the lack of an

23   appellate remedy would be the direct result of an

24   intervenor's strategic election not to opt out.  Now,

25   that was a case discussing intervention of right, but

1  the same analysis applies here.

2       If you had a chance to opt out and you chose not

3  to, you can't simply create a right to intervene by

4  objecting.  And the reason for that is clear.

5  Otherwise, every objector could be an intervenor, so

6  there would be no need for the intervention rule.  All

7  you would need to do would be to object.  Then you

8  would be an intervenor and you could appeal, and that

9  rule is expressly rejected by the Arkansas Supreme

10  Court.

11       Even you could intervene in an appropriate basis

12  to preserve your right to appeal the denial of an

13  objection, this motion should be denied because these

14  objections simply contend that these proposed

15  intervenors would have negotiated a different premium

16  rate relief in this case than the class representatives

17  negotiated.  And the authorities are well settled, and

18  there are many of them, which say that simply objecting

19  to one type of settlement relief over another is

20  insufficient to support intervention.

21       Defendants in this case have made some

22  significant concessions in this litigation in order to

23  arrive at this settlement.  They have offered millions

24  of dollars of monetary relief and nonmonetary relief to

25  the class.  Thousands of class members have registered

```
 1   for that relief, and they are waiting and wondering
 2   whether and when they will receive it.
 3        There are four people in this motion that want to
 4   hold up this settlement with the right to appeal after
 5   the fairness hearing and deny and delay that relief,
 6   and that violates the standard of delay and prejudice
 7   under Rule 24(b)(2), where 99.995 percent of the class
 8   has neither objected nor moved to intervene, such an
 9   objection or a motion to intervene would be
10   inappropriately granted, Your Honor.  That's why
11   intervention in a settlement like this is virtually
12   never permitted.  That's why it was opposed by these
13   same counsel in the Skelton case successfully.  And
14   that's why it should be denied here.
15        All of the authorities that I mentioned
16   yesterday, Your Honor, during a hearing on the other
17   motions to intervene under Rule 24(b)(2) apply equally.
18   The treatises explain that permissive intervention is
19   generally denied, especially if it would result in
20   delay in the existing action.  And I won't rehash all
21   the federal cases that are recited in our briefs, but
22   I'll mention two, just two.  The first is In re
23   Domestic Air Transportation case out of the Northern
24   District of Georgia.  And that case explained the
25   concept that a simple request to replace one negotiated
```

1  form of relief with another violates the principle that

2  the proposed intervenor must bring some unique

3  characteristic to the table that is not already

4  represented.

5       The existing class representatives in this case

6  made claims related to premiums.  They resolved claims

7  related to premiums.  They chose a one-year premium

8  rate freeze and an injunction that's going to permit

9  the company to settle these actual charges claims the

10  way it's been doing since 2006, which is going to save

11  the class over $100 million in premium increases over

12  the next 10 years.  So this expressed objection simply

13  does not support permissive intervention.

14       And the second case I'll mention is a Fifth

15  Circuit case which explains that a proposed

16  intervenor's mere dissatisfaction with a single aspect

17  of the settlement relief that they would have allegedly

18  negotiated differently is not sufficient to support

19  permissive intervention.  And that's is the In Re

20  Corrugated Container Antitrust case at 643 F. 2d 195.

21  And the Court in that case says, and I quote, "Whether

22  another team of negotiators might have accomplished a

23  better settlement is a matter equally comprised of

24  conjecture and irrelevance."  This Court, Your Honor,

25  should exercise its discretion, as most courts always

1   do, to deny intervention in this case.  Thank you.

2       MR. BAUDIN:  Your Honor, Stan Baudin on behalf of

3   the plaintiff class.  The proposed intervenors suggest,

4   Your Honor, that their sole purpose for requesting an

5   intervention is so that they, as objectors, may appeal

6   in the event that their objections to the settlement

7   are overruled by Your Honor.  They admit that they do

8   not seek to add new claims or parties to the

9   litigation, and they have failed to file a pleading in

10  comport with the Rule 24(c) in this case.

11      Your Honor, this runs counter, obviously, to the

12  rules and the purpose for an intervention in the first

13  place.  If they don't want to add any new claims or

14  parties, then it's really not an intervention at all.

15      Further, the proposed intervenors suggest that

16  they are not seeking to preserve their own independent

17  claims and rights, but rather they're seeking to

18  preserve appeal rights on behalf of the other absent

19  class members.  Your Honor, the proposed intervenors do

20  not represent the absent class members.  They cannot

21  intervene to protect the rights of absent class

22  members.  And they cannot file any future appeal, if

23  any is even available to them, on behalf of any absent

24  class members in this case.

25      Your Honor, the Arkansas Supreme Court has

Case 4:09-cv-00678-GRM-ER
Case 4:09-cv-00678-GRM-ERC
Doc ment 128-28
Document 123-28
Filed 06/21/21
Filed 07/12/21
Page 41 of 37
Page 21 of 37
PageID #:
PageID #:
1681

```
 1    already addressed the intervene to preserve appeal
 2    rights issue in the Ballard case, which has already
 3    been cited by defense counsel.  By choosing to object
 4    and attempting to intervene instead of opting out of
 5    the case, the proposed intervenors have undertook the
 6    risk that their motion to intervene may be denied by
 7    this Court and that they would be bound by the
 8    settlement.
 9         Your Honor, as pointed out by defense counsel,
10    the proposed intervenors have not met their burden for
11    permissive intervention and they have already conceded
12    here that they do not meet the standard for
13    intervention as of right.  They have also failed to
14    show Your Honor that their interests are not adequately
15    represented by the existing class representatives in
16    this case.
17         Not only would it be extremely prejudicial to the
18    existing parties and the class members if they were
19    allowed to intervene, but it would also cause undue
20    delay in this case, Your Honor.  And we've already had
21    enough delay in this case.
22         Judge, we can find no Arkansas Supreme Court
23    cases, and they have cited none to you, where an
24    intervention has been allowed in a settlement class
25    setting.  We believe this to be the case because the
```

1   proposed intervenors cannot meet the legal standard
2   under Rule 24, and because all courts recognize and
3   adhere to the established legal principle that
4   settlements are favored under the law.
5       Allowing interventions in a class settlement
6   setting such as this would have just the opposite
7   effect. It would promote endless, expensive, and time-
8   and resource-consuming contested litigation. And that
9   is not in the best interest of the parties or the class
10  members or this Court. And for all the reasons we
11  outline in our brief, and those stated in oral argument
12  today, we would request that the Court deny the
13  proposed intervention. Thank you, Your Honor.
14      MR. COPELAND: Your Honor, I think I covered most
15  of the points that they made in my initial
16  presentation, so I'm going to try not to be repetitive.
17  But what most of this boils down to is is that if you
18  don't attach a claim or defense, then you can never
19  have an intervention by an objector in a class action.
20  And objectors in class actions typically don't seek to
21  intervene to assert a new claim or defense. They seek
22  to intervene to point out what they perceive to be
23  flaws with the settlement.
24      So if that's correct, if they're correct, you can
25  never have an intervention in a class action. But in

1    the federal system, intervention in a class action is

2    discretionary with the Court, which is what we're

3    asking the Court to do today is to exercise its

4    discretion.  Arkansas rules are based on civil rules.

5    And we're asking the Court to exercise its discretion

6    after its heard everything at the fairness hearing.

7    And if the Court does disagree with us, decide if the

8    issue is serious enough to permit intervention for the

9    purpose of appeal.

10        I was a little -- I was interested to hear the

11   statement about whether a better settlement could be

12   achieved as a matter of equal part of conjecture and

13   speculation, because that's one of my favorite quotes.

14   I've used that defending settlements on various

15   occasions.  And it's all true.

16        The issue is not whether a better settlement

17   could be achieved.  The issue is whether this

18   settlement is unfair for the reason that we assert, the

19   lack of a mechanism to reduce the frequency and extent

20   of premium increases in the future.  And that's what --

21   we are going to talk about the substance of that and

22   the nuts and bolts of that at the hearing and why we

23   would ask Your Honor to defer the decision until after

24   the hearing.  Does the Court have any questions on

25   this?

1    THE COURT: You can have a seat. I may, but go
2  ahead. I am going to see what Mr. Baker has to say.
3    MR. BAKER: Your Honor, I just want to, I
4  guess --
5    THE COURT: You just want to appear here on the
6  record to justify your presence.
7    MR. BAKER: I need to somehow show that I have
8  earned some keep here with my client. But what
9  Mr. Copeland is suggesting is something that he needs
10  to take up with the rules committee out at the Supreme
11  Court because what he's suggesting is not anything
12  permitted under either Rule 23 or 24. If you, at the
13  fairness hearing, believe that there is concern or
14  cause that makes this settlement incomplete or unfair
15  or not even fully thought out, he then wants you to
16  permit them to intervene, not as a party, but to take
17  your concerns up.
18    A, that's not permitted under Rule 23 or 24. But
19  B, if you have those concerns, Rule 23 makes you
20  reformulate it or put it on hold or go to the counsel
21  that's already in the case and say, "I need you to
22  address these things. I need to you look into these
23  before I'm comfortable certifying the settlement." So
24  his procedural theory of how it would go up when you,
25  yourself, are concerned about it, that's not how you

```
 1   would do it.

 2        I can't imagine that you would say, "Well, I

 3   don't really think it works or covers this, but I'll go

 4   ahead and approve it anyway." That's not how it works.

 5   You have to be comfortable with it and believe that

 6   it's fair.

 7        And so this whole logic of how they would

 8   intervene, not as a party, but to become some hybrid

 9   appellant is nowhere in Rule 24, and it's not anywhere

10   in Rule 23. And it's an interesting theory. But he

11   needs to amend the Rules of Civil Procedure to permit

12   that kind of theory to be a reality. It's not

13   permitted under the rules.

14        MR. COPELAND: Your Honor, might I say one thing

15   real briefly in response to that?

16        THE COURT: Yes, sir.

17        MR. COPELAND: We're not saying that if the Court

18   is uncomfortable with the settlement that the Court

19   should disregard that concern and let us appeal. What

20   we're saying is, as happens all the time, a Court can

21   disagree with a litigant and overrule his objection,

22   but still say, "I disagree with that. But, you know,

23   there is some substance to it."

24        That's the -- that is what we are looking at. If

25   the Court finds itself in that position at the end of
```

1  the hearing, that's what we would be asking the Court

2  to allow the intervention for appeal.

3       THE COURT: I've got a factual question that may

4  easily be resolved. Somewhere with reading all these

5  pleadings, is one -- I think I know which one, is one

6  of these proposed intervenors already opted out of the

7  class, or are they all still in the class moving to

8  intervene?

9       Because some of the discussion that I had heard

10 said, "You've got to make an election whether or not to

11 opt out and go about your way or stay in the class and

12 intervene," which was a little contrary to what I

13 thought that one of these parties had opted out but was

14 trying to intervene.

15      MR. COPELAND: There is none of ours that have

16 opted out that are trying to get back in to intervene.

17      THE COURT: I don't know why. I couldn't point

18 to it specifically. But I thought in reading -- maybe

19 it was the fact that Jones is withdrawing.

20      MR. BAKER: There are people who wish to

21 intervene who have not opted out but also have not

22 timely filed claims.

23      THE COURT: I'm talking about people who have

24 opted out that are trying to intervene.

25      MR. BAKER: I don't believe --

```
 1         MR. BAUDIN:  I don't think we have.

 2         MS. McCABE:  No, Your Honor.  There are proposed

 3    intervenors who are represented by counsel who also

 4    represent opt-outs.  But the opt-outs themselves are

 5    not attempting to intervene.  They have -- those

 6    counsel have separate parties.

 7         THE COURT:  So if I set aside the timeliness

 8    arguments for a moment, everybody who is attempting to

 9    intervene has a right to object to the settlement if we

10    set aside the other technical arguments why they

11    shouldn't?

12         MS. McCABE:  Yes, Your Honor.  They have objected

13    to the settlement and they have noticed their intent to

14    appear at the fairness hearing.  That's correct.

15         THE COURT:  I guess some of them may have done

16    that either late or have some technical deficiencies

17    that I still have to address.  But the arguments

18    Mr. Turner had yesterday that we just want to be heard

19    on our objections is going to happen whether I allow

20    them to intervene or not, which is what I understood.

21    But he seemed to argue that absent intervention, he was

22    not going to be heard on his objections.

23         MS. McCABE:  That's not correct, Your Honor.

24         MR. COPELAND:  We can be heard as objectors

25    without intervening.  There's no question about that,
```

1  Your Honor.

2      THE COURT:  I was given an argument that seemed

3  to indicate otherwise yesterday, and I just wanted to

4  clear that up.  I should have done that then.

5      MR. COPELAND:  That's just wrong.  I think that's

6  something that for once, we can all agree on something.

7      THE COURT:  So is there no -- as the rules are

8  today, is there no appellate review to my decision on

9  objections to a class action settlement?

10      MR. COPELAND:  I think there --

11      THE COURT:  Absent intervention?

12      MR. COPELAND:  Yes.  I think that's correct.  I

13  think absent intervention, that there is no right to

14  appeal the denial of objections to the class action

15  settlement, which comes back to one of my points.

16      THE COURT:  I mean, that's what I had understood.

17  And so I'm trying to figure out if this intervention is

18  nothing more than an attempt to end-run that

19  prohibition to appeal my decision.  And that may be

20  exactly what it is.  I'm not saying that's evil or

21  untoward.  I mean, you do what you can do with what

22  you've been dealt.  But from what I understand is,

23  these intervention motions are to provide you with a

24  right of appeal that you would not otherwise have.

25      MR. COPELAND:  That we can only acquire -- we can

```
 1    only acquire if we intervene.  That's correct.
 2         MR. BAKER:  They're not a party otherwise.
 3         THE COURT:  They're not a party for purposes of
 4    appeal.  They're just class members.
 5         MR. COPELAND:  The Arkansas Supreme Court -- or a
 6    case that reached that decision on you have to
 7    intervene to be able to appeal, that was an offshoot of
 8    a U.S. Supreme Court case that decided to the contrary
 9    in the federal system.  The states have split on that.
10         But it -- the DeJulius case, of course, says no
11    intervention as a matter of right because you've opted
12    out.  It doesn't talk about permissive intervention,
13    which is totally discretionary with the Court.  The
14    Court denies that, we can't take Your Honor up on that.
15         But it seems to me that you are putting an
16    objector in a catch 22 position if -- with permissive
17    intervention, if the theory is that, well, you can't do
18    that either because you're solely trying to gain
19    appeal.  Otherwise, there can be no appeal ever from an
20    overruled objection.  There can be no appellate review.
21         THE COURT:  Anything further for the record?  Did
22    we start without you?
23         GALLERY:  I guess so.
24         THE COURT:  Sorry about that.  Anything further
25    before we go off the record?
```

1   MS. McCABE: No, Your Honor.

2   MR. COPELAND: No, sir.

3   THE COURT: You seem anxious to do something

4 else, Mr. Baker. What do you want to do?

5   MR. BAKER: No.

6   THE COURT: We're not going off the record. I

7 guess we're just going on to another subject.

8   MR. BAKER: That's what I was wondering. I

9 thought we had other things to cover. Yes, sir.

10   THE COURT: So we move on to the motion to

11 conduct limited discovery. Mr. Copeland, what do you

12 have to say on that issue?

13   MR. COPELAND: Your Honor, I'm going to say

14 basically the same thing that I said on the last one.

15   THE COURT: Do you want me to adopt all of that

16 or do you want to say it again?

17   MR. COPELAND: I am going to try to be as

18 unrepetitive as I can this time. Our original intent

19 when we filed these motions, these motions for limited

20 discovery, just focused on the future premium relief

21 issue, was to ask the Court to look at that, wait and

22 take things, see how the fairness hearing plays out

23 because the whole purpose of this endeavor is to make

24 sure that the Court is comfortable with having enough

25 information to evaluate the settlement. We don't want

```
 1    to engage in a bunch of duplicative or nonessential
 2    discovery.  And we recognize that discovery by
 3    objectors is not favored.  I've deflected discovery
 4    attempts by objectors before.
 5         But again, the whole point is for the Court to
 6    have enough information where it's comfortable
 7    evaluating the settlement.  Now, the Court may look at
 8    the information at the fairness hearing and say, "I've
 9    got enough to make my decision."  And what I'm hoping
10    is going to happen, the defendants said in their brief
11    that they had considered a target loss ratio as part of
12    the settlement, but they decided to reject it in view
13    of the regime that they proposed to the Court.
14         Well, it if that's the case, then they ought to
15    be able, when they present their evidence at the
16    fairness hearing, to tell the Court how certain
17    proposed target loss ratios would affect the
18    settlement, would -- to the class as a whole, what
19    effect that would have.  If they can do that at the
20    fairness hearing, then we -- you know, we may not need
21    any discovery.  We probably won't if they can produce
22    that information to the Court.  I would hope they would
23    produce it in light of the objection we made, that they
24    would make that showing to the Ccourt.
25         But I think it's -- we don't want to go on a
```

1   fishing expedition right now and disrupt these

2   proceedings.  If the Court, at the fairness hearing,

3   feels like it's got enough information to reach a

4   decision, an informed decision, that's fine.  On the

5   other hand, if the Court, after hearing our objection,

6   says, "I've got some concerns about this," you know,

7   fairness hearings are recessed all the time.  At that

8   point, we can take a 30(b)(6) pretty quick.  The Court

9   can do an expedited briefing schedule.  There's a

10  number of ways the Court can handle it.

11       But I think it's -- it is premature for us to try

12  to seek discovery right now until the Court sees -- has

13  all the information it has -- it needs at the fairness

14  hearing.  If the Court thinks it's got enough, then the

15  Court has got enough.  But if the Court thinks it does

16  need some more information, then that's when some form

17  of expedited limited discovery to assist the Court

18  should be considered.  Now, if --

19       THE COURT:  Mr. Copeland, since I've got the

20  right, I guess, to decide this without appellate

21  review, don't I have a right to ask for that

22  information myself?

23       MR. COPELAND:  Absolutely.  Absolutely.

24       THE COURT:  I've just been granted all kinds of

25  new powers and stuff, so --

1    MR. COPELAND:  I'm sorry, Your Honor.

2    THE COURT:  I was being less than serious about

3    the proceedings, I should say.  That's the most polite

4    way I can say it.  I'm sorry.  I made a smart-ass

5    remark.  I'm sorry.  I shouldn't say what I did.  But I

6    apologize for saying that in the middle of your

7    argument.  I didn't mean any disrespect.

8    MR. COPELAND:  Your Honor, being less than

9    serious about my argument, you're not getting a virgin

10   when you do that.

11   THE COURT:  I understand.

12   MR. COPELAND:  That's basically our position on

13   that, Your Honor.  If y'all want to talk about this

14   judicial estoppel argument on discovery --

15   THE COURT:  Well, if that's the case, is there

16   any reason to even respond to the motion to conduct

17   limited discovery, since it's not ripe because they're

18   not even asking for it until after the fairness

19   hearing?  I mean --

20   MS. McCABE:  Are you -- well, Your Honor, in that

21   case, I think the motion should be denied without

22   prejudice for them to renew the motion if they believe

23   it's necessary after the fairness hearing.

24   THE COURT:  It's probably cleaner that way

25   because that way, I don't forget.  I'll deny it without

```
 1  prejudice.  That way, it won't come down because I
 2  failed to rule on all the motions.
 3       MR. COPELAND:  That's fine.
 4       MR. BAUDIN:  Plaintiffs would agree with that,
 5  Your Honor.
 6       THE COURT:  Motion to produce proof of
 7  membership.  Did y'all work that out, or partially?
 8       MR. COPELAND:  We worked it out for the purpose
 9  of appearing and objecting at the fairness hearing; is
10  that right?
11       MS. McCABE:  Yes.
12       MR. COPELAND:  I think they are still raising
13  that in connection with the motion to intervene.
14       MS. McCABE:  Defendants are not -- the remaining
15  proposed intervenors are class members.  We concede
16  that.
17       THE COURT:  Okay.
18       MR. BAUDIN:  Same for plaintiffs, Your Honor.
19       THE COURT:  So is there anything for me to do on
20  that motion for leave to submit proof of membership, or
21  is that stipulated, so to speak?
22       MS. McCABE:  We have no objection to your
23  granting that motion, Your Honor.
24       THE COURT:  All right.  I'll grant it.  I've
25  already dealt with Evelyn Jones.  The motion to assess
```

1    costs?

2         MR. COPELAND:  That's the last one, I think, Your

3    Honor.

4         THE COURT:  Okay.  Let's do it.

5         MR. COPELAND:  Let me be real straightforward and

6    brief on this one, Your Honor.  Our position is, they

7    should have told us that hearing was enjoined and they

8    didn't, reimburse us for our time and expenses.

9         THE COURT:  What hearing?

10        MR. COPELAND:  The fairness hearing.  The

11   originally fairness hearing on July 27th.

12        THE COURT:  The one the Tennessee judge enjoined?

13        MR. COPELAND:  Right.  That these folks didn't

14   tell us about at the end of the table.

15        THE COURT:  I mean, I'm going to take that under

16   consideration.  But I think I found out, if it was set

17   on Monday -- is that when it was?

18        MR. COPELAND:  It was set on Monday.  There was a

19   Friday afternoon hearing which --

20        THE COURT:  I was informed Sunday at 4 o'clock.

21   I'll tell you that.

22        MR. COPELAND:  I thought it was Saturday.  I may

23   be mistaken.

24        THE COURT:  I've got an e-mail that will say when

25   it was.  I was informed over the weekend.  And whether

1    or not I picked up that e-mail on Sunday, I'm not going

2    to swear when I read it or when I received it because I

3    don't know.  But I know that I was told that a hearing

4    was going to be held and they expected some kind of

5    ruling on Friday.  And I know that sometime over the

6    weekend, I was told when it was going to be.

7         I know that several people showed up not knowing

8    whether or not -- excuse my -- that I was going to

9    comply with the Tennessee judge or not, I suspect.

10   Maybe, maybe not.  I don't know.  They had no idea what

11   I might do.  And that's why some people showed up.

12   Others because they didn't know anything about the

13   hearing being stayed.  So I'm commenting a lot of

14   things just -- I'm thinking through my head.  But I

15   will -- I am going to deny the motion for costs on

16   that, I think.

17        MR. COPELAND:  I am not going to beat a dead

18   judicial horse.  Thank you, Your Honor.

19        THE COURT:  Okay.  Through on the record?  Going?

20   Going?

21        MR. COPELAND:  I think that's all we have.

22        MR. BAKER:  Your Honor, we appreciate your time.

23        THE COURT:  Gone.  Thank you.  Off the record.

24             (Discussion held off the record.)

25             *  *  *  *  *  *  *  *  *  *  *  *  *  *

```
 1                    C E R T I F I C A T E
       STATE OF ARKANSAS           )
 2                                 )      SS.
       COUNTY OF PULASKI           )
 3
           I, TAMMIE L. FOREMAN, CRR, RPR, CCR, official court
 4     reporter for the Third Division Circuit Court, Pulaski
       County, Arkansas, certify that I reported the
 5     proceedings by stenographic machine shorthand, reporting
       in the case of
 6     EDISON RUNYAN; DWIGHT PIPES; EARL L. PURIFOY; JOHN ROSS,
       As the Legal Representative of ELIZABETH ROSS; MARY
 7     WEIDMAN, DURAIN WEIDMAN; MARION HARRIS; and VAN R.
       NOLAN, Each Individually, and on Behalf of All Others
 8     Similarly Situated,
                                      Plaintiffs
 9     V.                  CV 2009-2066
       TRANSAMERICA LIFE INSURANCE COMPANY; LIFE INVESTORS
10     INSURANCE COMPANY OF AMERICA; MONUMENTAL LIFE INSURANCE
       COMPANY; and AEGON USA, INC.,
11                                    Defendants
       before the Honorable Jay Moody, Pulaski County Circuit
12     Judge, at Little Rock, Arkansas; that said proceedings
       have been reduced to a transcription by me by means of
13     computer-aided transcription, and the foregoing pages 1
       through 35 constitute a true and transcript of the
14     proceedings held to the best of my ability, along with
       all items of evidence admitted into evidence.
15
           I further certify that I am not a relative or
16     employee of any of the parties, or of counsel, nor am I
       financially or otherwise interested in the outcome of
17     this action.

18         I serve as an impartial officer of the court and
       abide by all professional and ethical principles of the
19     National Court Reporters Association.

20         WITNESS MY HAND AND SEAL on this 28th day of
       September, 2009.
21
22                     TAMMIE L. FOREMAN, CRR, RPR, CCR
                       Certificate No. 305
23                     Notary Public in and for
                       Pulaski County, Arkansas
24
       My Commission Expires: 04-18-14
25
```

                       TAMMIE L. FOREMAN, CRR, RPR, CCR
                              (501) 340-8426